UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BRIAN MARKUS,<br><br>    Plaintiff,<br><br>    v.<br><br>AEROJET ROCKETDYNE HOLDINGS, INC., a corporation and AEROJET ROCKETDYNE, INC., a corporation,<br><br>    Defendants. | No. 2:15-cv-2245 WBS AC<br><br>MEMORANDUM & ORDER RE: DEFENDANTS' MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT, STAY PROCEEDINGS, and COMPEL ARBITRATION |

----oo0oo----

Plaintiff-relator Brian Markus brings this action against defendants Aerojet Rocketdyne Holdings, Inc. ("ARH") and Aerojet Rocketdyne, Inc. ("AR"), arising from defendants' allegedly wrongful conduct in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., and relating to defendants' termination of relator's employment. Defendants now move to (1) dismiss the Second Amended Complaint ("SAC") in part for the failure to state upon which can be granted under Federal Rule of

1

Civil Procedure 12(b)(6), (2) stay proceedings, and (3) compel arbitration.

I. Background

Relator Brian Markus is resident of the State of California. (SAC ¶ 6 (Docket No. 42).) He worked for defendants as the senior director of Cyber Security, Compliance, and Controls from June 2014 to September 2015. (Id.) Defendants ARH and AR develop and manufacture products for the aerospace and defense industry. (Id. ¶ 7.) Defendants' primary aerospace and defense customers include the Department of Defense ("DoD") and the National Aeronautics & Space Administration ("NASA"), who purchase defendants' products pursuant to government contracts. (See id.) Defendant AR is a wholly-owned subsidiary of ARH, and ARH uses AR to perform its contractual obligations. (Id. ¶ 8.)

Government contracts are subject to Federal Acquisition Regulations and are supplemented by agency specific regulations. On November 18, 2013, the DoD issued a final rule, which imposed requirements on defense contractors to safeguard unclassified controlled technical information from cybersecurity threats. 48 C.F.R. § 252.204-7012 (2013). The rule required defense contractors to implement specific controls covering many different areas of cybersecurity, though it did allow contractors to submit an explanation to federal officers explaining how the company had alternative methods for achieving adequate cybersecurity protection, or why standards were inapplicable. See id. In August 2015, the DoD issued an interim rule, modifying the government's cybersecurity requirements for contractor and subcontractor information systems. 48 C.F.R. §

252.204-7012 (Aug. 2015). The interim rule incorporated more cybersecurity controls and required that any alternative measures be "approved in writing prior by an authorized representative of the DoD [Chief Information Officer] prior to contract award." Id. at 252.204-7012(b)(1)(ii)(B). The DoD amended the interim rule in December 2015 to allow contractors until December 31, 2017 to have compliant or equally effective alternative controls in place. See 48 C.F.R. § 252.204-7012(b)(1)(ii)(A) (Dec. 2015). Each version of this regulation defines adequate security as "protective measures that are commensurate with the consequences and probability of loss, misuse, or unauthorized access to, or modification of information." 48 C.F.R. § 252.204-7012(a).

Contractors awarded contracts from NASA must comply with relevant NASA acquisition regulations. 48 C.F.R. § 1852.204-76 lists the relevant security requirements where a contractor stores sensitive but unclassified information belonging to the federal government. Unlike the relevant DoD regulation, this NASA regulation makes no allowance for the contractor to use alternative controls or protective measures. A NASA contractor is required to "protect the confidentiality, integrity, and availability of NASA Electronic Information and IT resources and protect NASA Electronic Information from unauthorized disclosure." 48 C.F.R. § 1852.204-76(a).

Relator alleges that defendants fraudulently entered into contracts with the federal government despite knowing that they did not meet the minimum standards required to be awarded a government contract. (SAC ¶ 30.) He alleges that when he started working for defendants in 2014, he found that defendants'

computer systems failed to meet the minimum cybersecurity requirements to be awarded contracts funded by the DoD or NASA. (Id. ¶ 36.) He claims that defendants knew AR was not compliant with the relevant standards as early as 2014, when defendants engaged Emagined Security, Inc. to audit the company's compliance. (See id. at ¶¶ 43, 51-53.) Relator avers that defendants repeatedly misrepresented its compliance with these technical standards in communications with government officials. (Id. ¶ 59-64.) Relator alleges that the government awarded AR a contract based on these allegedly false and misleading statements.[1] (Id. ¶ 65.) In July 2015, relator refused to sign documents that defendants were now compliant with the cybersecurity requirements, contacted the company's ethics hotline, and filed an internal report. (Id. ¶¶ 81-82.) Defendants terminated relator's employment on September 14, 2015. (Id. ¶ 83.)

Relator filed his initial complaint in this action on October 29, 2015. (Docket No. 1.) While the government was still deciding whether to intervene in this action, relator filed his First Amended Complaint ("FAC") on September 13, 2017. (Docket No. 22.) On June 5, 2018, the United States filed a notice of election to decline intervention. (Docket No. 25.) A few months later defendants filed a motion to dismiss, stay proceedings, and compel arbitration as to the FAC. (Docket No. 39.) In response to this motion, relator filed the SAC, alleging

---

[1] In total, relator alleges that AR entered into at least six contracts with the DoD between February 2014 and April 2015 (id. ¶¶ 84-93) and at least nine contracts with NASA between March 2014 and April 2016 (id. ¶¶ 105-114).

4

the following causes of action against defendants: (1) promissory fraud in violation of 31 U.S.C. § 3729(a)(1)(A); (2) false or fraudulent statement or record in violation of 31 U.S.C. § 3729(a)(1)(B); (3) conspiracy to submit false claims in violation of 31 U.S.C. § 3729(a)(1)(C); (4) retaliation in violation of 31 U.S.C. § 3730(h); (5) misrepresentation in violation of California Labor Code § 970; and (6) wrongful termination. Defendants now move to dismiss the SAC, stay proceedings, and compel arbitration. (Docket No. 50.)

## II. Motion to Dismiss

### A. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that offers mere "labels and conclusions" will not survive a motion to dismiss. Id. (internal quotation marks and citations omitted).

### B. Fraud Claims under the FCA

Relator brings two claims for fraud under the FCA. These two claims impose liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim

for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," id. § 3729(a)(1)(B).

Outside of the context where "the claim for payment is itself literally false or fraudulent," the Ninth Circuit recognizes two different doctrines that attach FCA liability to allegedly false or fraudulent claims: (1) false certification and (2) promissory fraud, also known as fraud in the inducement. See United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1170-71 (9th Cir. 2006) (citation omitted). Under a false certification theory, the relator can allege either express false certification or implied false certification. The express false certification theory requires that the claimant plainly and directly certify its compliance with certain requirements that it has breached. See id. An implied false certification theory "can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 2001 (2016). The promissory fraud approach is broader and "holds that liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." Hendow, 461

F.3d at 1173.

Under either false certification or promissory fraud, "the essential elements of [FCA] liability remain the same: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." Id. Only the sufficiency of the complaint as to the materiality requirement is at issue on this motion.[2]

Under the FCA, a falsehood is material if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Most recently in Escobar, the Supreme Court clarified that "[t]he materiality standard is demanding." 136 S. Ct. at 2003. Materiality looks to the effect on the behavior of the recipient of the alleged misrepresentation. Id. at 2002. A misrepresentation is not material simply because the government requires compliance with certain requirements as a condition of payment. Id. at 2003. Nor can a court find materiality where "the Government would have the option to decline to pay if it knew of the defendant's noncompliance." Id. Relatedly, mere "minor or insubstantial" noncompliance is not material. Id. Evidence relevant to the materiality inquiry includes the

---

[2] Defendants correctly observe that relator's FCA claims must not only be plausible but pled with particularity under Federal Rule of Civil Procedure 9(b). See Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054-55 (9th Cir. 2011). However, defendants reference Rule 9(b) only to the extent they argue that relator has failed to plead particular facts in support of materiality. (See Mot. to Dismiss at 2-3, 15 & 18.) Therefore, the court assumes, without deciding, that relator has otherwise satisfied the requirements of Rule 9(b).

7

government's conduct in similar circumstances and whether the government has knowledge of the alleged noncompliance. See id. Defendants puts forth four different arguments in support of their contention that relator has insufficiently pled facts as to the materiality requirement.

First, defendants argue that AR disclosed to its government customers that it was not compliant with relevant DoD and NASA regulations and therefore it is impossible for relator to satisfy the materiality prong. The Supreme Court did observe in Escobar that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." Id. Here, however, relator properly alleges with sufficient particularity that defendants did not fully disclose the extent of AR's noncompliance with relevant regulations. See id. at 2000 ("[H]alf-truths--representations that state the truth only so far as it goes, while omitting critical qualifying information--can be actionable misrepresentations."). For instance, relator alleges that AR misrepresented in its September 18, 2014 letter to the government the extent to which it had equipment required by the regulations (SAC ¶ 63), instituted required security controls (id. ¶¶ 60-61, 63), and possessed necessary firewalls (id. ¶ 62). Relator also alleges that these misrepresentations persisted over time, whereby AR knowingly and falsely certified compliance with security requirements when submitting invoices for its services.

(Id. ¶¶ 135-36.)[3] While it may be true that AR disclosed some of its noncompliance (see id. ¶¶ 59-64), a partial disclosure would not relieve defendants of liability where defendants failed to "disclose noncompliance with material statutory, regulatory, or contractual requirements." See Escobar, 136 S. Ct. at 2001.

In fact, some of the evidence defendants put forth in favor of their motion to dismiss provides support for relator's allegations relevant to materiality.[4] The DoD informed the federal contracting officer that it could not waive compliance with DoD regulations, even for an urgent contract. (SAC ¶¶ 67-68; Req. for Judicial Notice Ex. Z at 1-4.) While the contracting officer was not prohibited from awarding the contract because of AR's noncompliance, AR could not process, store, or transmit controlled technical information until it was fully compliant. (Req. for Judicial Notice Ex. Z at 1.) Still, the DoD representative believed it to "be a relatively simple matter for the contractor to become compliant" based on the disclosure letter AR sent to the contracting negotiator. (Id. at 1-2.) Yet, relator's complaint alleges possible material nondisclosures

---

[3] The court recognizes that "allegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)." Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989) (citation omitted). However, as explained elsewhere in this motion, there are other parts of the complaint that allege fraud with sufficient particularity for the purposes of Rule 9(b).

[4] Because relator's complaint references the documents contained in defendants' Exhibits Y & Z (Docket Nos. 52-25 & 52-26) in his complaint, the court considers these materials, without converting the motion to dismiss into a motion for summary judgment, under the doctrine of incorporation by reference. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

in this letter, such as AR's failure to report its status on all required controls, its alleged misstatements as to partial compliance with protection measures, and the fact that the company cherrypicked what data it chose to report. (See SAC ¶¶ 59-64.)[5] Accepting these allegations as true, the government may not have awarded these contracts if it knew the full extent of the company's noncompliance, because how close AR was to full compliance was a factor in the government's decision to enter into some contracts.[6]

Second, defendants contend that the government's response to the investigation into AR's representations

---

[5] Defendants argue for the first time in their reply that these alleged misstatements were not associated with a claim for payment and thus cannot support liability under the FCA. (See Reply in Supp. of Mot. to Dismiss ("Reply") at 4 (Docket No. 54).) Contrary to defendants' understanding, the FCA merely requires that the false statement(s) or fraudulent course of conduct cause the government to pay out money due. See Hendow, 461 F.3d at 1173. Under a promissory fraud theory, the relator only needs to allege that a claim was submitted "under a contract" that "was originally obtained through false statements or fraudulent conduct." See id.; see also United States ex rel. Campie v. Gilead Scis., Inc., 862 F.3d 890, 902 (9th Cir. 2017) (reaffirming Hendow's test for promissory fraud after Escobar). Here, relator alleges that AR secured its contracts with the government through misrepresentations made to government contracting agents and that the government ultimately paid out on these contracts. (See SAC ¶¶ 59-66, 129-131.)

[6] This promissory fraud theory, supported by these allegations of specific misrepresentations, distinguishes this case from United States ex rel. Mateski v. Raytheon Co., No. 2:06-CV-03614 ODW KSX, 2017 WL 3326452 (C.D. Cal. Aug. 3, 2017), aff'd, 745 F. App'x 49 (9th Cir. 2018). In Mateski, the relator merely alleged general violations of contract provisions that the government designated compliance with as mandatory to support a false certification theory. See id. at *7. Applying Escobar, the district court concluded that "such designations do not automatically make misrepresentations concerning those provisions material." Id. (citing 136 S. Ct. at 2003).

10

surrounding its cybersecurity compliance undermines relator's allegations as to materiality. Both the DoD and NASA have continued to contract with AR since the government's investigation into the allegations of this complaint. (See Req. for Judicial Notice Exs. S-V (Docket Nos. 52-19, 52-20, 52-21 & 52-22).)[7] Such evidence is not entirely dispositive on a motion to dismiss. Cf. Campie, 862 F.3d at 906 (cautioning courts not to read too much into "continued approval" by the government, albeit in a different context). Instead, the appropriate inquiry is whether AR's alleged misrepresentations were material at the time the government entered into or made payments on the relevant contracts. See Escobar, 136 S. Ct. at 2002. The contracts government agencies entered with AR after relator commenced this litigation are not at issue and possibly relate to a different set of factual circumstances. As discussed previously, relator has sufficiently alleged that AR's misrepresentations as to the extent of its noncompliance with government regulations could have affected the government's decision to enter into and pay on the contracts at issue in this case.

Defendants also argue that the government's decision

---

[7] The court GRANTS defendants' request that it take judicial notice of these exhibits. Exhibits T through V are publications on government websites and thus properly subject to judicial notice. See, e.g., Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010) (finding that it is "appropriate to take judicial notice of [information on government website], as it was made publicly available by government entities [], and neither party disputes the authenticity of web sites or the accuracy of the information displayed therein."). Exhibit S is an official Authorization to Operate signed by NASA officials, so its "accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(b)(2).

not to intervene in this case indicates that the alleged misrepresentations were not material. (See Mot. to Dismiss at 3; Reply at 9.) As the Sixth Circuit has observed, in Escobar itself, the government chose not to intervene and the Supreme Court did not mention it as a factor relevant to materiality. See United States ex rel. Prather v. Brookdale Senior Living Communities, Inc., 892 F.3d 822, 836 (6th Cir. 2018) (citing 136 S. Ct. at 1998). Separately, "[i]f relators' ability to plead sufficiently the element of materiality were stymied by the government's choice not to intervene, this would undermine the purposes of the Act," as the FCA allows relators to proceed even without government intervention. Id. (citation omitted). And finally, there is no reason believe that the decision not to intervene is a comment on the merits of this case. See, e.g., United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006) ("In any given case, the government may have a host of reasons for not pursuing a claim."); United States ex rel. Chandler v. Cook Cty., Ill., 277 F.3d 969, 974 n.5 (7th Cir. 2002) ("The Justice Department may have myriad reasons for permitting the private suit to go forward including limited prosecutorial resources and confidence in the relator's attorney.").

Third, defendants argue that AR's noncompliance does not go to the central purpose of any of the contracts, as the contracts pertain to missile defense and rocket engine technology, not cybersecurity. See Escobar, 136 S. Ct. at 2004 n.5 (noting that a misrepresentation is material where it goes to the "essence of the bargain"). This argument is unavailing at

12

this stage of the proceedings.  Relator alleges that all of AR's relevant contracts with the DoD and NASA incorporated each entity's acquisition regulations.  (See SAC ¶¶ 84, 105.)  These acquisition regulations require that the defense contractor undertake cybersecurity specific measures before the contractor can handle certain technical information.  Here, compliance with these cybersecurity requirements could have affected AR's ability to handle technical information pertaining to missile defense and rocket engine technology.  (See Req. for Judicial Notice Ex. Z at 1.)  Accordingly, misrepresentations as to compliance with these cybersecurity requirements could have influenced the extent to which AR could have performed the work specified by the contract.

Fourth and finally, defendants argue that the government's response to the defense industry's non-compliance with these regulations as a whole weighs against a finding of materiality.  When evaluating materiality, courts should "consider how the [government] has treated similar violations."  See United States ex rel. Rose v. Stephens Inst., 909 F.3d 1012, 1020 (9th Cir. 2018).  Defendants contend that the DoD never expected full technical compliance because it constantly amended its acquisition regulations and promogulated guidances that attempted to ease the burdens on the industry.  This observation is not dispositive.  Even if the government never expected full technical compliance, relator properly pleads that the extent to which a company was technically complaint still mattered to the government's decision to enter into a contract.  (See SAC ¶¶ 66-72.)  Defendants have not put forth any judicially noticeable evidence that the government paid a company it knew was

13

noncompliant to the same extent as AR was.  Therefore, this consideration does not weigh in favor of dismissal.

Accordingly, given the above considerations, relator has plausibly pled that defendants' alleged failure to fully disclose its noncompliance was material to the government's decision to enter into and pay on the relevant contracts.[8]

C. <u>Conspiracy under the FCA</u>

Relator's third count alleges that defendants participated in a conspiracy to submit false claims in violation of 31 U.S.C. § 3729(a)(1)(C).  Relator maintains that defendants and their officers conspired together to defraud the United States by knowingly submitting false claims.  (<u>See</u> SAC ¶ 144.) Section 3729(a)(1)(C) imposes liability on a person who conspires to commit a violation of Section 3729(a)(1)(A) or Section 3729(a)(1)(B).

Defendants argue that this count fails as a matter of law because relator has failed to identify two distinct entities that conspired.  Derived from antitrust law, the intracorporate conspiracy doctrine "holds that a conspiracy requires an agreement among two or more persons or distinct business entities."  <u>United States v. Hughes Aircraft Co.</u>, 20 F.3d 974, 979 (9th Cir. 1994) (internal quotation marks omitted).  The doctrine stems from the definition of a conspiracy and the requirement that there be a meeting of the minds.  <u>See</u> <u>Hoefer v. Fluor Daniel, Inc.</u>, 92 F. Supp. 2d 1055, 1057 (C.D. Cal. 2000) (citing <u>Fonda v. Gray</u>, 707 F.2d 435, 438 (9th Cir. 1983)).  While

---

[8] The court expresses no opinion as to what relator will be able to establish at summary judgment or trial.

14

the Ninth Circuit has not addressed this issue, several district courts have applied the intracorporate conspiracy doctrine to FCA claims. See United States ex rel. Lupo v. Quality Assurance Servs., Inc., 242 F. Supp. 3d 1020, 1027 (S.D. Cal. 2017) (collecting cases). Courts have used this principle to bar conspiracy claims where the alleged conspirators are a parent corporation and its wholly-owned subsidiary. See, e.g., United States ex. rel. Campie v. Gilead Scis., Inc., No. C-11-0941 EMC, 2015 WL 106255, at *15 (N.D. Cal. Jan. 7, 2015).

Here, relator identifies only a parent company, ARH, and its wholly-owned subsidiary, AR, as defendants. (SAC ¶¶ 7-8.) While relator alleges that defendants also conspired with its officers, a corporation, as a matter of law, "cannot conspire with its own employees or agents." Hoefer, 92 F. Supp. 2d at 1057. By failing to allege that defendants conspired with any independent individual or entity, relator's conspiracy claim fails as a matter of law.

Accordingly, the court will dismiss relator's third claim, that defendants participated in a conspiracy to submit false claims in violation of 31 U.S.C. § 3729(a)(1)(C).

III. Motion to Compel Arbitration and Stay Proceedings

"Relator does not oppose defendants' motion to refer his employment related claims to arbitration" based on his arbitration agreement with defendants. (Opp'n to Mot. to Dismiss at 16 (Docket No. 53); see also Decl. of Ashley Neglia Ex. 1 (arbitration agreement) (Docket No. 51-1).) Relator does oppose, however, defendants' request that the entire proceedings be stayed pending the resolution of these employment related claims

in arbitration.  Relator contends that a stay is inappropriate as to his FCA claims because they are brought on behalf of the government, are not referable to arbitration, and are separate from the issues involved in his employment-related claims.  (See Opp'n to Mot. to Dismiss at 16-17.)

Section 3 of the FAA provides that a court "shall on application of one of the parties stay the trial" of "any suit proceeding" brought "upon any issue referable to arbitration under [an arbitration] agreement . . . until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  A party is only "entitled to a stay pursuant to section 3" as to arbitrable claims.  Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979).  As to nonarbitrable claims, which defendants concede the FCA claims are, this court has discretion whether to stay the litigation pending arbitration.  Id. at 863-64.  This court may decide whether "it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."  Id. at 863.  If there is a fair possibility that the stay may work damage to another party, a stay may be inappropriate.  See Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) (citation omitted).

The court will not expand the stay to encompass the nonarbitrable FCA claims.  The issues involved in the FCA claims differ from those involved in relator's employment-based claims.  Relator's FCA claims concern fraud that defendants allegedly perpetrated on the government, while relator's employment-based

16

claims concern the alleged violation of his own rights during his employment. Resolution of relator's employment-based claims will not narrow the factual and legal issues underlying the FCA claims. While relator brings one of his employment claims under the FCA, "[t]he elements differ for a FCA violation claim and a FCA retaliation claim." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008). Moreover, a stay would unnecessarily work to delay resolution of relator's FCA claims, which have been pending for more than three years.

Accordingly, the court will refer relator's employment-based claims, Counts Four, Five, and Six, to arbitration and stay proceedings as to these claims only.[9]

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss Relator's Second Amended Complaint (Docket No. 50) be, and the same hereby is, GRANTED IN PART. Count Three of relator's Second Amended Complaint is DISMISSED WITH PREJUDICE. The motion is DENIED in all other respects.

IT IS FURTHER ORDERED that defendants' Motion to Compel Arbitration and Stay Proceedings (Docket No. 50) be, and the same hereby is, GRANTED with respect to Counts Four, Five, and Six of relator's Second Amended Complaint. Proceedings as to Counts One and Two are not stayed.

Dated: May 8, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[9] All remaining Requests for Judicial Notice (Docket No. 52) are DENIED as MOOT.