1   Mark Holscher (SBN 139582)
    mark.holscher@kirkland.com
2   Tammy A. Tsoumas (SBN 250487)
    tammy.tsoumas@kirkland.com
3   KIRKLAND & ELLIS LLP
    2049 Century Park East
4   Los Angeles, CA 90067
    Telephone:    (310) 552-4200
5   Facsimile:    (310) 552-5900

6   Ashley Neglia (SBN 298924)
    ashley.neglia@kirkland.com
7   KIRKLAND & ELLIS LLP
    555 S. Flower Street, Suite 3700
8   Los Angeles, CA 90071
    Telephone:    (213) 680-8400
9   Facsimile:    (213) 680-8500

10  Sable Hodson (SBN 313252)
    sable.hodson@kirkland.com
11  KIRKLAND & ELLIS LLP
    1601 Elm Street
12  Dallas, TX 75201
    Telephone:    (214) 972-1770
13  Facsimile:    (214) 972-1771

14  *Attorneys for Defendants Aerojet Rocketdyne*
    *Holdings, Inc. and Aerojet Rocketdyne, Inc.*

15

16              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF CALIFORNIA**
17

18  UNITED STATES OF AMERICA ex rel.   )   Case No. 2:15-cv-02245-WBS-AC
    BRIAN MARKUS, individually,        )
19                                     )   **STATEMENT OF UNDISPUTED**
                  Plaintiff,           )   **FACTS IN SUPPORT OF**
20                                     )   **DEFENDANTS' MOTION FOR**
          v.                           )   **SUMMARY JUDGMENT, OR,**
21                                     )   **ALTERNATIVELY, SUMMARY**
    AEROJET ROCKETDYNE HOLDINGS,       )   **ADJUDICATION**
22  INC., a corporation and AEROJET    )
    ROCKETDYNE, INC., a corporation,   )   **[PUBLIC REDACTED VERSION]**
23                                     )
                  Defendants.          )   Judge:        Hon. William B. Shubb
24                                     )   Hearing Date: November 1, 2021
                                       )   Time:         1:30 pm
25  _____)   Courtroom:    5

26

27

28

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR,**
**ALTERNATIVELY, SUMM. ADJUDICATION**

Pursuant to Local Rule 260(a) and Federal Rule of Civil Procedure 56, Defendants Aerojet Rocketdyne Holdings, Inc. and Aerojet Rocketdyne, Inc., (together, "Aerojet") respectfully submit their Statement of Undisputed Facts in support of its Motion for Summary Judgment, or, in the Alternative, Summary Adjudication filed concurrently herewith.

**I.    THE DOD RECOGNIZED THE FLAWS WITH THE CYBERSECURITY CLAUSE AT ISSUE (THE 2013 DFARS CLAUSE) AND AS A RESULT, ABANDONED IT.**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 1 | On November 18, 2013, section 252.204-7012 was published in Chapter 2 of Title 48 of the Code of Federal Regulations (the "2013 DFARS Clause").[1] | • 48 C.F.R. § 252.204-7012 (Nov. 18, 2013) |
| 2 | The 2013 DFARS Clause required contractor systems that transmitted or stored unclassified, controlled technical information ("UCTI") to either (a) implement fifty-one selected National Institute of Standards and Technology ("NIST") Special Publication 800-53 ("NIST SP 800-53") security controls or (b) submit a written explanation to the contracting officer stating why a control was not applicable or that an alternate control or protective measure was used by the contractor to achieve adequate protection. | • 48 C.F.R. § 252.204-7012 (Nov. 18, 2013)<br>• Ex. 13 (NIST Special Publication (SP) 800-53 r.4) (NIST standards in effect at time of November 2013 Clause implementation)<br>• ECF No. 42 ("SAC") ¶¶ 12, 18-19 (admitting that DFARS and NFS Clauses only apply if UCTI is involved)<br>• Ex. 70 (███████████████ )<br>• Ex. 200 ███████████████<br>• Ex. 205 ███████████ ) |

---

[1]  Where Aerojet references the "DFARS Clause" without referencing a specific version of the clause, Aerojet intends to refer to all versions of 48 C.F.R. § 252.204-7012.

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | • Ex. 92 ███████████ ██████████████████ ██████████████ ) |
| 3 | Representatives from the Department of Defense (the "DoD") acknowledged that the controls in NIST SP 800-53 were intended for use on federal government information systems, which differ from private contractor systems. | • Ex. 21 at 8:20-24 (4/6/2017 DoD SBTW Presentation: "[I]f anybody is familiar with [NIST 800-53], that's actually a document that is focused on protecting government systems, it's very federalistic and it gives lots of how to."); *see also* "Ex. 20 (video recording of same) <br><br> • SAC ¶ 20 ("The NIST SP 800-53 standards were originally implemented to apply to contractors operating computer systems on behalf of the federal government.") <br><br> • Ex. 23 at 19:9-10 (6/23/2017 DoD Industry Day Presentation: "[800-53] was for federal agencies and federal information."); *see also* Ex. 22 (video recording of same) <br><br> • Ex. 9 (Guissanie Dep.) at 63:10-64:17 ("there are elements in [NIST 800-53] that are federally focused that do not apply to nonfederal entities.") <br><br> • Ex. 10 (Thomas Dep.) at 84:17-21 ("So prior to May 2016 my understanding is that [NIST 800-]171 was written specifically for industry. Where as [NIST 800-]53 was not, so it was written with the properties of a contractor system in mind.") |
| 4 | The DoD admitted that applying the NIST 800-53 standard to private contractor systems was not practicable. | • Ex. 25 at 25:4-6 (6/23/2017 DoD Industry Day Presentation: "To apply [NIST 800-53] to a contractor system to protect CDI for confidentiality really isn't very -- isn't possible."); *see also* Ex. 24 (video recording of same) <br><br> • Ex. 23 at 19:17-23 (6/23/2017 DoD Industry Day Presentation: "Also, since 800-53 was focused on the federal government, there's a lot of |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | things in there that are federal-centric. They're the ways federal government decided to do business for itself based on policy or other reasons that aren't necessarily the way it has to be done in order to achieve the security objective."); *see also* Ex. 22 (video recording of same) <br><br> • Ex. 25 at 26:12-20 (6/23/2017 DoD Industry Day Presentation: explaining that NIST 800-53 was "overly specific because the federal government wanted to do it in a particular way . . . and that was going to be problematic if we applied that to the contracting community, so we wanted to take that out of the situation"); *see also* Ex. 24 (video recording of same) <br><br> • Ex. 23 at 19:9-13 (6/23/2017 DoD Industry Day Presentation: "So that's 800-53. That was for federal agencies and federal information. In order to apply [NIST 800-53] to the contracting community, NIST 800-171 was developed."); *see also* Ex. 22 (video recording of same) <br><br> • Ex. 18 at AFDODCIO000589 ██████████████ ) |
| 5 | Contractors and contracting officers were confused by the requirements of the DFARS Clause and the NIST standards, leading the Government to clarify requirements in later versions of the DFARS Clause and NIST revisions. | • Ex. 7 (Markus Dep.) at 163:16-164:4 (████████████████ |

3

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| | | ██████████████████████ ██████████████ ) <br><br> • Ex. 9 (Guissanie Dep.) at 45:8-20 (██████████████████████ ██████████████████████ ██████████████████████ ██████████████████████ ██████████████████ ) <br><br> • Ex. 10 (Thomas Dep.) at 117:23-118:2 (██████████████████ ██████████████████████ ██████████████ <br><br> • Ex. 206 at AFDODCIO000215 & AFDODCIO000224 (██████████ ██████████████████████ ██████████████████████ ██████████████████ ) <br><br> • Ex. 35 at ii (2019 Inspector General Report: "DoD Component contracting offices and requiring activities did not always know which contracts required contractors to maintain CUI" and "DoD does not know the amount of DoD information managed by contractors and cannot determine whether contractors are protecting unclassified DoD information from unauthorized disclosure") |
| 6 | On August 26, 2015, a new version of the DFARS Clause was published (the "August 2015 DFARS Clause") that adopted the security requirements set forth in NIST Special | • 48 C.F.R. § 252.204-7012 (Aug. 26, 2015) |

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | Publication 800-171 ("NIST SP 800-171"). The August 2015 Clause permitted a contractor to implement "alternative but equally effective security measures" in lieu of implementing the technical requirements in NIST 800-171. | |
| 7 | NIST SP 800-171 required contractors to comply with 109 cybersecurity controls, which built upon the table of controls set forth in NIST 800-53 and expanded them, adding additional requirements. | • Ex. 14 (NIST 800-171)<br><br>• Ex. 17 at 15 (reflecting defense industry group understanding that under NIST 800-171, even if a contractor was fully compliant with 800-53 they would have 70 "new" or "partially new" requirements) |
| 8 | NIST SP 800-171 expected contractors to have "plans of action designed to correct deficiencies and reduce or eliminate vulnerabilities." | • Ex. 14 (NIST SP 800-171) at Control 3.12.2 |
| 9 | Under the August 2015 DFARS Clause, contractors were expected to have implemented the NIST 800-171 controls immediately upon receiving covered information. | • 48 C.F.R. § 252.204-7012 (Aug. 26, 2015) |
| 10 | On October 8, 2015, the DoD issued a classwide deviation allowing contractors additional time to implement multifactor authentication. | • Ex. 16 |
| 11 | On December 30, 2015, the DFARS Clause was amended to give contractors until December 31, 2017 to comply with NIST SP 800-171 (the "December 2015 DFARS Clause"). | • 48 C.F.R. § 252.204-7012 (Dec. 30, 2015)<br><br>• Ex. 21 at 9:20-25 (4/6/2017 DoD SBTW Presentation: "Other changes that we made as we moved forward with the rule, we gave them extra time to implement the standards. So right now industry has until December 31, 2017, to get these requirements in place on their information systems."); *see also* Ex. 20 (video recording of same)<br><br>• Ex. 10 (Thomas Dep.) at 102:10-15 (testifying the December 2015 DFARS Clause "gave contractors until December 2017 to implement the 171 requirements"), 107:14-17 (same) |
| 12 | Under the December 2015 DFARS Clause, contractors were compliant with the DFARS | • Ex. 9 (Guissanie Dep.) at 46:24-47:1, 108:2-18 (testifying "the |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | Clause even if they had implemented no controls until December 31, 2017. | December 2015 interim rule basically said you had up to two years to implement the requirements of 800-171 . . . for that period, technically one didn't have to meet any requirement") |
| | | • SBTW17 Tr. at 21:7-12 ("Because as a department we basically had about a two year period from 2015 when we put out the interim rule until it was final, and then having extended the requirements to be compliant until December of 2017, you had almost two years for industry to work on it.") |
| 13 | The deadline for compliance with NIST 800-171 was extended because the DoD understood that immediate implementation of NIST 800-171 was not feasible for government contractors. | • Ex. 19 at 2 (letter from industry group stating that industry and the DoD reached a "consensus" regarding the December 31, 2017 implementation deadline) |
| | | • Ex. 17 at 2 (industry group letter discussing "inability of industry to comply with at least one of the requirements" of the August 2015 DFARS Clause and explaning that contractors needed "time to implement the requirements of the [NIST 800-171]") |
| | | • Ex. 32 at 42:12-43:25 (12/7/2017 congressional testimony from Ellen Lord, Defense Undersecretary for Acquisition, Technology, and Logistics reflecting that December 31, 2017 deadline was adopted because of concern about compliance) |
| 14 | On October 21, 2016, the DFARS Clause was amended again (the "2016 DFARS Clause"). The amendment reiterated that compliance with NIST SP 800-171 was not required until December 31, 2017 and provided instructions to contractors on how to request variances from NIST SP 800-171's controls. | • 48 C.F.R. § 252.204-7012 (Oct. 21, 2016) |
| | | • 81 FR 72986 at 72990 (The phrase "as soon as practical" is added to encourage contractors to begin implementing the security |

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| | | requirements in NIST SP 800-171 prior to the December 31, 2017, deadline, but allows contractors to exercise their own judgement when planning an optimal implementation strategy.) |
| 15 | In December 2016, NIST published SP 800-171, Revision 1. Under the Revision, contractors could show compliance through adoption of a system security plan ("SSP") and implementation of plans of action and milestones ("POAMs") when they had not yet implemented a given control. | • Ex. 15 (NIST 800-171 Revision 1) at Ch. 3 ("Nonfederal organizations should describe in a system security plan, how the specified security requirements are met or how organizations plan to meet the requirements.") |
| | | • Ex. 29 at 4:20-5:70 (6/23/2017 DoD Industry Day Presentation: "So, again, 171 states that the system security plan is a mechanism to document implementation of how a contractor's implementing the [NIST 800-]171 requirements and that a POAM may be linked with the system security plan to even show planned implementation. So if a requiring activity requested for your system security plan and saw that you had a plan of action and milestones in place for say five or six of your controls, and they were willing to accept that risk, then that is considered implementing the [NIST 800-]171 and you are in compliance with the DFARS rule."); *see also* Ex. 28 (video recording of same) |
| | | • Ex. 29 at 15:13-21 (6/23/2017 DoD Industry Day Presentation: "[Y]our SSP and any associated POAMs document your implementation of [NIST 800-]171. So there could be a case where the requiring activity does not even ask for it. And if not, by signing the contract, you have something that documents how you're implementing [NIST |

7

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | 800-]171, so you're in compliance with that requirement of the clause."); *see also* Ex. 28 (video recording of same) |
| 16 | SSPs set forth how an organization's cybersecurity requirements are currently met or how the organization plans to meet those requirements. POAMs are specific to any unimplemented security controls, and describe how the organization plans to address them and how the planned mitigation will be implemented. | • Ex. 15 (NIST 800-171 Revision 1) at Ch. 3 ("Nonfederal organizations should describe in a system security plan, how the specified security requirements are met or how organizations plan to meet the requirements.") <br><br>• Ex. 29 at 4:20-5:70 (6/23/2017 DoD Industry Day Presentation: "So, again, 171 states that the system security plan is a mechanism to document implementation of how a contractor's implementing the [NIST 800-]171 requirements and that a POAM may be linked with the system security plan to even show planned implementation."); *see also* Ex. 28 (video recording of same) |
| 17 | As of December 2016, a contractor would be considered to have implemented NIST 800-171 if they had an SSP reflecting POAMs in place. | • Ex. 15 (NIST 800-171 Revision 1) at Ch. 3 <br><br>• Ex. 29 at 4:20-5:7 (6/23/2017 DoD Industry Day Presentation: "So, again, [NIST 800-]171 states that the system security plan is a mechanism to document implementation of how a contractor's implementing the [NIST 800-]171 requirements and that a POAM may be linked with the system security plan to even show planned implementation. So if a requiring activity requested for your system security plan and saw that you had a plan of action and milestones in place for say five or six of your controls, and they were willing to accept that risk, then that is considered implementing the [NIST 800-]171 and you are in compliance with the DFARS rule."); |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     |                 | *see also* Ex. 28 (video recording of same) |
|     |                 | • 48 C.F.R. § 252.204-7012 (Oct. 21, 2016) |
|     |                 | • 48 C.F.R. § 252.204-7012 (Dec. 30, 2015) |
|     |                 | • Ex. 32 at 42:12-43:25 (12/7/2017 congressional testimony from Ellen Lord, Defense Undersecretary for Acquisition, Technology, and Logistics: "the only requirement for [2017] is to lay out what your plan [for compliance with NIST 800-171] is" and that it can "be a very simple plan") |
|     |                 | • Ex. 34 at 53:7-11 (4/26/2018 DoD SBTW Presentation: "Compliance means again not having every single security requirement implemented but having a System Security Plan in place."); *see also* Ex. 33 (video recording of same) |
|     |                 | • Ex. 34 at 19:24-20:24 (4/26/2018 DoD SBTW Presentation: "The NIST 800-171 is structured such that a contractor can demonstrate that he's implementing the 110 requirements in that pub[lication] by documenting what he's doing in a System Security Plan . . . in that he describes his information system and he also would describe how he is implementing the security requirements that he's implementing, and he would indicate which security requirements he has not yet implemented"); *see also* Ex. 33 (video recording of same) |
|     |                 | • Ex. 34 at 21:14-23 (4/26/2018 DoD SBTW Presentation: "But now because they can document in the System Security Plan how they plan to implement, they now can |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | confidently sign the contract knowing that they are implementing NIST 800-]171 in the way that it says you need to implement it."); *see also* Ex. 33 (video recording of same)<br><br>• Ex. 29 at 15:13-21 (6/23/2017 DoD Industry Day Presentation: "[Y]our SSP and any associated POAMs document your implementation of [NIST 800-]171. So there could be a case where the requiring activity does not even ask for it. And if not, by signing the contract, you have something that documents how you're implementing [NIST 800-]171, so you're in compliance with that requirement of the clause."); *see also* Ex. 28 (video recording of same)<br><br>• Ex. 29 at 22:22-23:4 (6/23/2017 DoD Industry Day Presentation: "if you look at the language in the clause, it says shall implement as a minimum, 800-171. And if you look at revision 1, [NIST] 800-171 says you can meet my requirements by doing a SSP and planned requirements with a plan of action. So it doesn't say implement the -- the clause doesn't say implement the requirements of 171. It says implement 171."); *see also* Ex. 28 (video recording of same) |
| 18 | The DoD recognized that contractors would remain non-compliant with the technical controls in NIST 800-171 even after the December 31, 2017 compliance deadline, yet remain compliant with the DFARS Clause. | • Ex. 21 at 20:18-23 (4/6/2017 DoD Small Business Training Week ("SBTW") Presentation: "And it might take longer than 2017 to get [to full technical compliance]. They would document that in their System Security Plan. What's interesting about the System Security Plan is that the NIST 800-171 says that the System Security Plan documents how the contractor is implementing 171."); *see also* Ex. 20 (video recording of same) |
| 19 | The DoD instructed contracting officers to modify existing contracts that incorporated the | • Ex. 30 at 3 (9/21/2017 Memorandum from Office of the |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
|  | 2013 DFARS Clause or the initial version of NIST SP 800-171 in favor of NIST SP 800-171, Revision 1, which offered more flexibility to contractors. | Under Secretary of Defense directing "contracting officer[s] to modify the contract[s] to authorize the use of NIST SP 800-171, Revision 1, dated December 2016," if the contract included an earlier version of the NIST requirements)<br><br>• Ex. 31 (12/12/2017 Memorandum from the Office of the Under Secretary of Defense "requesting contracting administration components to act on behalf of all affected components to issue mass modifications to bring DoD contracts in conformity with the latest version of NIST SP 800-171.") |
| 20 | In 2020, the "NIST SP 800-171 DoD Assessment Methodology" and the "Cybersecurity Maturity Model Certification" took effect. | • 85 FR 61505 (introducing assessment methodology)<br><br>• Ex. 21 at 16:22-17:11 (4/6/2017 DoD SBTW Presentation: discussing in 2017 whether DoD would monitor contractors' system for implementation of NIST 800-171 and stating "that is not going to happen" and explaining DoD "publishing this DFARS rule, realized that there is no conceivable way for us to deal with the volume of contractors and subcontractors that we have to deal with to be able to go out and do a hands-on inspection of their systems. So that is not the intent."); *see also* Ex. 20 (video recording of same).<br><br>• Ex. 21 at 17:11-17:13 (stating in 2017 that "[t]he department's position is that they will not recognize third party assessor certifications"); *see also* Ex. 20 (video recording of same). |
| 21 | The NIST SP 800-171 DoD Assessment Methodology was the first time the DoD required a compliance assessment with any NIST standards from contractors. | • 85 FR 61505 (introducing assessment methodology)<br><br>• 48 C.F.R. § 252.204-7012 (Nov. 18, 2013) |

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|-----|----------------|---------------------|
| | | • 48 C.F.R. § 252.204-7012 (Aug. 26, 2015) |
| | | • 48 C.F.R. § 252.204-7012 (Sept. 21, 2015) |
| | | • 48 C.F.R. § 252.204-7012 (Dec. 30, 2015) |
| | | • 48 C.F.R. § 252.204-7012 (Oct. 21, 2016) |
| | | • 48 C.F.R. § 252.204-7012 (Dec. 31, 2019) |
| | | • Ex. 21 at 16:22-25 (4/6/2017 DoD SBTW Presentation: telling industry that it "is not going to happen" that someone would "come and monitory [industry] systems to see if we're actually implementing [NIST 800-]171") *see also* Ex. 20 (video recording of same) |
| | | • Ex. 21 at 17:1-23:6 (4/6/2017 DoD SBTW Presentation: explaining that "when publishing this DFARS rule, [DoD] realized that there is no conceivable way for us to deal with the volume of contractors and subcontractors that we have to deal with to be able to go out and do a hands-on inspection of their systems. So that is not the intent" and it was the "department's position is that they will not recognize third party assessor certifications") |
| | | • Ex. 199 ███████████████ ███████████████ ███████████████ ██████ |
| | | • Ex. 35 at 28 ("While DoD Component contracting offices oversee contractor performance, they expressed confusion on whether they could conduct oversight activities of contractor networks and systems specific to cybersecurity protections.") |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 22 | The NIST SP 800-171 DoD Assessment Methodology introduced, for the first time, a method to assess contractor implementation of NIST 800-171 controls required by the DFARS Clause. Specifically, the methodology scores contractors based on the "net effect of NIST SP 800-171 security requirements not yet implemented[.]" | • 85 FR 61505 (introducing assessment methodology)<br><br>• Ex. 21 at 16:22-23:6 (4/6/2017 DoD SBTW Presentation: stating in 2017 that "[t]he department's position is that they will not recognize third party assessor certifications"); *see also* Ex. 20 (video recording of same)<br><br>• Ex. 199 ███████████████<br>█████████████<br>        )<br><br>• Ex. 92 ████████████<br>███████████████<br>         ) |
| 23 | No version of the DFARS Clause after November 2013 required contractors to comply with controls from NIST 800-53. | • 48 C.F.R. § 252.204-7012 (Aug. 26, 2015)<br><br>• 48 C.F.R. § 252.204-7012 (Sept. 21, 2015)<br><br>• 48 C.F.R. § 252.204-7012 (Dec. 30, 2015)<br><br>• 48 C.F.R. § 252.204-7012 (Oct. 21, 2016)<br><br>• 48 C.F.R. § 252.204-7012 (Dec. 31, 2019) |
| 24 | The government expected that contractor systems, even if fully compliant with NIST 800-53 or NIST 800-171 could be breached and information could be exfiltrated. | • Ex. 34 at 45:15-17 (4/26/2018 DoD SBTW Presentation: "And they could implement everything about the clause perfectly and still have a cyber incident."); *see also* Ex. 33 (video recording of same) |

## II.     THE NFS CLAUSE AT ISSUE

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 25 | On January 24, 2011, Section 1852.204-76 was published in Title 48 of the Code of Federal Regulations (the "NFS Clause"). | • 48 C.F.R. 1852.204-76 (Jan. 24, 2011) |
| 26 | The NFS Clause requires contractors to "protect the confidentiality, integrity, and availability of | • 48 C.F.R. 1852.204-76 (Jan. 24, 2011) at (a) |

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
|  | NASA Electronic Information and IT resources and protect NASA Electronic Information from unauthorized disclosure." |  |
| 27 | By its terms, the NFS Clause is only "applicable to [] NASA contractors . . . that process, manage, access, or store unclassified electronic information, to include Sensitive But Unclassified (SBU) information." | • 48 C.F.R. 1852.204-76 (Jan. 24, 2011) at (b) |
| 28 | The NFS Clause does not require the contractor's information technology system to meet any specific security standard on its face, and allows "Parts of the clause and referenced ADL may be waived by the contracting officer." | • 48 C.F.R. 1852.204-76 (Jan. 24, 2011) |
| 29 | The NFS Clause instructs NASA contracting officers to outline the requisite cybersecurity standards in an "Applicable Documents List (ADL) provided as an attachment to the contract." | • 48 C.F.R. 1852.204-76 (Jan. 24, 2011) at (b) |
| 30 | One document that is optional for NASA contracting officers to include in a contract's ADL is NASA Procedural Requirement ("NPR") 2810.1, which sets forth NASA cybersecurity policies which contemplate a system compliant with NIST 800-53. | • Ex. 36 (NPR 2810.1A)<br>• Ex. 212 (NASA webpage reflecting cybersecurity policies)<br>• RJN Fact No. 21 |

## III. LESS THAN HALF OF THE CONTRACTS IN RELATOR'S COMPLAINT INCLUDE THE DFARS OR NFS CLAUSES.

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 31 | Relator alleges that Aerojet defrauded the government in connection with eighteen contracts enumerated in his Second Amended Complaint. | • Ex. 7 (Markus Dep.) at 295:3–8.<br>• SAC ¶¶ 67-68, 84-119<br>• RJN Fact No. 71 |
| 32 | On February 25, 2014, the Department of the Army (the "Army") awarded Aerojet contract # W31P4Q-14-C-0075, to manufacture HAWK rocket motors. The contract did not contain the DFARS Clause. | • Ex. 71<br>• Ex. 37 at Row 2 |
| 33 | On March 11, 2014, the National Aeronautics and Space Administration ("NASA") awarded Aerojet Award ID # NNC13TA66T under parent contract # NNC10BA13B, to study the potential application of additive manufacturing for the | • Ex. 122<br>• Ex. 121 at row 10 |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
|  | RL10 rocket propulsion engine. The award did not contain the NFS Clause. |  |
| 34 | On April 22, 2014, the Department of the Navy (the "Navy") awarded Aerojet contract # N00014-14-C-0035, to develop injector/manifold, and inlet designs for a continuous detonation engine. The contract contained the 2013 DFARS Clause. | • Ex. 104<br>• Ex. 37 at Row 3 |
| 35 | On September 29, 2014, the Department of the Air Force (the "Air Force") awarded Aerojet contract # FA8650-13-D-2335, Award ID # 0002,[2] to fabricate powerhead hardware for a scramjet technology program. The contract did not contain the DFARS Clause. | • Ex. 39<br>• Ex. 37 at Row 5 |
| 36 | On September 30, 2014, the Navy awarded Aerojet contract # N68936-14-C-0035, to perform system optimization studies for defense weapons systems. The contract contained the 2013 DFARS Clause. | • Ex. 105<br>• Ex. 37 at Row 8 |
| 37 | On September 30, 2014, the Air Force awarded Aerojet contract # FA8650-14-C-7424, to design the thrust chamber assembly for a bantam rocket engine. The contract was funded by the Defense Advanced Research Projects Agency ("DARPA"). The contract contained the 2013 DFARS Clause. | • Ex. 42<br>• Ex. 37 at Row 7 |
| 38 | On December 11, 2014, NASA awarded Aerojet contract # NNC10BA02B, Award ID # NNC15TA07T, to conduct testing to advance key enabling technology for hypersonic propulsion systems. The contract itself did not contain the NFS Clause but stated that "all of the applicable clauses under [the parent award] are still applicable" and referenced particular regulations "for their specific importance to this Task Order." The parent award included the NFS Clause. | • Ex. 124<br>• Ex. 121 at Row 14 |

[2]  Aerojet was awarded parent contract FA8650-13-D-2335 on May 10, 2013, with subsequent awards #0002, 0003, and 0004, named in Relator's SAC. The original parent award did not contain the DFARS Clause. *See* Ex 38.

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 39 | On March 31, 2015, NASA awarded Aerojet contract # NNC15CA07C, to produce the NASA ion propulsion system for future space exploration and commercial use. The contract contained the NFS Clause. | • Ex. 125 |
| 40 | Prior to contracting with Aerojet, NASA ███████████████████████████████████████████ | • Ex. 123 at NASA_TOUHY00001128 (███████████████████████████████ )<br>• Ex. 166 ████████████████ ) |
| 41 | ████████████████████████████████████████ | • Ex. 125<br>• Ex. 36 (NPR 2810.1A)<br>• Ex. 212 (NASA webpage reflecting cybersecurity policies)<br>• RJN Fact No. 21 |
| 42 | ████████████████████████████████████████ | • Ex. 123 at NASA_TOUHY00001128<br>• Ex. 125 |
| 43 | On April 8, 2015, the Air Force awarded Aerojet contract # FA8650-13-D-2335, Award ID # 0003, to test engine operability and performance for scramjet technology. The contract did not contain the DFARS Clause. | • Ex. 40<br>• Ex. 37 at Row 9 |
| 44 | On July 27, 2015, NASA awarded Aerojet contract # NNC15VD08P, to perform an industry hypersonic propulsion capability assessment. The contract did not contain the NFS Clause. | • Ex. 126<br>• Ex. 121 at Row 17 |
| 45 | On September 15, 2015, the Defense Advanced Research Projects Agency ("DARPA") awarded Aerojet contract # HR001115C0132, to perform research and development for the High Altitude Velocity (HAVOC) program for the Air Force. | • Ex. 41<br>• Ex. 37 at Row 15 |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
|  | The contract incorporated by reference the 2013 DFARS Clause. |  |
| 46 | On October 8, 2015, the Air Force awarded Aerojet contract # FA8650-13-D-2335, Award ID # 0004, to conduct a performance analysis of flight four of X-51A. The contract did not contain DFARS Clause 252.204-7012. | • Ex.43<br>• Ex. 37 at Row 17 |
| 47 | On November 17, 2015, NASA issued Award No. NNM16AB22P to accommodate final payment to Aerojet on contract # NAS8-36801, though there is no writted record for this award. The government's records reflect that the contract was completed on July 11, 2017. | • Ex. 121 at Row 20<br>• RJN Fact No. 60 |
| 48 | On November 19, 2015, NASA awarded Aerojet contract # NNM16AA02C, to provide RS-25 rocket engines for the Space Launch System. The contract incorporated the NFS Clause by reference. | • Ex. 127<br>• Ex. 128<br>• Ex. 121 at Row 21 |
| 49 | On December 14, 2015, NASA awarded Aerojet contract # NNM16AB21P, to test a research engine for the purpose of demonstrating a RAMS injector. The contract did not contain the NFS Clause. | • Ex. 129<br>• Ex. 121 at Row 22 |
| 50 | On December 23, 2015, the Army awarded Aerojet undefinitized contract # W31P4Q-16-C-0026,[3] to manufacture Igniter rocket motors. The contract incorporated by reference the 2013 DFARS Clause. The definitized contract was signed on October 31, 2016. | • Ex. 72 at AR00234332, AR00234336.<br>• Ex. 73<br>• Ex. 37 at Row 19 |
| 51 | On January 15, 2016, NASA awarded Aerojet contract # NNH16CP17C, to participate in the NEXTSTEP program to develop capabilities and technologies for advanced propulsion systems, with commercial applications. The contract did not contain the NFS Clause. | • Ex. 130<br>• Ex. 121 at Row 23 |
| 52 | On April 1, 2016, NASA awarded Aerojet contract # NNM16AA12C, to manufacture RL10 rocket flight engines for SLS missions. The | • Ex. 131<br>• Ex. 121 at Row 25 |

---

[3]   Contract # W31P4Q-16-C-0026 is the correct, as-awarded contract number for contract W31P4Q-15-C-0016, which was named in Relator's complaint. SAC ¶¶ 66-68; *see also infra* Fact No. 58.

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
|  | contract incorporated the NFS Clause by reference. |  |
| 53 | Of the contracts identified in Relator's SAC, there are five DoD contracts that contain the DFARS Clause | • SAC ¶¶ 67-69; 85-114<br>• Ex. 71 (Contract No. W31P4Q-14-C-0075 without the DFARS Clause)<br>• Ex. 104 (Contract No. N00014-14-C-0035 with 2013 DFARS Clause)<br>• Exs. 72 & 73 (Contract No. W31P4Q-16-C-0026 with 2013 and 2016 DFARS Clauses)<br>• Ex. 105 (Contract # N68936-14-C-0035 with 2013 DFARS Clause)<br>• Ex. 42 (Contract No. FA8650-14-C-7424 with 2013 DFARS Clause)<br>• Ex. 39 (Contract No. FA8650-13-D-2335, Award ID # 0002 without DFARS Clause)<br>• Ex. 40 (Contract No. FA8650-13-D-2335, Award ID # 0003 without DFARS Clause)<br>• Ex. 43 (Contract No. FA8650-13-D-2335, Award ID # 0004 without DFARS Clause)<br>• Ex. 41 (Contract No. HR001115C0132 with the 2013 DFARS Clause) |
| 54 | Of the contracts identified in Relator's SAC, there are 4 NASA contracts that contain the NFS Clause. | • Ex. 122 (Contract No. NNC10BA13B, Award ID # NNC13TA66T incorporating the NFS Clause)<br>• Ex. 130 (Contract No. NNH16CP17C without NFS Clause)<br>• Ex. 131 (Contract No. NNM16AA12C with NFS Clause)<br>• Ex. 129 (Contract No. NNM16AB21P without NFS Clause) |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | • Ex. 127 (Contract No. NNM16AA02C with NFS Clause) |
| | | • Ex. 125 (Contract No. NNC15CA07C with the NFS Clause) |
| | | • Ex. 124 (Contract No. NNC10BA02B, Award ID # NNC15TA07T without the NFS Clause) |
| | | • Ex. 126 (Contract No. NNC15VD08P without the NFS Clause) |
| 55 | As of 2017, only approximately 80% of contracts included the DFARS Clause as a contract term. | • Ex. 21 at 33:3-11 (4/6/2017 DoD SBTW Presentation: "We're up to I think like, 80 percent of the time [the DFARS Clause] gets in [contracts], but not always."); *see also* Ex. 20 (video recording of same) |

## IV.    AEROJET DELIVERED THE GOODS AND SERVICES IT CONTRACTED TO PROVIDE THE GOVERNMENT.

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 56 | Aerojet delivered the goods and services for which the government agencies paid on Contract Nos. W31P4Q-14-C-0075; N00014-14-C-0035; FA8650-13-D-2335, Award ID # 0002; N68936-14-C-0035; FA8650-14-C-7424; FA8650-13-D-2335, Award ID # 0003; NNM16AB22P; HR001115C0132; FA8650-13-D-2335, Award ID # 0004; W31P4Q-16-C-0026; NNC10BA13B, Award ID # NNC13TA66T; NNC10BA02B, Award ID # NNC15TA07T; NNC15CA07C; NNC15VD08P; NNM16AA02C; NNM16AB21P; NNH16CP17C; and NNM16AA12C. | • Ex. 37 at cells 2E, 3E, 5E-7E, 9E, 15E, 17E, 19E (DoD contract data) • Ex. 121 at cells 10F, 14F, 15F, 17F, 20F, 21F, 22F, 23F, 25F (NASA contract data) |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

## V. AEROJET DISCLOSED ITS NONCOMPLIANCE WITH THE CYBERSECURITY CLAUSES TO THE GOVERNMENT AND THE GOVERNMENT UNDERSTOOD THAT AEROJET WAS NOT COMPLIANT.

### A. Aerojet disclosed to the DoD that it was not compliant with the DFARS Clause or NIST 800-53 and the DoD Understood that Aerojet Was Not Compliant.

**1.** **Aerojet's Contracts with the Army**: Aerojet disclosed that it was not compliant with the DFARS Clause to the Army and the Army understood that Aerojet was not compliant.

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 57 | Aerojet disclosed that it was not compliant with the DFARS Clause to the Army. | • Ex. 76 (8/28/14 e-mail and attached letter ████████████████████ ████████ ) <br><br> • Ex. 77 (9/10/2014 e-mail from B. Joe to J. Nabity, noting AR ████████████████████ ) <br><br> • Ex. 78 ████████ ██████████████████ ██████████ ) <br><br> • Ex. 79 ████ ██████████████████ ██████ ) <br><br> • Ex. 80 (10/2/2014 e-mail invite for teleconference to discuss AR position on DFARS) <br><br> • Ex. 82 ████ ██████████████████ ██████ ) <br><br> • Ex. 83 at AR00035399-5405 (10/27/14 email and attached disclosure letter to Army providing compliance update) <br><br> • Ex. 84 (10/27/14 disclosure letter to Army providing compliance update) <br><br> • Ex. 85 (████ ██████████████████ ██████ <br><br> • Ex. 91 ████ ██████████████████ |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     |                 | ███████████████████ |
|     |                 | • Ex. 93 ██████████████ |
|     |                 | • Ex. 95 ██████████████ |
|     |                 | • Ex. 96 (6/30/2015 e-mail telecom invite to discuss DFARS with OSD and Army) |
|     |                 | • Ex. 98 (7/31/2015 e-mail with telecom invite to discuss DFAR compliance) |
|     |                 | • Ex. 101 (12/23/15 e-mail from J. Greene to M. Teasley updating Army that ██████████ |
|     |                 | • Ex. 8 (Hewitt Dep.) at 25:14-26:4 (discussing a September 29, 2014 teleconference between the ██████████ ) |
|     |                 | • Ex. 8 (Hewitt Dep.) at 33:14-23 ( ██████████ |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | • Ex. 8 (Hewitt Dep.) at 71:24-72:4 (███) |
| 58 | On August 28, 2014, ███ ███ in connection with Contract No. W31P4Q-14-C-0157, which was eventually awarded to Aerojet as Contract No. W31P4Q-16-C-0026.[4] | • Ex. 76 ███ (███)<br>• Ex. 8 (Hewitt Dep.) at 54:11-13 (testifying Aerojet never accepted W31P4Q-14-C-0157)<br>• Ex. 82 (noting the change from W31P4Q-14-C-0157 to W31P4Q-15-C-0016)<br>• Ex. 8 (Hewitt Dep.) at 66:20–22 ("Aerojet did not sign . . . W31P4Q-15-C-0016 . . . .")<br>• Ex. 8 (Hewitt Dep.) at 73:10-19 (testifying that the solicitation was reissued as W31P4Q-14-R-0109, Amendment 2 on August 10, 2015)<br>• Ex. 73 at AR00234357 (signed definitized Contract No. W31P4Q-16-C-0026)<br>• Ex. 37 at cells 19B & 19L (reflecting that contract W31P4Q-16-C-0026 resulted from solicitation W31P4Q-14-R-0109) |
| 59 | On September 10, 2014, ███ ███ Aerojet indicated that it could "not confirm that [Aerojet] [is] compliant with [the DFARS] clause at this time." | • Ex. 77 |
| 60 | On September 22, 2014, Aerojet disclosed its non-compliance with the DFARS Clause to the Army during a teleconference ███ | • Ex. 78 |
| 61 | On September 29, 2014, Aerojet sent the Army a letter ███ stating ███ | • Ex. 78<br>• Ex. 81 |

---

[4]   For ease of reference, Aerojet hereinafter refers to this contract as the awarded contract number.

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     | ██████████████████████████ | • Ex. 8 (Hewitt Dep.) at 33:14-23 (██████████████ ), 60:6-61:5 █ ██ , 92:3-6 (██████ |
| 62 | The Army read Aerojet's September 29, 2014 letter and understood that ████████████ | • Ex. 78<br>• Ex. 81<br>• Ex. 8 (Hewitt Dep.) at 33:14-23 (██████████████ ), 60:6-61:5 █ ██ , 92:3-6 (██████ |
| 63 | On September 29, 2014, Aerojet and the Army had a teleconference in which ████████ | • Ex. 81<br>• Ex. 8 (Hewitt Dep.) at 25:14-26:4 (██████████████ ) |
| 64 | On September 29, 2014, ████████████ | • Ex. 79<br>• Ex. 81 |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 65 | On September 30, 2014, a contracting officer for the Army ███████████████████████████████████ | • Ex. 79<br>• Ex. 81<br>• Ex. 82 |
| 66 | On October 1, 2014, Aerojet requested a teleconference with the Army ████████ ██████████████████ Relator, along with Aerojet's cybersecurity experts, participated in the teleconference. ████████████████████████ ██████████████████████████████ | • Ex. 82<br>• Ex. 80 |
| 67 | On October 27, 2014, Aerojet sent a letter to the Army stating that the attachment which described Aerojet's status with respect to NIST 800-53 control implementation showed "the specific 7 areas in which [Aerojet] is in substantial compliance to the requirements of [the DFARS Clause]." | • Ex. 83 at AR00035400. |
| 68 | On February 10, 2015, a contracting officer from the Army ███████████████████████████████████ | • Ex. 85 |
| 69 | In March 2015, the Army sent Aerojet's October 27, 2014 letter to the DoD Office of the Chief Information Officer (the "DoD OCIO") along with a memorandum ████████████████████ ███████████████████████████████ | • Ex. 86 |
| 70 | On April 2, 2015, the DoD OCIO sent a memorandum to the Army concluding that Aerojet ████████████████████████████ | • Ex. 89 |
| 71 | On April 14, 2015, ████████████████ ████████████████████████████████ | • Ex. 91 |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 72 | On May 14, 2015, the Army ███████████████ | • Ex. 92 |
| 73 | On May 21, 2015, the DoD OCIO informed the Army that it concluded that Aerojet ███████████████ | • Ex. 94 at AR00218330. |
| 74 | On June 15, 2015 and June 30, 2015, Aerojet disclosed to the Army ███████████ | • Ex. 93<br>• Ex. 95 |
| 75 | Aerojet made its cybersecurity experts available to the Army on June 30, 2015, via teleconference, to discuss Aerojet's non-compliance with the DFARS Clause. | • Ex. 97<br>• Ex. 96 |
| 76 | Aerojet conducted another teleconference with the Army on August 3, 2015 in which Aerojet discussed its non-compliance with the DFARS Clause. | • Ex. 98 |
| 77 | On August 13, 2015, Aerojet sent the Army an updated matrix regarding its DFARS Clause compliance status. | • Ex. 89 |
| 78 | On December 23, 2015, Aerojet sent a signed version of undefinitized Contract No. W31P4Q-16-C-0026 ███████████████ | • Ex. 101 |
| 79 | On March 31, 2016, the project manager for Contract No. W31P4Q-16-C-0026 ██████████ | • Ex. 102 |
| 80 | The Army understood that Aerojet was not compliant with the 2013 DFARS Clause. | • Ex. 86 at AFDODCIO000109.<br>• Ex. 91<br>• Ex. 94 ██████████ |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     |                 | • Ex. 79 |
|     |                 | • Ex. 81 (10/1/2014 timeline re Igniters contract) |
|     |                 | • Ex. 82 ████████████ █████████████████████ ██████████████████) |
|     |                 | • Ex. 85 (██████████ ██████████████████████ █████████████████ █████) |
|     |                 | • Ex. 8 (Hewitt Dep.) at 25:14-26:4 (████████████████████ ████████████████████ ████████████████████ ██████████████) |
|     |                 | • Ex. 8 (Hewitt Dep.) at 33:14-23 ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ |
|     |                 | • Ex. 8 (Hewitt Dep.) at 67:21-23 (████████████████████ ████████████████████ █████████) |
|     |                 | • Ex. 8 (Hewitt Dep.) at 71:24-72:4 (████████████████████ |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     |                 | ███████████████████ |

2. **Aerojet's Contracts with the Navy**: Aerojet disclosed that it was not compliant with the DFARS Clause to the Navy and the Navy understood that Aerojet was not compliant.

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 81 | Aerojet disclosed that it was not compliant with the DFARS Clause to the Navy. | • Ex. 110 <br> • Ex. 111 <br> • Ex. 112, ¶ 3 |
| 82 | Aerojet sent the Navy a letter in connection with N68936-14-C-0035 on September 30, 2014 stating that it was not compliant ███████ ████████████████████ | • Ex. 110 <br> • Ex. 111 |
| 83 | On September 30, 2014, the contracting officer ████████████████ acknowledged receipt of Aerojet's September 30, 2014 letter and ████████ | • Ex. 111 <br> • Ex. 112, ¶ 3 |
| 84 | The contracting officer for Contract No. N00014-14-C-0035 found no documents related to the DFARS Clause in a search of his files. | • Ex. 113, ¶ 5 |
| 85 | The Navy understood that Aerojet was not compliant with the 2013 DFARS Clause. | • Ex. 111 <br> • Ex. 112, ¶ 3, Ex. 1 (reflecting acceptance of Aerojet's disclosure statement). |

3. **Aerojet's Contracts with the Air Force**: Aerojet disclosed that it was not compliant with the DFARS Clause to the Air Force and the Air Force understood that Aerojet was not compliant.

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 86 | Aerojet disclosed that it was not compliant with the DFARS Clause to the Air Force. | • Ex. 56 ████████████ ████████████████████ <br> • Ex. 55 at AIRFORCE_TOUHY00000006-007 |

27

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | █ <br><br> ██████████ <br><br>• Exs. 59-61 (disclosure letter sent to Air Force and DARPA representatives) <br>• Ex. 61 at AIRFORCE_TOUHY00000002-03 (██████████) <br>• Ex. 65 (6/17/2015 e-mail to Air Force, attaching compliance matrix noting that "AR is compliant with the majority of the clause's requirements.") <br>• Ex. 66 ██████████) <br>• Ex. 67 (6/22/2015 e-mail invite to telecom with AF and DCMA to discuss AR compliance with DFARS) <br>• Ex. 68 ██████████ |
| 87 | ██████████ | • Ex. 54 at AR00196693 <br>• Ex. 37 at row 6 (reflecting that DARPA was the funding agency for the Air Force award) |

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | ████████████████████████ ████████ | |
| 88 | On July 24, 2014, Aerojet disclosed that it was not compliant with the DFARS Clause to contracting officials from the Air Force █ ████████████ | • Ex. 56 |
| 89 | Contracting officials from the Air Force on Contract No. ████████████ understood from the teleconference with Aerojet on July 24, 2014 that Aerojet was not compliant with the DFARS Clause. | • Ex. 56 |
| 90 | On August 7, 2014, Aerojet disclosed again that it was not compliant with the DFARS Clause to contracting officials from the Air Force █ ████████████ | • Ex. 56 |
| 91 | Contracting officials from the Air Force on ████████████ understood from the teleconference with Aerojet on August 7, 2014 that Aerojet was not compliant with the DFARS Clause. | • Ex. 56 |
| 92 | On August 28, 2014, Aerojet told an Air Force representative in connection with ████ ████████████ that it was "continu[ing] to work the issues / actions associated with [the DFARS Clause]." | • Ex. 57 |
| 93 | On September 8, 2014, Aerojet, including individuals from its IT department participated in a teleconference with DCMA, ████ ████████████ in which Aerojet disclosed that it had a "company plan to reach compliance" with the DFARS Clause. | • Ex. 55 at AIRFORCE_TOUHY00000006-007 █ ████████████████████ ████████████████████ ████████████████████ ████████████ |
| 94 | On September 18, 2014, Aerojet sent a disclosure letter to the Air Force in connection with ████████████ stating that it was not compliant with the DFARS Clause ████████████ | • Exs. 59-61 |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 95 | On September 19, 2014, an Air Force contracting officer for Contract No. FA8650-14-C-7424 ███████████████████████ | • Ex. 63 |
| 96 | On September 26, 2014, the Air Force provided ███████████████████████ | • Ex. 64 |
| 97 | On June 17, 2015, Aerojet sent a disclosure letter to the Air Force ███████████████████████ | • Ex. 65<br>• Ex. 66 |
| 98 | On June 23, 2015, Aerojet discussed its compliance with the DFARS Clause during a teleconference with the Air Force. | • Ex. 67<br>• Ex. 68 |
| 99 | On June 23, 2015, Aerojet sent the Air Force a letter ███████████████████████ | • Ex. 68 |
| 100 | The Air Force understood that Aerojet was not compliant with the 2013 DFARS Clause. | • Ex. 64<br>• Ex. 62 ████████████████<br>• Ex. 54 at AR00196693 ( ███████ |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| | | ███████████ ) |
| | | • Ex. 58 at AR00228740 ( ████████ |
| | | • Ex.63 ████████ |
| | | • Ex. 64 ████████ ) |

**4.** **Aerojet's Contracts with DARPA**: Aerojet disclosed that it was not compliant with the DFARS Clause to the Defense Advanced Research Projects Agency, which understood that Aerojet was not compliant.

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 101 | Aerojet disclosed that it was not compliant with the DFARS Clause to the Defense Advanced Research Projects Agency ("DARPA"). | • Ex. 54 at 196693 ( ████████ ) |
| | | • Ex. 58 |
| | | • Ex. 59-61 ████████ |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| | | ███████████████████ |
| 102 | Aerojet disclosed that it was not compliant with the DFARS Clause to DARPA at least by July 21, 2014. | • Ex. 54 at 196693 |
| 103 | On September 10, 2014, DARPA ██████████ ███████████████████ ██████████ | • Ex. 58 at AR00228741 |
| 104 | After a September 16, 2014 teleconference discussing its compliance status, on September 18, 2014, Aerojet sent a disclosure letter to DARPA ████████ ███████████████████ | • Exs. 59-61 |
| 105 | Discussing Aerojet's September 18, 2014 letter, a DARPA program manager ██████ ███████████████████ ████████████ | • Ex. 62 |
| 106 | DARPA understood that Aerojet was not compliant with the 2013 DFARS Clause. | • Ex. 54 at 196693<br>• Ex. 62 ████████████ ███████████████ |

5.     **Aerojet disclosed that it was not compliant with the DFARS Clause to the DoD OCIO, which understood that Aerojet was not compliant.**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 107 | The "DoD CIO is responsible for all matters relating to the DoD information enterprise, such as cybersecurity, communications, information systems, and more." | • RJN Fact No. 23 |
| 108 | The DoD OCIO was made aware that Aerojet was not compliant with the DFARS Clause. | • Ex. 86 (██████████████ ███████████████████ ███████████████████ ██████ ) |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | • Ex. 89 ███████████████ ██████████████) |
| | | • Ex. 89 at AFDODCIO000003 (██████████████ ██████████████ ████████) |
| | | • Ex. 94 ███████████████ ███████████████ |
| | | • Ex. 95 ███████████████ ███████████████ ███████████████ |
| 109 | In March 2015, the DoD OCIO received Aerojet's October 27, 2014 letter that was sent to the Army to along with a memorandum ████████ ████████████████████ ████████████████ | • Ex. 86 |
| 110 | The DoD concluded after reviewing Aerojet's October 27, 2014 letter that ████████ ██████████████████ | • Ex. 86<br>• Ex. 89 |
| 111 | On May 20, 2015, the DoD OCIO ████████ ████████████████ | • Ex. 92 |
| 112 | The DoD OCIO stated ████████████ ████████████████ ████████████ | • Ex. 92 |
| 113 | On June 30, 2015, Aerojet disclosed to the OCIO a "list of the 7 items in which [Aerojet] [was] not compliant" with the DFARS Clause. | • Ex. 93<br>• Ex. 95 |
| 114 | Aerojet made its cybersecurity experts available to the DoD OCIO on June 30, 2015, via teleconference, to discuss Aerojet's non-compliance with the DFARS Clause. | • Ex. 97 (7/1/2015 E-mail from Doug Smith summarizing call with members of the DoD OCIO) |

33

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | • Ex. 96 (meeting invite including DoD CIO members for 6/30/2015 meeting) |
| 115 | The DoD understood that Aerojet was not compliant with the 2013 DFARS Clause. | • Ex. 88 at 287-288 (████████████████████████) <br><br> • Ex. 89 ████████████████████████ <br><br> • Ex. 97 (7/1/2015 AR e-mail recounting comments from teleconference with OCIO) <br><br> • Ex. 82 (10/2/14 memo re teleconference with Aerojet) <br><br> • Ex. 94 at AR00218330 (████████████████████████) <br><br> • Ex. 8 (Hewitt Dep.) at 68:2-69:1 (██████████████, 69:20-70:2 (████████████) |

**6.    Aerojet disclosed that it was not compliant with the DFARS Clause to Other DoD Agencies, which understood that Aerojet was not compliant.**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 116 | Aerojet disclosed that it was not compliant with the DFARS Clause to the Missile Defense Agency ("MDA") at least by to June 29, 2015. On June 30, 2015, Aerojet provided additional | • Ex. 116 (response to MDA questions with compliance matrix and updated explanatory controls statement) |

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | detail regarding its non-compliance and its plan toward compliance with NIST 800-53. | |
| 117 | On July 1, 2015, MDA determined ████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████ | • Ex. 117 |
| 118 | On July 2, 2015, MDA awarded Aerojet Contract No. HQ0147-15-C-0010.  Relator congratulated the Aerojet team: "Our efforts yesterday paid off. We got the 12.5MM award from the MDA!" | • Ex. 117 |
| 119 | On December 16, 2015, Aerojet met with representatives from the MDA and provided a detailed presentation on its compliance gap analysis. After the presentation, the MDA ████ ████████████████████████ | • Ex. 118 (internal AR e-mail recounting presentation to MDA attaching slide deck presented to MDA detailing DFARS compliance strategy) |
| 120 | In response to Aerojet's presentation to the MDA in December 2015, MDA stated ████████ ████████████████████████████ | • Ex. 119 |
| 121 | On June 22, 2015, Aerojet sent a disclosure letter to the Defense Contract Management Agency (the "DCMA") stating that it was not compliant with the DFARS Clause ████████ | • Ex. 67 |
| 122 | On June 23, 2015, Aerojet discussed its non-compliance with the DFARS Clause during a teleconference with the DCMA. | • Ex. 67 |
| 123 | The DCMA concluded on June 22, 2015, after reviewing Aerojet's June 17, 2015 letter to the Air Force, ████████████████████████ ████████████████████████████ ████████████████ | • Ex. 115 |
| 124 | There is no evidence that Aerojet represented to any DoD component that its enterprise system | • Ex. 7 (Markus Dep.) at 331:3-11; 112:22-113:23 (asked whether Aerojet's disclosure statement states Aerojet is fully compliant with the |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | was fully technically compliant with NIST 800-53. | DFARS Clause and testifying "No, I don't see words that say we are DFARS compliant")<br><br>• Ex. 8 (Hewitt Dep.) at 64:17-18 ("At no time did Aerojet say that they were compliant with the DFARS Clause.") |
| 125 | The Defense Contract Management Agency determined after an audit that Aerojet was fully technically compliant with the NIST SP 800-171 controls in February 2021. | • Ex. 120 |
| 126 | After Aerojet disclosed to the MDA that it was not compliant with NIST 800-53 or the 2013 DFARS Clause, MDA continued to award Aerojet contracts. | • RJN Fact No. 41.<br>• Ex. 37 (reflecting 5 contracts awarded since 7/2/2015) |

**B.     Aerojet Disclosed to NASA That Its System Was Not Compliant with NIST 800-53 and Provided Details Regarding Its Cybersecurity Posture and NASA Indicated That Compliance Was Not Material.**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 127 | Aerojet, prior to merging with Pratt Whitney Rocketdyne, disclosed to NASA that it had "gaps" in its compliance with NIST 800-53 and discussed those gaps with NASA. | • Ex. 149 |
| 128 | When Aerojet submitted its proposal ███████ in or around June 18, 2015, Aerojet stated that it was "not fully compliant per the Security Requirements for Unclassified Information Technology Resources at this time." | • Ex. 153 |
| 129 | Aerojet periodically submitted Contractor Information Technology Security Management Plans ("IT SMPs") to NASA discussing how Aerojet protected NASA's information, in some instances, explaining how Aerojet's policies and procedures fit within the NIST 800-53 framework. | • Ex. 150 (12/16/2013)<br>• Ex. 158 (12/10/2015)<br>• Ex. 159 (evidence of submission)<br>• Ex. 179 (1/23/2017)<br>• Ex. 176 (5/4/2017)<br>• Ex. 157 at AR00052685 (10/1/15)<br>• Ex. 152 |
| 130 | NASA accepted Aerojet's IT SMPs. | • Ex. 152 at AR00232667 |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | • Ex. 155 |
| 131 | ██████████████████████ | • Ex. 151 |
| 132 | In July 2015, NASA responded to Aerojet's submission of an IT SMP ████████████████████ | • Ex. 154 at AR00067326. |
| 133 | On August 31, 2015, NASA informed ███████████████████████ | • Ex. 156 |
| 134 | On February 16, 2016, Aerojet made a presentation to NASA ████████████████████ | • Ex. 162 (2/16/16 Presentation and Compliance Gap Analysis)<br><br>• Ex. 160 ██████████████ )<br><br>• Ex. 161 ████████████ ) |
| 135 | Based on Aerojet's February 2016 presentation, NASA ██████████████████ | • Ex. 168 at AR00022461. |
| 136 | On February 17, 2016, a NASA contracting officer ████████████████████ | • Ex. 163 |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     | ████████████████ | |
| 137 | On February 18, 2016, a NASA contracting officer ███████ | • Ex. 164 |
| 138 | On February 17, 2016, in response to ███████ | • Ex. 165 at AR00023815. |
| 139 | On March 4, 2016, in response to NASA's request for a discussion, Aerojet's cybersecurity experts had a meeting with NASA regarding Aerojet's cybersecurity posture and provided NASA with contact information for everyone on Aerojet's cybersecurity team. ███████ | • Ex. 167<br>• Ex. 173 |
| 140 | On March 17, 2016, Aerojet provided ███ | • Ex. 152 |
| 141 | On June 22, 2016, Aerojet updated NASA on the status of its non-compliance with NIST 800-53, ███████ | • Ex. 168 at AR00022459-60. |

38

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 142 | On July 3, 2016, the NASA contracting officer ████████ ████████████████ ████████ | • Ex. 174 |
| 143 | ████████████████████ ████████████████ ████████ | • Ex. 175 at AR00020134-35. |
| 144 | On August 11, 2016, Aerojet provided an update to NASA regarding its closure of compliance gaps with respect to NIST 800-53, stating that it had completed closing documentation gaps. | • Ex. 172 at AR00017843-44. |
| 145 | On August 16, 2016, Aerojet met with NASA, including representatives on Contract Nos. ████████████████ to discuss Aerojet's NFS Clause compliance. ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████ ████████████ | • Ex. 169<br>• Ex. 170 (reflecting Aerojet's desire to "continue to be transparent and forthcoming with [NASA].") |
| 146 | On October 14, 2016, Aerojet provided another compliance matrix to NASA detailing its continued progress toward compliance with NIST SP 800-53, including informing NASA that it was not compliant ████████████ | • Ex. 171 |
| 147 | On October 19, 2016, Aerojet had a teleconference with NASA in which Aerojet gave NASA "an update on [Aerojet's] plan to become completely compliant with NFS." | • Ex. 172 |
| 148 | Aerojet submitted ████████████ ████████████████████████ ████████████████████ | • Ex. 179<br>• Ex. 177 |

39

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|  | ██████████████████████ |  |
| 149 | On January 20, 2017, Aerojet met with NASA and presented on its strategy to bring its systems into compliance with NIST 800-53.[5] ████████ | • Ex. 178 |
| 150 | On January 23, 2017, Aerojet submitted ████ ███████████████████████████ | • Ex. 179 at AR00232652 |
| 151 | In September 2017, in connection with ████ ████████ Aerojet updated NASA on its plan to outsource its cybersecurity and detailed remediation efforts Aerojet and its provider were taking with respect to certain NIST 800-53 controls. Aerojet provided additional status updates regarding its progress and indicated that, though it was not yet compliant with NIST 800-53, it intended to be compliant by December 31, 2017. | • Ex. 180 |
| 152 | ██████████████████████ | • Ex. 180 at AR00229090 & AR00229095 |

_____

[5] ████████████████████████████████████ ████████████████████████████ *See* Ex. 148.

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| | ████████████████ | |
| 153 | NASA understood that Aerojet did not have a system in place that was compliant with either NPR 2810.1 or NIST 800-53. | • Ex. 162<br>• Ex. 160<br>• Ex. 161<br>• Ex. 168 at AR00022461<br>• Ex. 167<br>• Ex. 168 at AR00022459-60.<br>• Ex. 175 at AR00020134-35.<br>• Ex. 169<br>• Ex. 171<br>• Ex. 172<br>• Ex. 178<br>• Ex. 180 at AR00229090 & AR00229095 |
| 154 | In 2019, Aerojet received a NASA Silver Achievement Medal for its cybersecurity efforts. | • Ex. 181 |

## VI. THE GOVERNMENT PAID AEROJET AND CONTINUED TO CONTRACT WITH AEROJET DESPITE KNOWING OF AEROJET'S NON-COMPLIANCE.

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 155 | None of the contracts alleged in the SAC were terminated based on Aerojet's non-compliance with the DFARS or NFS Clauses. | • SAC ¶¶ 67-68, 84-119<br>• Ex. 37 at cells 2E, 3E, 5E-7E, 9E, 15E, 17E, 19E (DoD contract data reflecting completion of contract date for SAC contracts)<br>• Ex. 121 at cells 10F, 14F, 15F, 17F, 20F, 21F, 22F, 23F, 25F (NASA contract data reflecting completed and ongoing contracts)<br>• Ex. 113, ¶¶ 3-4<br>• Ex. 185, ¶¶ 4-5<br>• Ex. 184, ¶¶ 4-5<br>• Ex. 183, ¶¶ 4-5 |

41

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
|  |  | • Ex. 182, ¶¶ 4-5<br>• Ex. 112, ¶ 5<br>• Ex. 114, ¶ 4 |
| 156 | Aerojet has provided the contracted-for goods and services for the at-issue contracts. | • Ex. 37 at cells 2E, 3E, 5E-7E, 9E, 15E, 17E, 19E (DoD contract data reflecting completion of contract date for SAC contracts)<br>• Ex. 121 at cells 10F, 14F, 15F, 17F, 20F, 21F, 22F, 23F, 25F (NASA contract data reflecting completed and ongoing contracts) |
| 157 | The government has not rejected any of the contracted-for goods or services for the contracts listed in Relator's SAC based on Aerojet's non-compliance with the DFARS or NFS Clauses. | • Ex. 37 at cells 2E, 3E, 5E-7E, 9E, 15E, 17E, 19E (DoD contract data reflecting completion of contract date for SAC contracts)<br>• Ex. 121 at cells 10F, 14F, 15F, 17F, 20F, 21F, 22F, 23F, 25F (NASA contract data reflecting completed and ongoing contracts)Ex. 113, ¶¶ 2, 4<br>• Ex. 185, ¶ 3<br>• Ex. 112, ¶¶ 4-5<br>• Ex. 184, ¶ 3<br>• Ex. 183, ¶ 3<br>• Ex. 182, ¶ 3 |
| 158 | The government has not rescinded any payments or sought reimbursement for any of the goods or services Aerojet delivered for the at-issue contracts based on Aerojet's non-compliance with the DFARS or NFS Clauses. | • Ex. 37 at cells 2E, 3E, 5E-7E, 9E, 15E, 17E, 19E (DoD contract data reflecting completion of contract date for SAC contracts)<br>• Ex. 121 at cells 10F, 14F, 15F, 17F, 20F, 21F, 22F, 23F, 25F (NASA contract data reflecting completed and ongoing contracts)Ex. 113, ¶¶ 2, 4<br>• Ex. 185, ¶ 3<br>• Ex. 112, ¶¶ 4-5<br>• Ex. 184, ¶ 3 |

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | • Ex. 183, ¶ 3 |
| | | • Ex. 182, ¶ 3 |
| 159 | The United States Department of Justice conducted an investigation into Relator's claims and declined to intervene. | • Ex. 1 (1/26/2017 Civil Investigative Demand to Aerojet) |
| | | • Ex. 2 (8/5/2016 Civil Investigative Demand to Emagined Security) |
| | | • Ex. 3 (8/5/2016 Civil Investigative Demand to Ernst & Young LLP) |
| | | • Exs. 3 & 4 (reflecting correspondence regarding interviews of Aerojet employees pursuant to Civil Investigative Demand to Aerojet) |
| | | • RJN No. 70 |
| | | • ECF No. 25 |

**A.      The Army continued to pay and award Aerojet contracts despite knowing of Aerojet's non-compliance.**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 160 | After Aerojet disclosed to the Army that it was not compliant with NIST 800-53 or the 2013 DFARS Clause, the Army continued to award Aerojet contracts. | • RJN Fact No. 35<br>• Ex. 37 (reflecting 30 contracts awarded since 9/26/2014) |
| 161 | Aerojet submitted invoices to the Army on Contract No. W31P4Q-14-C-0075, none of which contained any representation about Aerojet's compliance with the DFARS Clause. | • Ex. 74<br>• Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |
| 162 | The Army paid all invoices on Contract No. W31P4Q-14-C-0075. | • Ex. 75<br>• Ex. 6 at Resp. No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |
| 163 | Contract No. W31P4Q-14-C-0075 was successfully completed on January 31, 2016. | • RJN Fact No. 53<br>• Ex. 37 at cell 2F |
| 164 | Aerojet submitted invoices to the Army on Contract No. W31P4Q-16-C-0026, none of which contained any representation about Aerojet's compliance with the DFARS Clause. | • Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 165 | The Army paid all invoices on Contract No. W31P4Q-16-C-0026. | • Ex. 6 at Resp. No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |
| 166 | Contract No. W31P4Q-16-C-0026 was successfully completed on August 1, 2017. | • RJN Fact No. 54<br>• Ex. 37 at cell 19F |
| 167 | The Army continued to award Aerojet contracts after this lawsuit was filed. | • RJN Fact Nos. 36, 68<br>• Ex. 37 (reflecting 28 contracts awarded since this case was filed)<br>• ECF No. 1 |
| 168 | The Army participated in the United States' investigation of Relator's allegations and continued to award Aerojet contracts after the United States declined to intervene. | • RJN Fact Nos. 37, 70<br>• Ex. 37 (reflecting 16 contracts awarded since June 25, 2018, when the government declined to intervene in this action)<br>• Exs. 3 & 4 (reflecting participation in investigation)<br>• ECF No. 25 |

**B.      The Navy continued to pay and award Aerojet contracts despite knowing of Aerojet's non-compliance.**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 169 | After Aerojet disclosed to the Navy that it was not compliant with NIST 800-53 or the 2013 DFARS Clause, the Navy continued to award Aerojet contracts. | • RJN Fact No. 32<br>• Ex. 37 (reflecting 8 contracts awarded since 9/29/2015) |
| 170 | Aerojet submitted invoices to the Navy on Contract No. N00014-14-C-0035, none of which contained any representation about Aerojet's compliance with the DFARS Clause. | • Ex. 106<br>• Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |
| 171 | The Navy paid all invoices on Contract No. N00014-14-C-0035. | • Ex. 107<br>• Ex. 6 at Resp. No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |
| 172 | Contract No. N00014-14-C-0035 was successfully completed on June 8, 2017. | • RJN Fact No. 51<br>• Ex. 37 at cell 3F |
| 173 | Aerojet submitted invoices to the Navy on Contract No. N68936-14-C-0035, none of which | • Ex. 108<br>• Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|  | contained any representation about Aerojet's compliance with the DFARS Clause. | |
| 174 | The Navy paid all invoices on Contract No. N68936-14-C-0035. | • Ex. 109<br>• Ex. 6 at Resp. No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |
| 175 | Contract No. N68936-14-C-0035 was successfully completed on December 31, 2015. | • RJN Fact No. 52<br>• Ex. 37 at cell 7F |
| 176 | The Navy continued to award Aerojet contracts after this lawsuit was filed. | • RJN Fact Nos. 33, 68<br>• Ex. 37 (reflecting 7 contracts awarded since this case was filed)<br>• ECF No. 1 |
| 177 | The Navy continued to award Aerojet contracts after the United States declined to intervene. | • RJN Fact Nos. 34, 70<br>• Ex. 37 (reflecting 2 contracts awarded since June 25, 2018, when the government declined to intervene in this action)<br>• ECF No. 25 |

### C.    The Air Force continued to pay and award Aerojet contracts despite knowing of Aerojet's non-compliance.

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 178 | After Aerojet disclosed to the Air Force that it was not compliant with NIST 800-53 or the 2013 DFARS Clause, the Air Force continued to award Aerojet contracts. | • RJN Fact Nos. 29<br>• Ex. 37 (reflecting 31 contracts awarded since 9/29/2014) |
| 179 | Aerojet submitted invoices to the Air Force on Contract No. FA8650-13-D-2335, Award Id. 0002, none of which contained any representation about Aerojet's compliance with the DFARS Clause. | • Ex. 44<br>• Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |
| 180 | The Air Force paid all invoices on Contract No. FA8650-13-D-2335, Award Id. 0002. | • Ex. 45<br>• Ex. 6 at Resp. No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |
| 181 | Contract No. FA8650-13-D-2335, Award Id. 0002 was successfully completed on June 15, 2019. | • RJN Fact No. 48<br>• Ex. 37 at cell 5F |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 182 | Aerojet submitted invoices to the Air Force on Contract No. FA8650-14-C-7424, none of which contained any representation about Aerojet's compliance with the DFARS Clause. | • Ex. 46<br>• Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |
| 183 | All invoices were paid by the government on Contract No. FA8650-14-C-7424. | • Ex. 47<br>• Ex. 6 at Resp. No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |
| 184 | Contract No. FA8650-14-C-7424 was successfully completed on March 31, 2016. | • RJN Fact No. 47<br>• Ex. 37 at cell 6F |
| 185 | Aerojet submitted invoices to the Air Force on Contract No. FA8650-13-D-2335, Award Id. 0003, none of which contained any representation about Aerojet's compliance with the DFARS Clause. | • Ex. 48<br>• Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |
| 186 | The Air Force paid all invoices on Contract No. FA8650-13-D-2335, Award Id. 0003. | • Ex. 49<br>• Ex. 6 at Resp. No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |
| 187 | Contract No. FA8650-13-D-2335, Award Id. 0003 was successfully completed on August 30, 2016. | • RJN Fact No. 49<br>• Ex. 37 at cell 9F |
| 188 | Aerojet submitted invoices to the Air Force on Contract No. FA8650-13-D-2335, Award Id. 0004, none of which contained any representation about Aerojet's compliance with the DFARS Clause. | • Ex. 50<br>• Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |
| 189 | The Air Force paid all invoices on Contract No. FA8650-13-D-2335, Award Id. 0004. | • Ex. 51<br>• Ex. 6 at Resp. No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |
| 190 | Contract No. FA8650-13-D-2335, Award Id. 0004 was successfully completed on September 28, 2018. | • RJN Fact No. 50<br>• Ex. 37 at cell 17F |
| 191 | The Air Force continued to award Aerojet contracts after this lawsuit was filed. | • RJN Fact Nos. 30, 68<br>• Ex. 37 (reflecting 24 contracts awarded since this case was filed)<br>• ECF No. 1 |
| 192 | The Air Force participated in the United States' investigation of Relator's allegations and | • RJN Fact Nos. 31, 70 |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | continued to award Aerojet contracts after the United States declined to intervene. | • Ex. 37 (reflecting 12 contracts awarded since June 25, 2018, when the government declined to intervene in this action)<br>• Exs. 3 & 4 (reflecting participation in investigation)<br>• ECF No. 25 |

**D.      DARPA continued to pay and award Aerojet contracts despite knowing of Aerojet's non-compliance.**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 193 | After Aerojet disclosed to DARPA that it was not compliant with NIST 800-53 or the 2013 DFARS Clause, DARPA continued to award Aerojet contracts. | • RJN Fact No. 38<br>• Ex. 37 (reflecting 4 contracts awarded since 9/30/2014) |
| 194 | Aerojet submitted invoices to DARPA on Contract No. HR001115C0132, none of which contained any representation about Aerojet's compliance with the DFARS Clause. | • Ex. 52<br>• Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |
| 195 | DARPA paid all invoices on Contract No. HR001115C0132. | • Ex. 53<br>• Ex. 6 at Resp. No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |
| 196 | Contract No. HR001115C0132 was successfully completed on September 30, 2016. | • RJN Fact No. 55<br>• Ex. 37 at cell 15F |
| 197 | DARPA continued to award Aerojet contracts after this lawsuit was filed. | • RJN Fact Nos. 39, 68<br>• Ex. 37 (reflecting 2 contracts awarded since this case was filed)<br>• ECF No. 1 |
| 198 | DARPA continued to award Aerojet contracts after the United States' declined to intervene. | • RJN Fact Nos. 40, 70<br>• Ex. 37 (reflecting 1 contract awarded since June 25, 2018, when the government declined to intervene in this action)<br>• ECF No. 25 |

47

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

E. **NASA continued to pay and award Aerojet contracts despite knowing of Aerojet's non-compliance.**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 199 | After Aerojet disclosed to NASA that it was not compliant with NASA's Security Requirements for Unclassified Information Technology Resources in June 2015, NASA continued to award Aerojet contracts. | • RJN Fact No. 44<br>• Ex. 121 (reflecting 22 contracts awarded since 7/27/2015) |
| 200 | Aerojet submitted invoices to NASA on Contract No. NNC10BA13B, Award ID # NNC13TA66T, none of which contained any representation about Aerojet's compliance with the NFS Clause. | • Ex. 132<br>• Ex. 6 at Resp. No. 13 (7/29/20 Relator's Am. Resp. to RFAs) |
| 201 | NASA paid all invoices on Contract No. NNC10BA13B, Award ID # NNC13TA66T. | • Ex. 133 |
| 202 | Contract No. NNC10BA13B, Award ID # NNC13TA66T was successfully completed on September 24, 2016. | • Ex. 121 at cell 10F<br>• RJN Fact No. 56 |
| 203 | Aerojet submitted invoices to NASA on Contract No. NNC10BA02B, Award ID # NNC15TA07T, none of which contained any representation about Aerojet's compliance with the NFS Clause. | • Ex. 134<br>• Ex. 6 at Resp. No. 13 (7/29/20 Relator's Am. Resp. to RFAs) |
| 204 | NASA paid all invoices on Contract No. NNC10BA02B, Award ID # NNC15TA07T. | • Ex. 135 |
| 205 | Contract No. NNC10BA02B, Award ID # NNC15TA07T was successfully completed on May 11, 2015. | • Ex. 121 at cell 14F<br>• RJN Fact No. 57 |
| 206 | Aerojet submitted invoices to NASA on Contract No. NNC15CA07C, none of which contained any representation about Aerojet's compliance with the NFS Clause. | • Ex. 136<br>• Ex. 6 at Resp. No. 13 (7/29/20 Relator's Am. Resp. to RFAs) |
| 207 | NASA paid all invoices on Contract No. NNC15CA07C. | • Ex. 137 |
| 208 | Contract No. NNC15CA07C was successfully completed on October 9, 2020. | • Ex. 121 at cell 15F<br>• RJN Fact No. 58 |
| 209 | Aerojet submitted an invoice to NASA on Contract No. NNC15VD08P, which did not contain any representation about Aerojet's compliance with the NFS Clause. | • Ex. 138<br>• Ex. 6 at Resp. No. 11 (7/29/20 Relator's Am. Resp. to RFAs) |
| 210 | NASA paid all invoices on Contract No. NNC15VD08P. | • Ex. 139 |

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| 211 | Contract No. NNC15VD08P was successfully completed on March 31, 2016. | • Ex. 121 at cell 17F<br>• RJN Fact No. 59 |
| 212 | Aerojet submitted invoices to NASA on Contract No. NNM16AA02C, none of which contained any representation about Aerojet's compliance with the NFS Clause. | • Ex. 140<br>• Ex. 6 at Resp. No. 13 (7/29/20 Relator's Am. Resp. to RFAs) |
| 213 | NASA paid all invoices on Contract No. NNM16AA02C. | • Ex. 141 |
| 214 | Contract No. NNM16AA02C is still ongoing. | • Ex. 121 at cell 21F (showing NNM16AA02C is still in progress and has not been terminated)<br>• RJN Fact No. 61 |
| 215 | Aerojet submitted an invoice to NASA on Contract No. NNM16AB21P, which did not contain any representation about Aerojet's compliance with the NFS Clause. | • Ex. 142<br>• Ex. 6 at Resp. No. 13 (7/29/20 Relator's Am. Resp. to RFAs) |
| 216 | NASA paid all invoices on Contract No. NNM16AB21P. | • Ex. 143 |
| 217 | Contract No. NNM16AB21P was successfully completed on March 31, 2016. | • Ex. 121 at cell 22F<br>• RJN Fact No. 62 |
| 218 | Aerojet submitted invoices to NASA on Contract No. NNH16CP17C, none of which contained any representation about Aerojet's compliance with the NFS Clause. | • Ex. 144<br>• Ex. 6 at Resp. No. 13 (7/29/20 Relator's Am. Resp. to RFAs) |
| 219 | NASA paid all invoices on Contract No. NNH16CP17C. | • Ex. 145 |
| 220 | Contract No. NNH16CP17C was successfully completed on June 30, 2019. | • Ex. 121 at cell 23F<br>• RJN Fact No. 63 |
| 221 | Aerojet submitted invoices to NASA on Contract No. NNM16AA12C, none of which contained any representation about Aerojet's compliance with the NFS Clause. | • Ex. 146<br>• Ex. 6 at Resp. No. 13 (7/29/20 Relator's Am. Resp. to RFAs) |
| 222 | NASA paid all invoices on Contract No. NNM16AA12C. | • Ex. 147 |
| 223 | Contract No. NNM16AA12C is still ongoing. | • Ex. 121 at cell 25F (showing NNM16AA12C is still in progress and has not been terminated) |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| | | • RJN Fact No. 64 |
| 224 | NASA contracting officials have not terminated or refused to reward a contract for non-compliance with the NFS Clause, and have no recollection of other contracting officers terminating or refusing to award a contract for non-compliance. | • Ex. 182 ¶ 5<br>• Ex. 183 ¶ 5<br>• Ex. 184 ¶ 5<br>• Ex. 185 ¶ 5 |
| 225 | NASA continued to award Aerojet contracts after this lawsuit was filed. | • RJN Fact Nos. 45, 68<br>• Ex. 121 (reflecting 19 contracts awarded since this case was filed)<br>• ECF No. 1 |
| 226 | ███████████████████████████████████████████ | • RJN Fact Nos. 46, 70<br>• Ex. 121 (reflecting 8 contracts awarded since June 25, 2018, when the government declined to intervene in this action)<br>• Exs. 3 & 4 ████████████████ )<br>• ECF No. 25 |
| 227 | In 2019, NASA awarded Aerojet the Silver Achievement Medal for its cybersecurity efforts. | • Ex. 181 |

**VII.   THE GOVERNMENT KNEW THE DEFENSE INDUSTRY WAS NOT COMPLIANT WITH CYBERSECURITY CLAUSES, BUT CONTINUED TO CONTRACT WITH AND PAY SUPPLIERS**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| 228 | Defense Industrial Base companies, including Aerojet, participated in policy working groups with the Government, where companies "openly discuss[ed]" noncompliance with the DFARS Clause. | • Ex. 7 (Markus Dep.) at 92:16-93:3 ("There were DFARS compliance meetings and presentations at the DIB and we had conversations about them. There were -- excuse me -- quite a few conversations about how the other defense contractors were becoming DFARS compliant and how some of them were already DFARS compliant and what they did to become DFARS compliant at those meetings.") |

STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     |                 | • Ex. 7 (Markus Dep.) at 159:13-161:7 ( ███████████████████ |
|     |                 | • Ex. 7 (Markus Dep.) at 162:11-20 (explaining that working group meetings with the OCIO would include a discussion of "how to individuals get compliant [with the NIST standards] properly") |
|     |                 | • Ex. 7 (Markus Dep.) at 163:2-163:9 (contractors "were openly discussing" that they "were noncompliant" in meeting with the OCIO). |
|     |                 | • Ex. 10 (Thomas Dep.) at 145:1-147:18 (explaining that there were working groups with the defense industry and the government between 2013 and 2016 regarding the DFARS Clause) |
|     |                 | • Ex. 19 at 1 (reflecting "continued engagement" between OCIO, DPAP, and industry" regarding the DFARS Clause) |
|     |                 | • Ex. 206 at AFDODCIO000224 ( ███████████████████ ) |
|     |                 | • Ex. 103 (reflecting Aerojet's participation in working group meetings) |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| | | • Ex. 32 at 42:12-43:25 (12/7/2017 congressional testimony from Ellen Lord, Defense Undersecretary for Acquisition, Technology, and Logistics reflecting that she participated in working groups with industry associations and DoD components regarding cybersecurity compliance) |
| | | • 80 FR 81472 (noting that changes to DFARS Clause to allow for additional time was made after discussing "implementation issues" and the "need for additional time to implement the security requirements" with the defense industry) |
| 229 | ████ were not compliant with the technical controls in NIST 800-53 and NIST 800-171 and ████ ████ | • Ex. 186 ████ ) <br> • Ex. 188 ████ ) <br> • Ex. 187 at AFDODCIO000486 & 488 ( ████ ) <br> • Ex. 190 ████ <br> • Ex. 191 ████ <br> • Ex. 194 ████ |

52

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     |                 | ████████████████ ) ● Ex. 195 ███████████ ████████████ ● Ex. 206 ███████████ ██████████ ; *see also* Ex. 10 (Thomas Dep.) at 138:24-140:16 ████████████ ● Ex. 196 ████████████ ● Ex. 197 ███████████ ) ● Ex. 205 ████████████ ) ● Ex. 198 ███████████ |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     |                 | ███████████████████ <br><br> • Ex. 201 █████████████ <br> ██████████████████ ) <br><br> • Ex. 202 ██████████ <br> ██████████████████ <br> ██████████████████ <br><br> • Ex. 189 █████████ <br> ██████ ) <br><br> • Ex. 9 (Guissanie Dep.) at 84:7-85:6; 27:14-30:21 ( <br> ██████████████████ <br> ██████████████████ <br> ████████████ ) <br><br> • Ex. 9 (Guissanie Dep.) at 90:1-18 ( <br> ██████████████████ <br> ██████████████████ <br> ██████████████████ <br> ██████████████████ <br> ██████████████████ <br> ██████████ ) <br><br> • Ex. 9 (Guissanie Dep.) at 81:6-82:7 ( <br> ██████████████████ <br> ████████████ <br><br> • Ex. 9 (Guissanie Dep.) at 96:2-97:14 ( <br> ██████████████████ |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
| | | ██████████████ ) |
| | | • Ex. 9 (Guissanie Dep.) at 94:7-96:1 ( ██████████ ) |
| | | • Ex. 9 (Guissanie Dep.) at 103:7-105:2 ██████████ ) |
| | | • Ex. 21 at 22:4-9 (4/6/2017 DoD SBTW Presentation: "What I've seen is some small businesses are doing extremely well and are almost all fully compliant because it was easier for them to implement some of the solutions than some of the very large companies."); *see also* Ex. 20 (video recording of same) |
| | | • Ex. 10 (Thomas Dep.) at 120:9-25 ( ██████████ ) |
| | | • Ex. 10 (Thomas Dep.) at 108:15-109:4 ██████████ |
| 230 | Surveys of industry and public articles from 2016 to 2020 reflect that the defense industry has not successfully implemented all of the technical requirements NIST 800-171 or NIST 800-53. | • Exs. 207 & 208 (AIA survey results) |
| | | • Ex. 203 & 204 (NDIA survey and white paper) |
| | | • Ex. 213 at Ex. A (5/2019, Reality Check: Defense industry's |

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | implementation of NIST SP 800-171) at 2, 3. <br><br>• Ex. 209 (9/4/2018 "Small Contractors Struggle with Cyber Rules") <br><br>• Ex. 210 (2/19/2020 "New Cybersecurity Standards Pose Challenges for Industry") <br><br>• Ex. 211 (6/17/2019 "Why DoD's decision to make cybersecurity an 'allowable cost' matters") |
| 231 | The DoD was aware of industry surveys indicating that contractors were not compliant with the NIST 800-53 or NIST 800-171. | • Ex. 10 (Thomas Dep.) at 159:12-161:2 ███████████████ ███████████████ ███████████████ ██████ ) <br><br>• Ex. 213 at ¶¶ 4, 7, Exs. B, D <br><br>• 85 FR 61505 (acknowledging surveys reflecting industry non-compliance with NIST controls) |
| 232 | On January 26, 2017, the Aerospace Industries Association ("AIA") sent a letter to the DoD Chief Information Officer, Terry Halvorsen, regarding "DFARS Network Penetration and Contracting for Cloud Services Request" that stated that the industry struggled to implement the DFARS Clause and urged DoD to revise the applicable regulations. | • Ex. 19 |
| 233 | In 2019, the DoD Inspector General issued an audit report on DoD contractors' compliance with the technical controls in NIST 800-171. Out of ten contractors assessed, none were 100% compliant. | • Ex. 35 |
| 234 | The DoD knew that contractors were unable to implement NIST 800-53 based on its specificity to contractor systems. | • Ex. 25 at 25:1-9 (6/23/2017 DoD Industry Day Presentation: "800-53 [] was the baseline as security and established them low, moderate, and high baselines for federal government. To apply that to a contractor system to protect CDI for |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|---|---|---|
| | | confidentiality really isn't very -- isn't possible. The moderate baseline is 263 requirements. Many of them are overly specific based on federal organizations and what they require."); *see also* Ex. 24 (video recording of same)<br><br>• Ex. 21 at 9:18-20 (4/6/2017 DoD SBTW Presentation: "So [NIST 800-171 is] much more flexible, and much more realistic for us to ask industry to implement."); *see also* Ex. 20 (video recording of same) |
| 235 | The DoD acknowledged that it is "virtually impossible" to be in full compliance with even the more flexible NIST 800-171 standard. | • Ex. 21 at 19:14-22 (4/6/2017 DoD SBTW Presentation: "[I]t's also important to know that at any given moment, it's virtually impossible for a contractor to be in 100 percent compliance with 171 because it is a very liquid type of system. Things change, they might have temporary deficiencies, things that they're working toward, things that they haven't gotten in place yet . . . ."); *see also* Ex. 20 (video recording of same)<br><br>• Ex. 21 at 20:24-21:2 (4/6/2017 DoD SBTW Presentation: contractor "must implement [NIST 800-]171. It doesn't say that they need to be in 100% compliance 100% of the time."); *see also* Ex. 20 (video recording of same) |
| 236 | The DoD indicated that non-compliance with the DFARS Clause at the time of contracting would not disqualify a contractor, but would instead be a "risk-based decision for the program managers and the requiring activity" to make. | • Ex. 21 at 34:12-35:9 (4/6/2017 DoD SBTW Presentation: "[T]he onus of determining if that -- the state of someone's information system is -- if it meets the level of risk -- I mean it's really a risk-based decision for the program managers and the requiring activity. . . . So it's really on the program management offices to understand when they need to |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

| No. | Undisputed Fact | Supporting Evidence |
|-----|-----------------|---------------------|
|     |                 | make sure a certain level of protections are in place."); *see also* Ex. 20 (video recording of same)<br><br>• 48 C.F.R. § 9.103<br><br>• Ex. 189 (███████████████ ) |
| 237 | In 2019, the government acknowledged that only "1% of [Defense Industrial Base] companies have implemented all 110 controls from [NIST]." | • Ex. 211 (reflecting comments from Katie Arrington, Special Assistant to Assistant Secretary of Defense in the Office of the Under Secretary of Acquisition & Sustainment") |
| 238 | Navy contracting officials have no recollection of ever terminating a contract, refusing to award a contract, or refusing to pay an invoice for non-compliance with the DFARS Clause. | • Ex. 113, ¶ 4<br><br>• Ex. 114, ¶¶ 3-4<br><br>• Ex. 112, ¶¶ 4-5<br><br>• Ex. 6 at Resp No. 17 (7/29/20 Relator's Am. Resp. to RFAs) |

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**

1   DATED: September 20, 2021                    Respectfully submitted,

2                                                KIRKLAND & ELLIS, LLP

3
                                                 */s/ Tammy A. Tsoumas*
4                                                Mark Holscher (SBN 139582)
                                                 mark.holscher@kirkland.com
5                                                Tammy A. Tsoumas (SBN 250487)
                                                 tammy.tsoumas@kirkland.com
6                                                KIRKLAND & ELLIS LLP
                                                 2049 Century Park East
7                                                Los Angeles, CA 90067
                                                 Telephone:    (310) 552-4200
8                                                Facsimile:    (310) 552-5900

9                                                Ashley Neglia (SBN 298924)
                                                 ashley.neglia@kirkland.com
10                                               KIRKLAND & ELLIS LLP
                                                 555 S. Flower Street, Suite 3700
11                                               Los Angeles, CA 90071
                                                 Telephone:    (213) 680-8400
12                                               Facsimile:    (213) 680-8500

13                                               Sable Hodson (SBN 313252)
                                                 sable.hodson@kirkland.com
14                                               KIRKLAND & ELLIS LLP
                                                 1601 Elm Street
15                                               Dallas, TX 75201
                                                 Telephone:    (214) 972-1770
16                                               Facsimile:    (214) 972-1771

17                                               *Attorneys for Defendants Aerojet Rocketdyne*
                                                 *Holdings, Inc. and Aerojet Rocketdyne, Inc.*
18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF UNDISPUTED FACTS IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, SUMM. ADJUDICATION**