THYBERGLAW
GREGORY A. THYBERG SBN102132
3104 O STREET. #190
SACRAMENTO, CALIFORNIA 95816
TEL: (916) 204-9173
greg@thyberglaw.com

ATTORNEYS FOR PLAINTIFF, BRIAN MARKUS

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA: *ex rel.* BRIAN MARKUS<br><br>            Plaintiffs,<br><br>       vs.<br><br>AEROJET ROCKETDYNE HOLDINGS, INC., a corporation and AEROJET ROCKETDYNE, INC. a corporation.<br><br>         Defendants | )  Civil Action No. 2:15-cv-2245 WBS-AC<br>)<br>)  **RELATOR BRIAN MARKUS'**<br>)  **STATEMENT OF UNDISPUTED**<br>)  **MATERIAL FACTS IN SUPPORT OF**<br>)  **MOTION FOR SUMMARY**<br>)  **JUDGEMENT OR IN THE**<br>)  **ALTERNATIVE SUMMARY**<br>)  **ADJUDICATION**<br>)<br>)  Date November 1, 2021<br>)  Time: 1:30 pm<br>)  Courtroom: 5<br>)  Judge: Hon. William B. Shubb |

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 260, Relator Brian Markus submits the following statement of undisputed material facts in support of his motion for summary judgment/summary adjudication filed simultaneously herewith. The "Exhibit" references are to the Exhibits attached to the Declaration of Gregory A. Thyberg filed in support of this motion.

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

1

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.    AR FAILED TO COMPLY WITH MANDATORY NASA FARS AND DFARS CYBERSECURITY REQUIREMENTS.

1. Aerojet Rocketdyne's ("AR") NASA Gap Analysis completed at the beginning September 2015 ("NGA") found that AR was only 23.9 % compliant with the required NASA FARS NIST 800-53 controls. (Ex. A 292; Ex. L Defendants' Response to Relator's First Set of Requests for Admissions Response No. 168)

2. The NGA found that AR was only 21.8% compliant with the DFARS NIST 800-171 required controls and was only 27.5% compliant with the Pre-August 2015 required DFARS controls. (Ex. A, 292; Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No.169)

3. The NGA Executive Summary  stated: "AR does not have the organizational structure or resources to meet the majority of the security requirements." (Ex. A, 292)

4. The NGA Executive Summary stated: "AR does not have the necessary technical solutions or resources to satisfy the majority of the security requirements." (Ex. A, 293)

5. The NGA Executive Summary stated:  "Given the large number of controls found not in place and the need to address these controls in an expedited manner to preclude fines and other negative consequences, a significant change in strategic direction is required and a significant investment in technical solutions needs to be made." (Ex. A, 293)

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

2

6. The NGA Executive Summary stated: "AR must hold leadership and employees accountable for their actions and inactions especially with respect to safeguarding AR assets and intellectual property. This will require a shift in how the business addresses contractual and regulatory responsibilities in order to avoid devaluation of the business." (Ex. A, 294)

7. During the period  May 2013 to May 31, 2016 was AR not  fully compliant with the required NASA FARS cyber security requirements. (Ex. C, Declaration of Jens Laundrup ("Laundrup Dec.") ¶¶,18,19,28,29,35,37; Ex. A 349; Ex. F, Figler Dep. 79:12-80:8,105:14-108:19,190:6-191:13; Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response Nos. 91,92,97,106, 107,111, 112,116, 117,121,122,163,165-169)

8. During the period November 2013 to May 31, 2016, AR was not fully compliant with the DFARS cybersecurity requirements. (Ex. C, Laundrup Dec.¶¶ 18,19,28,29,35,37; Ex. F Figler Dep. 190:6-191:13; Ex. A 295; Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response Nos. 1,2,21,22,26,27,31,32,41,42, 66,67,160,162,165,168,170,179)

9. AR was not encrypting sensitive government information when storing it at rest or in transit, which was a NASA FAR Clause and DFARS Clause requirement. (Ex. C, Laundrup Dec. ¶36, Ex. F, Figler Dep. 64:3-18; Ex. K, Ruiz Dep. 63:4-64:16)

3

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

10. In a September 2, 2014 email to AR President Warren Boley, AR Vice President  and Chief Information Officer ("CIO") Jose Ruiz ("RUIZ") acknowledged that AR was not NASA FARS or DFARS compliant when he stated: "From my personal experience, this has taken multiple years to get to DFARS and NASA FARS (NFS) compliance… were not even close to the NFS level of compliance." (Ex. A, 098)

## II.    AR FAILED TO PROVIDE ADEQUATE SECURITY TO  PROTECT SENSITIVE GOVERNMENT DATA RELATED TO MILITARY AND SPACE TECHNOLOGY.

11. Starting May 2013, AR's experienced multiple data breaches that resulted in huge amounts of data leaving the Rocketdyne Network. (Ex. C, Laundrup Dec.¶¶ 7, 13-15)

12. In the summer of 2013, AR brought in Emagined Security, Inc. ("ESI") to investigate the cause to the data breaches from the Rocketdyne Network. (Ex. C, Laundrup Dec.¶¶ 6,7)

13. ESI's investigation revealed AR had serious cybersecurity deficiencies that allowed a foreign nation state to enter its system on multiple occasions and exfiltrate huge amounts of data. (Ex. C, Laundrup Dec.¶13)

14. Sensitive data belonging to the government that was stored on AR's computer network at the time of these cyberattacks included designs for advanced weapons systems  including documents related to the Terminal High Altitude Area Defense ("THAAD") Missile System. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 148; Ex. C, Laundrup Dec.¶¶14-15)

15. AR VP of Advanced Space Programs, Julie Van Kleeck ("VAN KLEECK") confirmed that AR worked on rocket engines and had rocket designs that could assist a foreign country in developing an intercontinental ballistic missile.  (Ex. H, Van Kleeck Dep. 10:9-11:6, 25:12-26:1)

16. ESI's investigation found that huge amounts of data related to the testing of rocket fuels were exfiltrated during one of the cyber intrusions. (Ex. C, Laundrup Dec.¶¶ 13-15)

17. Ernst & Young ("EY") was able to penetrate AR's computer environment undetected by noon on November 16, 2015 for a second time in a matter of months and obtain Domain Administrator access  across the AJRD domain. (Ex.  A 312; Ex. F, Figler Dep. 94:12-95:9)

18.  The AR "Aerojet Rocketdyne Internal Audit FY2016 Cyber Security Assessment Findings & Recommendations Report December 2016" indicated AR still  had five high risk findings and  one medium risk finding. (Ex. A, 365-366)

### III.    AR KNEW IT WAS NON-COMPLAINT AND FAILING TO PROVIDE ADEQUATE  CYBERSECURITY.

19. ESI provided a memorandum dated September 4, 2013 to AR's Vice President and CIO, Craig Halterman ("HALTERMAN"), and a draft second memorandum for HALTERMAN to provide to AR's CEO Scott Seymour and President Warren Boley. (Ex. C, Laundrup Dec.¶¶ 8,9,10)

20. The memo to HALTERMAN stated: "In the past four months, multiple incidents have been detected resulting in huge quantities of data leaving the Rocketdyne Network." (Ex A, 058)

21. ESI advised AR they investigated incidents that occurred on August 18 and 26 and September 2, 2013 and confirmed the August 18 attack gave the attackers full administrative access. (Ex. A, 058)

22. ESI advised AR that their attempts to protect the network had not been fully effective. (Ex. A, 058, 061)

23. ESI advised AR :" It is probable an advanced, well-hidden malware infection remains in the network. The existing IT security systems and implementations are not able to stop the flow of unauthorized data and are not sophisticated enough to detect and stop cyber intrusions." (Ex. A 059, 063;Ex. C, Laundrup Dec.¶ 16)

24. ESI warned AR that these attacks were targeting design data worth possibly hundreds of millions of dollars. (Ex. A, 061, Ex. C, Laundrup Dec.¶17)

25. ESI provided AR a remediation plan with recommended investments in staffing and infrastructure that were needed to correct the security deficiencies in AR's computer network. (Ex. A, 059; Ex. C, Laundrup Dec.¶ 17)

26. ESI warned AR that: "Aerojet Rocketdyne must change the corporate culture and embrace cybersecurity the same way as physical security. Without this change, Aerojet Rocketdyne can lose countless millions in intellectual property and risk government intervention." (Ex. A, 059)

6

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

27. ESI provided AR an "Investigative Analysis and Forensics Review" report dated November 14, 2013 describing ESI's investigation between August 5 and 30, 2013. (Ex. A, 068-083; Ex. C, Laundrup Dec.¶¶12,13)

28. The report concluded that AR's current infrastructure will allow malware to enter the system and cause data leakage. (Ex. A, 079)

29. ESI performed an audit in 2014 that found AR was not compliant with the DFARS Clause, finding AR was only fully compliant with 5 of 59 required controls. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response Nos. 160-162)

30. ESI performed an audit in 2015 that found AR was not compliant with the DFARS Clause finding AR was only fully compliant with only 41 of the required 188 NIST SP 800-171 required controls. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 165)

31. ESI performed an audit in 2014 that found AR was not compliant with the NIST SP 800-53 controls required by NASA FARS Clause, finding AR was only fully compliant with 16 of 264 required controls. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 163)

32. EY advised AR of cybersecurity deficiencies when it provided the AR Board (known as GenCorp at the time) the results of an Information Security System internal audit dated July 12, 2013 that indicated AR had 8 high risk and two moderate risk findings. (Ex. A, 039-57) "High Risk" was defined as involving a significant

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

deviation from regulatory requirements and fraud or management misconduct. (Ex. A 057, Ex. D, Halterman Dep. 44:13-45:16)

33. EY gave AR's Security Monitoring the lowest score of 1.00 out of 5.00. (Ex. A, 043) A score if "1.00" indicated: "There is a critical need for enhancements." (Ex. A, 055)

34. In July 2015, EY provided AR the results of an audit report that indicated AR's network could be penetrated in four hours undetected. Aerojet Rocketdyne Internal Audit, Cyber Security Assessment, Summary Findings & Recommendations Report, July 2015. (Ex. A, 220-276)

35. The EY audit found multiple security risk issues categorized by risk level. There were 23 high risk findings, 5 moderate risk findings and 11 low risk findings. (Ex. A 224) A "High Risk Finding" was defined as: "Finding creates a large exposure that could result in a loss if system control, access, application control, and/or exposure of customer data via the compromise of administrative accounts and/or other system functions. It could also create an exposure of confidentiality or integrity, resulting in many user accounts being compromised or restricted system functions being accessed." (Ex. A, 276, Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response Nos. 171-174,177)

36. The EY audit indicated within four hours EY was able to utilize identified vulnerabilities to fully compromise the windows network and retrieve all AJRD user accounts and encrypted passwords, while remaining undetected for six days. The attack remained undetected for another six days. (Ex. A, 225; Ex. L, Defendants'

8

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

Response to Relator's First Set of Requests for Admissions Response Nos. 171-174,177)

37. EY identified numerous vulnerabilities and was able to identify at least five unique pathways to compromise the network. (Ex. A, 225)

38. EY was able to retrieve every item of "Trophy Data" identified before the test including: CEO's and CFO's email and network files; Employee Personally Identifiable Information; Legal documents and files; Engineering management email and files containing rocket design documents; and Access to Security's visitor system, physical security files and folders, and ability to control security cameras and view/listen to footage." (Ex. A, 225; Ex. F, Figler Dep. 100:4-101:3, 101:24-102:18; Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response Nos. 171,174,177)

39. EY advised AR they needed to take immediate action to address the findings of their report. (Ex. A, 227)

40. AR's VP and CIO, RUIZ, agreed that in March of 2015 AR's system was not able to detect cyber intrusions. (Ex. K, Ruiz Dep. 31:23-32:5)

41. RUIZ did not dispute that in March 2015 EY was able to penetrate AR's computer system undetected in about four hours and remain undetected for seven days. (Ex. K, Ruiz Dep. 32:6-16)

42. RUIZ indicated that EY was able to gain administrator access to AR'S system which gave them access to all of AR's information. (Ex. K, Ruiz Dep. 32:17-33:1)

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

43. RUIZ confirmed EY was able to access engineering management emails and files containing rocket design documents. (Ex. K, Ruiz Dep. 33:2-7 ;35:15-19)

44. RUIZ confirmed EY was able to access AR CEO and CFO emails and network files. (Ex. K, Ruiz Dep. 34:25-35:3)

45. RUIZ confirmed EY was able to access AR employee personally identifiable information. (Ex. K, Ruiz Dep. 35:6-10)

46. RUIZ confirmed EY was able to access legal documents, AR CEO and CFO emails and network files. (Ex. K, Ruiz Dep. 34:25-35:3, 35:11-14)

47. RUIZ agreed that EY was able to access AR's vistor security system, physical security files and folders and was able to control security cameras allowing them to view and listen to the footage. (Ex. K, Ruiz Dep. 35:20-25)

48. RUIZ did not feel comfortable having his personal information on AR's computer system when it could be penetrated undetected in four hours. (Ex. K, Ruiz Dep. 37:21-25)

49. RUIZ was sure that the United States government did not feel comfortable having their rocket designs and weapons system designs on Aerojet's system when could be penetrated undetected in four hours and remain undetected. (Ex. K, Ruiz Dep. 38:2-10)

50. RUIZ agrees that AR was not providing adequate security to protect the resources on its system. (Ex. K, Ruiz Dep. 57:14-21)

10

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication CASE NO. 2:15-cv-2245 WBS-AC**

51. RUIZ  knew that in addition to the specific NIST requirements there was an overarching requirement that AR provide adequate security to protect the government's unclassified controlled security information and he understood that the government or any customer was requesting that their data be protected. (Ex. K, Ruiz Dep. 56:19-57:1)

52. RUIZ stated at the time was hired in March 2014, AR was not at the level it needed to be to be compliant with the NASA FARS cyber security requirements. (Ex. K, Ruiz Dep. 20:5-22, 30:23-24)

53. Ruiz was briefed on the fact that ESI advised AR in 2013 that AR'S system was out of date so they could no longer see if information was leaking or if there was malware in AR's system. (Ex. K, Ruiz Dep. 29:17-25)

54. ESI advised AR that their computer system was leaking data every day. (Ex. K Ruiz Dep. 85:9-14)

55. As of July 29, 2014, AR had no approved or funded plan to drive DFARS compliance. (Ex. H, Van Kleeck Dep. 78:25-79:17)

56. RUIZ'S requests to increase his budget to address cybersecurity and AR's need to become compliant with the NASA FARS cybersecurity requirements were denied. (Ex. K, Ruiz Dep. 44:5-20, 95:18-96:12, 115:3-116:15)

57. When RUIZ requested that AR increase his  budget to address cybersecurity and the NASA FARS  requirements, AR COO, TUCKER, told him he had to reduce his budget.  (Ex. K, Ruiz Dep. 98:16-99:1, Exhibit 15 to Ruiz Dep.)

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

58. When RUIZ discussed AR's non-compliance with cyber security requirements with TUCKER and AR VP Scott Correll ("CORRELL") they indicated that if the government were to ever audit Aerojet, Aerojet would just apologize and receive a slap on the wrist with a chance to meet requirements at a later date. (Ex. K, Ruiz Dep. 98:16-99:1)

59. RUIZ stated at the time was hired in March 2014, AR was not at the level it needed to be to be compliant with the NASA FARS cyber security requirements. (Ex. K, Ruiz Dep. 20:5-22, 30:23-24)

## IV.   AR KNEW ITS COMPLIANCE STATUS COULD INFLUENCE THE GOVERNMENT'S DECISION TO AWARD CONTRACTS.

60. AR VP of Advanced Space Programs, Julie Van Kleeck ("VAN KLEECK"), was aware in 2014 that there were NASA FAR 1852.204-76 cybersecurity requirements that that were required to be complied with at part of performing a NASA contract. (Ex. H, Van Kleeck Dep. 10:9-11:6,18:5-25)

61. On June 17, 2015, AR Director of Contracts, Debra Blagg, acknowledged AR would have to comply with the NASA FARS Clause or obtain a waiver if AR wanted to continue to sell to NASA or NASA Prime contractors. (Ex. A, 165)

62. On June 22, 2015, AR VP CORRELL, acknowledged that AR'S compliance status was affecting AR'S business when he stated in an email: " This issue is beginning to affect multiple business areas to include Tactical, RS-25, Missile Defense and our AP organizations- ultimately will impact awards and sales." (Ex. A, 186)

12

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

63. AR VP CORRELL, emailed AR COO, TUCKER, on June 24, 2015 advising him that the GMLRS  program may not be awardable and they may not obtain the RS-25 program contract unless they do a gap analysis for the NASA security requirements. (Ex. A, 205-206)

64. AR's COO, TUCKER, knew that for AR to get DOD and NASA contracts AR was required to declare AR was compliant with the DFARS and NASA FARS cybersecurity requirements. (Ex. E, Tucker Dep. 23:3-14, 81:21-82:23)

65. In an email to Paul Meyer on July 24, 2014, VAN KLEECK stated that the DFARS clause is something that could affect all new defense contracts. (Ex. H, Van Kleeck Dep 71:22-72:3)

66. VAN KLEECK sent an email on September 5, 2014 stating that that AR trying to keep the customer apprised of their progress in DFARS compliance status so they would stay with AR.  (Ex. A, 097-098; Ex. H, Van Kleeck Dep. 85:12-86:23)

## V.     AR'S COMPLIANCE STATUS AND ABILITY TO PROTECT SENSITIVE DATA WAS MATERIAL TO NASA'S CONTRACT AWARD DECISIONS.

67. In July 2013, AR entered a contract modification with NASA for contract NNM06AB13C which included a "Space Launch System Rocket Engine Development Project Statement of Work (SOW)" AR00194353-194423 (Ex. A, 416-495)

68. The SOW stated that :"The contractor shall provide support for the following NASA Technology Protection Program Processes (TPP) processes, Critical Program

13

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

Information(CPI) identification, Threat & Vulnerability Analysis, Selection and implementation of security countermeasures. AR 00194358 (Ex. A 421)

69. The SOW stated AR: " … shall ensure that NASA'S Sensitive But Unclassified (SBU) information,… is encrypted in storage and transmission." AR00194358-194359 (Ex. A, 421-22)

70. Prior to awarding the RS-25 Contract, NASA advised AR that wanted to better understand AR'S IT Security and when AR was projecting to be compliant. (Ex. A, 173)

71. Prior to awarding the RS-25 contract, NASA asked AR for more information regarding AR'S compliance go forward plan for NASA FARS compliance and questioned the status of AR'S cybersecurity compliance on AR's current RS-25 Liquid Eng & Adaptation contract. (Ex. A 174-175,177; Ex. K, Ruiz Dep. 99:17-101:13)

72. On June 15, 2015,  as part of the normal proposal process re  the NASA RS-25 Restart contract NASA asked for more information regarding AR'S compliance go forward plan and specifically questioned status of the current RS-25 Liquid Engine and Adaptation Contract. (Ex. H, Van Kleeck Dep. 97:9-99:14)

73. On August 31, 2015,  Bernadette Kan from NASA sent an email to AR contracting officer, Joseph Capizzi, regarding the RTAPS contract advising him that NASA will need information on how AR will be working with the NASA environment on the

contract and will require that AR answer questions and provide an IT Security

Management Plan. (Ex. A, 290-291)

74. NASA wanted reassurance about AR's cybersecurity compliance in connection with

its review of AR's RS-25 Restart contract proposal. (Ex. H, Van Kleeck Dep.88:21-

91:3 92:4-93:16, 94:3-97:8; Ex. J, Smith Dep. 71:16-72:15)

75. In December 2015, NASA requested a briefing from AR in connection with the

NASA RS25 contract regarding the results of AR'S NASA Gap Analysis and  asked

for AR'S assessment of what risk there was to NASA data and whether NASA

should be worried. NASA also wanted to know what steps were being taken to

mitigate NASA's risk and what AR's strategy was to achieve compliance. (Ex. A,

320)

76. AR'S reply strategy to respond to NASA's concerns was " …to articulate why 23.9

% compliant to the NASA-NIST SP 800-53 requirements is ok." (Ex. A, 320)

77. On February 16, 2016, following a meeting with AR regarding AR'S NASA FARS

compliance status on the RS-25 contract, NASA told AR they wanted to see the

details of AR'S gap analysis through all 264 controls so they could come to

independent assessment about NASA's risk posture. (Ex. A, 359)

78. On January 5, 2017, NASA told AR that material omissions of required information

in a Technology System Security Plan could lead to a stop work order. (Ex. A, 406)

## VI.    AR MADE FALSE STATEMENTS AND MATERIAL OMISSIONS TO SECURE NASA CONTRACTS AND SUBCONTRACTS.

15

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

79. In December 2015, AR gave a presentation to the NASA regarding AR's NASA FARS Clause compliance status in regard to the RS-25 Restart Contract where AR claimed to have "Protective security controls to safeguard unclassified IT resources are in place." (Ex. J, Smith Dep. 122:9-25, 125:4-13, 175:7-24, Exhibits 1,2 and 4 to Smith Dep.)

80. In December 2015, AR told NASA in a presentation they had two factor authentication in place to protect NASA data when in fact AR only had two factor authentication in place in some instances. (Ex. F, Figler Dep. 236:9-237:20)

81. The presentations to NASA and the MDA in December 2015 stated the AR was transitioning to a managed service provider model for IT Infrastructure, applications and cybersecurity when AR had not yet hired a managed service provider and did not hire one until April 2017. (Ex. F, Figler Dep. 54:4-11; Ex. J, Smith Dep. Exhibits 1,2 and 4 to Smith Dep.)

82. AR published an explanatory statement on its website to communicate to customers regarding it compliance with the DFARS and NASA FARS cybersecurity controls. (Ex. A, 277-280, 321-330,361)

83. AR added a statement to supplement these explanatory statements to its website in December 2015. (Ex. A, 496-497; Ex. F, Figler Dep. 197:8-198:19)

84. The new statement characterized the compliance deficiencies found in the NGA analysis as areas for improvement while stating that: "…security controls to

16

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

safeguard unclassified IT resources are in place as described in the Explanatory Control Statement." (Ex. A, 496)

85. The new statement also represented that where AR was not compliant they had: "… alternative controls or protective measures in place to achieve equivalent protection" to the DFARS and NASA FARS security requirements. (Ex. A, 496)

86. In a October 27, 2015 email, AR Senior Director Program manager Daniel Adamski expressed his concern that AR was misleading NASA in discussing the RS-25 contract when he stated: **"**Am I the only one that is struggling with the fact that we are going forward to one of our largest customers (NASA) and not telling them we are non-compliant with the requirements ? "Areas of Improvement" is not a synonym for "non-compliance.., we seem to be torturing verbiage and not giving them the real story… We are walking a very fine line on this one and appear to be "overly cute" in communicating with NASA…"  (Ex.  A, 308)

87. Other AR employees working on a NASA contracts were concerned that AR should be notifying the government about NASA FARS non-compliance issues related to current contracts. (Ex. A, 408-410)

88. AR submitted  a Contractor Information Security Management Plan- Space Launch System (SLS) Rocket Engine Development Project. Contract: NNM06AB13C dated May 22, 2015 ("MAY 2015 PLAN") that contained numerous false and misleading statements that were inconsistent with the findings of the NGA. (Ex. A, 146-155)

89. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Risk Assessment" while the NGA found AR was only 57.7% compliant with these NASA FAR Requirements. (Ex. A, 031,151)

90. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Planning" while the NGA found AR was 0% compliant with these NASA FAR Requirements. (Ex. A, 019,152)

91. The MAY 2015 PLAN described claimed AR had developed policies and procedures to address the minimum security requirements "Systems and Services Acquisitions" requirements while the NGA found AR was only 7.1 % compliant with these NASA FAR requirements. (Ex. A, 032,151)

92. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Awareness and Training" while the NGA found AR was only 20% compliant with these NASA FAR Requirements. (Ex. A, 019,152)

93. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Configuration Management" while the NGA found AR was only 13.6% compliant with these NASA FAR Requirements. (Ex. A, 022, 152)

94. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Contingency Planning" while the NGA found AR was only 22.7% compliant with these NASA FAR Requirements. (Ex. A 023, 152)

18

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

95. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Incident Response" while the NGA found AR was 0% compliant with these NASA FAR Requirements.  (Ex. A, 025, 152)

96. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Maintenance" while the NGA found AR was only 44.4% compliant with these NASA FAR Requirements.  (Ex. A, 026, 153)

97. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Media Protection" while the NGA found AR was only 11.1% compliant with these NASA FAR Requirements.  (Ex. A, 027,153)

98. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Physical and Environmental Protection " while the NGA found AR was only 72.2 % compliant with these NASA FAR Requirements.  (Ex. A, 028, 153)

99. The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Personal Security" while the NGA found AR was only 50% compliant with these NASA FAR Requirements.  (Ex. A, 030,153-54)

100.   The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "System Information Integrity" while the NGA found AR was only 33.3% compliant with these NASA FAR Requirements.  (Ex. A, 034,154)

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

101.   The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements for "Access Control" while the NGA found AR was only 22.8% compliant with these NASA FAR Requirements.  (Ex. A, 018,154)

102.   The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements  for "Audit and Accountability" while the NGA found AR was only 22.2% compliant with these NASA FAR Requirements.  (Ex. A, 020,154)

103.   The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements  for "Identification and Authentication" while the NGA found AR was only 4.4% compliant with these NASA FAR Requirements.  (Ex. A, 024, 154)

104.   The MAY 2015 PLAN claimed AR developed policies and procedures addressing minimum security requirements  for "System and Communication Protection" while the NGA found AR was only 20.8% compliant with these NASA FAR Requirements.  (Ex. A, 033, 154-155)

105.   AR sent a Technology Security Management plan dated July 2, 2015 to NASA Stennis Space Center Re: Contract NNS15AA43P which contained the same statements as the MAY 2015 PLAN. (Ex. A, 156-164)

106.   AR sent NASA an Information Technology Security Inventory for Contract #NNM06AB13C  dated November 30, 2015, ( "NOV 2015  INVENTORY") (Ex. A, 314-319)

107.   The NOV 2015  INVENTORY stated AR has "Appropriate access controls
implement NASA security requirements" while the 9/4/15 NGA found  AR was only
22.8% compliant with these required NASA FAR  Access Controls. NGA p. 15 (Ex.
A, 019, 318)

108.   While  AR claimed in the NOV 2015  INVENTORY to limit the users and devices
access to the AR systems.  The inventory stated: "**Access Controls:** Security
Program develops and documents policies addressing the minimum security
requirements to limit information system access to authorized users, processes acting
on behalf of authorized users, or devices…and to the types of transactions and
functions authorized users are permitted to exercise  the  NGA stated: "There is no
control over what external devices can be used on any systems." (Ex. A, 018, 319)

109.   In the NOV 2015  INVENTORY, AR represented that they had a **Contingency
Plan** which includes a Disaster Recovery Plan ("DRP") updated  June in 2015 and
claimed to regularly perform a DRP checklist test. (Ex. A, 319)  The NGA stated
there did not appear to be "a plan to refer to in the case of a business continuity
concern"  and "testing of the contingency plan does not occur on an annual basis."
NGA p. 20 (Ex. A, 023)

110.   Although AR network had just been penetrated by EY for the second time
undetected in seven months on November 16. 2015 (Ex. A, 312) and AR had been
advised by ESI that their network was not able to detect or stop cyber intrusions (Ex.
A, 059),  the NOV 2015  INVENTORY stated that AR's incident response team

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

would report cyber intrusions to NASA ensuring the incidents are reported consistent with NIST SP 800-61. (Ex. A 319) AR further stated: " **Per NASA Far Supplement** 1852.204-76, any incidents involving NASA information NASA Security Operations to be notified in order to take appropriate action." *Id.*

111.   According to records provided by NASA pursuant a *Touhy* request, AR sent at least 19 Information Technology Security Inventories for Contract #NNM06AB13C to NASA with the same statements as the NOV 2015 INVENTORY between 4/10/15 and 12/9/16. (Ex. B, 001-111)

112.   In these inventories, AR stated they had :"Appropriate access controls implement NASA security requirements." (Ex. B, 5,9,13,17,21,25,29,33,35,38,43, 48,53,58,63, 66,73,78,84,90,97,103.109)

113.   In these inventories, AR made the same claims as the NOV 2015 INVENTORY regarding "contingency planning". (Ex. B, 6,10,14,22,26,30,34,39,44,49,50,54, 59, 64,67,74,79,85,92,98,104,109)

114.   In these inventories, AR made the same claims as the NOV 2015 INVENTORY regarding "access controls". (Ex. B, 6,10,14,22,26,30,34,39,44,49,50,54,59, 64,67, 74,79,85,92,98,104,109)

115.   In these inventories, AR made the same claims as the NOV 2015 INVENTORY regarding  its compliance with "NASA FARS incident response requirements". (Ex. B, 6,10,14,22,26,30,34,39,44,49,50,54,59,64,67,74,79,85,92,98,104,109)

116.   According to records provided by NASA pursuant a *Touhy* request, AR sent at least 16 Information Technology Security Inventories for Contract #NNM16AA02C RS-25 RESTART contract to NASA with the same statements as the NOV 2015 INVENTORY between 1/2016 and 11/20/2019. (Ex. B, 179-246)

117.   In these inventories,  AR stated they had :"Appropriate access controls implement NASA security requirements." (Ex. B 181,185,189,193,197,201,205,209,214, 219,224,234,239,244, 239)

118.   In these inventories, AR made the same claims as the NOV 2015 INVENTORY regarding "contingency planning". (Ex. B, 182,186,190,194,198,202,206,210,215, 220,225,235,239,245,250)

119.   In these inventories, AR made the same claims as the NOV 2015 INVENTORY regarding  access controls. (Ex. B, 182,186,190,194,198,202,206,210, 215,220, 225,235,239,245,250)

120.   In these inventories, AR made the same claims as the NOV 2015 INVENTORY regarding  its compliance with NASA FARS incident response requirements. (Ex. B, 182,186,190,194,198,202,206,210,215,220,225,235,239,245,250)

121.   Jens Laundrup ("LAUNDRUP") from ESI refused to sign an AR Information Technology Security Inventory  because he was uncomfortable with the assertions being made in the document as the document required AR to have security controls that were not fully in place and required AR to report cyber incidents to NASA. (Ex. C, Laundrup Dec. ¶¶ 20-22)

23

122.   After LAUNDRUP declined to sign the NASA security inventory, AR's VP and General Counsel, Brian Sweeney tried to get LAUNDRUP to sign the document telling him that signing the document was very important to AR. (Ex. C, Laundrup Dec.¶ 23)

123.   When approached by AR lawyers, Joel Landau and Amanda Weiner, about AR's DFARS compliance LAUNDRUP advised them AR was out of compliance with the clause. (Ex. C, Laundrup Dec. ¶ 25)

### VII.   AR'S COMPLIANCE STATUS AND ABILITY TO PROTECT SENSITIVE DATA WAS MATERIAL TO THE DOD'S CONTRACT AWARD DECISIONS.

124.   The  DOD issued Policy Memorandum No. 68 dated April 10, 2013 that required contracting officials to ensure that contracts that required classified or unclassified information relating to Ballistic Missile Defense ("BMD") be created, processed or stored on non-government networks  include  terms that mandate safeguards to protect  BMD information  including safeguards to protect against network intrusions and data exfiltration. (Ex. A, 037-038)

125.   In a letter dated March 24, 2013, prime contractor Lockheed Martin ("LM") advised AR that the Navy was putting DFARS Clause 252.204-7012 in contract for FY 2015  as a flow down requirement and that LMSSC anticipates that AR will be fully compliant with the subject clause. (Ex. A, 090)

126.   In an email on July 1, 2014, the Navy advised AR DFARS Clause 252.204-7012 was mandatory and could not be removed from a contract. (Ex. A, 088)

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

127.   On July 23, 2014, AR was not able to proceed with negotiations with the Defense Advanced Research Projects Agency ("DARPA") for the X-1 contract because they did not have a position explaining their compliance or lack thereof with the DFARS Clause. (Ex. A, 092; Ex. H, Van Kleeck Dep. 71:4-21)

128.   On September 9, 2014, the ARMY advised AR in negotiating contract W31P4Q-14-C-0157 that DFARS Clause 252.204-7012 was included in the contract by Executive Order, and that the ARMY could not issue the contract without including the clause. (Ex. A, 094)

129.   The Air Force sent AR an email on September 9, 2014 re: Contract FA 8650-14-7424 reminding AR that the DFARS Clause would remain in the contract and stated: If AR choses to submit a written explanation (of an alternate control): "…the government team will review it and take it into consideration". (Ex. A, 095)

130.   On April 14, 2015, the Army asked AR when they believed they would be fully compliant with the requirements in the DFARS Clause. (Ex. A, 142)

131.   On May 21, 2015, Vicki Michetti ("MICHETTI") from DOD CIO office advised Army contracting officer Laurie Hewitt to reject AR's request for a waiver of the DFARS Clause stating: "There is no provision for a waiver of the requirements, nor is a waiver something the DoD CIO can provide. In discussing this with OUSD (AT&L) they noted that the DFAR does not require compliance with the controls prior to the award but the controls must be in place by the time the contractor has Controlled Technical Information (CTI) on his information system." AR00026626

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

(Ex. A, 412; Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response Nos. 190,191)

132.   On July 9, 2015, LM advised AR that compliance with DFARS 252.204-7012 was a mandatory flow down requirement for all THAAD contracts. (Ex. A, 144-145)

133.   On April 14, 2015, the Army asked AR when they believed they would be fully compliant with the requirements in the DFARS Clause. (Ex. A, 142)

134.   On July 9, 2015, LM advised AR that compliance with DFARS 252.204-7012 was a mandatory flow down requirements for all THAAD contracts and indicated that most government contractors including Lockheed had already taken safeguarding steps in accordance with these existing government contractual requirements. (Ex. A, 144- 45, 218-19)

135.   The Air Force advised AR on June 22, 2015, that they would not be considered for the GBSD Study contact unless they were compliant with DFARS Clause 252.204-7012. (Ex. A, 179,181,184)

136.   On June 23, 2015, the Air Force advised AR they had to have a cyber security compliance plan for the GBSD contract by 2:00 pm or they would lose the contract. (Ex. A, 203)

137.   On June 24, 2015, the Air Force told AR they needed a simple statement that AR would be 100% compliant with the DFARS clause for the GBSD contract. (Ex. A, 206)

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

138.    On June 29, 2015, Angela Terry from the Missile Defense Agency emailed AR with questions  regarding AR'S DFARS Clause compliance status for security review and concurrence before she could award AR contract no. HQ0145-15-C-0010. (Ex. A, 208)

139.    In July 1, 2015 telcom  the Office of the Secretary of Defense ("OSD")  advised AR that DFARS Clause compliance was a "black and white issue". MICHETTI from the DOD CIO stated twice there is no middle ground. When a contractor signs a contract, they are asserting they are compliant, not that there is a plan to compliancy. (Ex. A, 212)

140.    After this meeting, AR started to assert simply assert they had "alternate controls" to provide equivalent protection." (Ex. A, 213-217)

141.    In notes of  meeting on October 29, 2015, the Deputy Director of the MDA, Major General Ole Knudson, AR noted the MDA stated that they will demand that defense contractor adhere to the processes and regulations and that "DFARS 252.204-7012, Safe Guarding Covered Defense Information and Cyber Incident Reporting will apply to all DoD contracts." (Ex. A, 310)

142.    The December 2015, the Missile Defense Agency (" MDA") asked AR how much they were spending on an enterprise level to be NIST 800-53 compliant. (Ex. A 345)

143.    The MDA responded to AR'S  December 2015, DFARS Clause 252.204-7012 presentation re contract HQ0147-13-005 by granting AR only a two month extension

27

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

to prevent a lapse in the period of performance while the government worked toward a resolution of the 7012 clause issue. (Ex. A, 346)

144.   On January 14, 2016, Lindsey Marshall from the MDA sent AR an email stating that given the importance of the MDA mission and the sensitivity of MDA related Covered Defense Information ("CDI") the DFARS Clause was required on all new contracts and that the MDA intended to incorporate the clause in existing contracts as well. (Ex. A, 347-348)

## VIII.   AR MADE FALSE STATEMENTS AND MATERIAL OMISSIONS TO SECURE DOD CONTRACTS AND SUBCONTRACTS.

145.   To secure the GBSD Study contract AR promised  the Air Force on June 23, 2015, they would provide a **"Dedicated and separate end user computer devices for team members to ensure inviolability of the data and co-mingling of data cannot occur."** (Ex. A, 197; Ex. C, Laundrup Dec. ¶32)

146.   AR sent the Air Force a letter dated August 16, 2015 regarding the GBSD Study FA8219-15-C-0003 contract advising the government they were no longer using a stand-alone computer network to comply with the contract stating: "Subsequent to the start of the GBSD Study A program, AR completed an updated compliance matrix for DFARS 252.204-7012…and based on this status, the isolated (stand-alone) computing network system for GBSD Study A is no longer necessary…This letter provides notification the GBSD Study A program now utilizes the AR enterprise computing environment." (Ex. A, 498)

28

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

147.   Captain Robert Shannon from the Air Force responded to AR's August 16, 2015 letter stating: "Thank you for keeping us on top of this. When we signed the contract we were told ARI had complied with the clause without exception which includes no alternate control measures, that can only be done at the DoD CIO level. Are we still in compliance?" (Ex. A, 301)

148.   AR then sent a letter to the Air Force dated September 16, 2015 regarding the GBSD contract that advised the Air Force that AR had 24 controls in place and 36 alternate controls in place which adequately protected the Air Force's Unclassified Controlled  Technical information. (Ex. A, 300) The letter claimed that AR was proposing to utilize the AR enterprise computing network. (*Id.*)

149.   AR did not fulfill their promise to the Air Force to provide  a system that was 100% compliant, because they did not consistently use the card reader that was necessary for multifactor authentication which is a DFARS Clause requirement.  (Ex. C, Laundrup Dec. ¶¶ 32-34)

150.   AR ultimately dismantled the stand-alone computer system they promised the Air Force to secure the GBSD Study contract. (Ex. C, Laundrup Dec. ¶¶ 32-34)

151.   AR sent a letter  to the ARMY in September 2014 re: Contract W31PQ14C0157.("SEPT 2014 LTR")  (Ex. A 101-102) The letter stated: "AR has conducted an extensive analysis of its compliance" and claimed AR "10 Controls in Place and Compliant. 43 Controls in Place with Enhancements on-going. 6 Partial Controls and 1 mitigating control. (Ex. A 102) The letter stated: "It is important to

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication CASE NO. 2:15-cv-2245 WBS-AC**

note that AR is compliant with the majority of the clauses requirements. Please be assured that AR will make every effort to prevent a data breach while we work aggressively to strengthen the controls and implement additional protection measures." (Ex. A, 103)

152.   AR  sent the Air Force a letter dated September 18, 2014 re: Contract FA8650-14-C-7424 restating the same claims made in the SEPT 2014 LTR regarding its DFARS compliance status. (Ex. A, 107-111)

153.   AR  sent the Navy a letter dated September 30, 2014 re: Contract re: Prime Contract #N68936-14-C-0035 restating the same claims made in the SEPT 2014 LTR regarding its DFARS compliance status (Ex. A 112-117),for which the Navy PCO signed a conditional acknowledgement of acceptance. (Ex. A, 113)

154.   AR sent LM  a letter dated January 19, 2015, restating the same claims made in the SEPT 2014 LTR regarding its DFARS compliance status. (Ex. A, 119-120) The email AR sent attaching the January 19, 2015 letter advised LM, AR was "using alternative controls or protective measures to achieve equivalent protection for the DFARS Clause." (Ex. A, 118)

155.   AR sent LM a letter dated March 16, 2015, restating the same claims made in the SEPT 2014 LTR regarding its DFARS compliance status. (Ex. A, 125-126)

156.   AR sent LM a letter dated May 14, 2015, restating the same claims made in the SEPT 2014 LTR regarding its DFARS compliance status.  (Ex. A, 130-131)

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

157.   AR sent the Air Force a letter dated March June 15, 2015, restating the same claims made in the SEPT 2014 LTR regarding its DFARS compliance status. (Ex. A, 135-40)

158.   AR sent a letter to LM dated July 29, 2015  that enclosed a compliance matrix claiming  to have 24 controls in place and compliant and 36 alternate controls that protected information covered by the clause. (Ex. A 213-217)  The letter  stated thirteen additional  were  "controls in place and compliant"  when AR'S NASA Gap Analysis stated those controls were not in place and compliant as of September 4, 2015. Those controls were, AC-6 Least Privilege, AC-11 Session lock, AC-17 Remote Access, AT-2 Security Awareness Training, AU-3 Content of Audit Records, AU-9 Protection and Audit Information, IA-2 Identification and Authentication (Organizational Users), IR-2 Incident Response Training, M-4 Nonlocal Maintenance, MP-6 Medial Sanitization, SC-8 Transmission Confidentiality an Integrity, SC-13 Cryptographic Protection and SI-3 Malicious Code Protection.  (Ex. A, 215-221, controls represented as compliant in the compliance matrix, the same controls represented as not compliant in the Gap Analysis Results by Control Summary, on September 6, 2015. Ex. A, 014)

159.   AR sent a letter to LM dated August 20, 2015  that enclosed a compliance matrix claiming to have 24 controls in place  and compliant and 36 alternate controls that protected information covered by the clause, once again representing thirteen more

controls were in place and compliant which conflicted with the findings of the NGA published a couple weeks later. (Ex. A, 282-287; Ex. C, Laundrup Dec. ¶ 31)

160.   AR's representations to the government that they had "alternate controls" in place was misleading because at AR "alternate controls in place was code for alternate controls and no controls." (Ex. A, 302)

161.   AR asked ESI contractor LAUNDRUP to prepare a report for Raytheon regarding AR's DFARS Clause Compliance status. ( (Ex. C, Laundrup Dec ¶34; Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response Nos.199,200)

162.   LAUNDRUP prepared a report stating that AR was not compliant but later found out that when AR sent his report to Raytheon it was changed to indicate AR was DFARS compliant. (Ex. C, Laundrup Dec. ¶30)

163.   On June 30, 2015, AR contract manager, Courtney Strutz,  AR sent a letter to Dawn Terry at MDA re proposal for contract HQ014715C0010 stating: "Aerojet Rocketdyne, Inc. (AR) is keenly aware of the importance of DFARS Clause 252.204-7012 and has been actively working to protect all information related to Department of Defense programs." This effort is ongoing and AR is constantly improving its protection of information."  (Ex. A, 210-211)

164.   Aerojet made assurances to the Missile Defense Agency about DFARS compliance in order to get a 12.5 million dollar contract HQ0147-15-C-0010

32

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

awarded. (Ex. K, Ruiz Dep. 103:16-104:16, Exhibit 16 to Ruiz Dep. AR32628-

32630

165.   In December 2015, AR gave a presentation to the MDA regarding their DFARS

Clause compliance status where they told the MDA AR that: "Protective security

controls to safeguard unclassified IT resources are in place." (Ex. J, Smith Dep. 97:9-

98:7, 120:16-20, Exhibit 1 to Smith Dep.)

166.   On December 16, 2015, AR'S Director of Contracts, Douglas Greer sent AR

Director of Contracts, Missile Defense, an email with a statement that AR contracts

personnel were to use to responding to customers regarding DFARS Clause 252.204-

7012 which represented AR was fully compliant with meeting 24 security controls

and identified 36 alternate controls or protective measures in place to achieve

equivalent protection. The statement stated:

> AR completed a gap analysis of our enterprise infrastructure to assess our
> posture from a documentation and technical perspective. **AR does not
> intend to deviate from any of the security requirements under DoD
> FARS clause ( Dec 2015) , or propose alternative security measures** but
> had planned a strategy and plan to address gaps going forward… **While the
> analysis has identified compliance gaps and areas of improvement,
> security controls to safeguard unclassified IT resources are in place** as
> described in the "Explanatory Control Statement." ( Emphasis added) (Ex.
> A, 343-344)

### IX.   AR HAS BEEN PAID MONEY ON NASA CONTRACTS OBTAINED BY FRAUD WHILE IT WAS NOT COMPLIANT WITH THE NASA FARS CLAUSE.

167.   On or about March 11, 2014, AR was awarded contract Parent Award ID

NNC10BA13B, Award ID NNC13TA66T to perform work for the National

Aeronautics and Space Administration ("NASA"). (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 91)

168.   At the time AR was awarded contract Parent Award ID NNC10BA13B, Award ID NNC13TA66T, AR was not compliant with the minimum NIST SP 800-53 moderate controls required by NASA FARS Clause 1852.204-76. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 92 )

169.   Prior to the government awarding AR contract Parent Award ID NNC10BA13B, Award ID NNC13TA66T, AR did not disclose to the government every NIST SP 800-53 moderate control required by NASA FARS Clause 1852.204-76 that AR was not compliant with. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 93)

170.   In the course of performing contract Parent Award ID NNC10BA13B, Award ID NNC13TA66T, AR stored Sensitive But Unclassified ("SBU") information belonging to the federal government on its computer system. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 94)

171.   The federal government has paid AR at least $12,226,270 for work AR has performed on contract, Parent Award ID NNC10BA13B, Award ID NNC13TA66T. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 95)

172.   On or about March 31, 2015 AR was awarded contract Award ID NNC15CA07C to perform work for the National Aeronautics and Space Administration ("NASA").

34

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

(Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 106)

173. At the time AR was awarded contract Award ID NNC15CA07C, AR was not compliant with the minimum NIST SP 800-53 moderate controls required by NASA FARS Clause 1852.204-76. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 107)

174. Prior to the government awarding AR contract Award ID NNC15CA07C, AR did not disclose to the government every NIST SP 800-53 moderate control required by NASA FARS Clause 1852.204-76 that AR was not compliant with. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 108)

175. In the course of performing contract Award ID NNC15CA07C, AR stored Sensitive But Unclassified ("SBU") information belonging to the federal government on its computer system. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 109)

176. The federal government has paid AR at least $17,862,764 for work AR has performed on contract, Award ID NNC15CA07C. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 110)

177. On or about November 1, 2015, AR was awarded contract Award ID NNM16AA02C to perform work for the National Aeronautics and Space

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

Administration ("NASA"). (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 111)

178.   At the time AR was awarded contract Award ID NNM16AA02C, AR was not compliant with the minimum NIST SP 800-53 moderate controls required by NASA FARS Clause 1852.204-76. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 112)

179.   Prior to the government awarding AR contract Award ID NNM16AA02C, AR did not disclose to the government every NIST SP 800-53 moderate control required by NASA FARS Clause 1852.204-76 that AR was not compliant with. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No.113)

180.   In the course of performing contract Award ID NNM16AA02C, AR stored Sensitive But Unclassified ("SBU") information belonging to the federal government on its computer system. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 114 )

181.   The federal government has paid AR at least $788,077,590 for work AR has performed on contract, Award ID NNM16AA02C. (Ex. M, Defendants' Supplemental Response to Relator's First Set of Requests for Admissions Response No. 115)

182.   The federal government has paid or obligated to pay at least $1,717,862,988 for work AR has performed on contract, Award ID.  NNM16AA02C. (Ex. Q 002)

183.   On or about December 14, 2015, AR was awarded contract Award ID
NNM16AB21P to perform work for the National Aeronautics and Space
Administration ("NASA"). (Ex. L, Defendants' Response to Relator's First Set of
Requests for Admissions Response No. 116)

184.   At the time AR was awarded contract Award ID NNM16AB21P, AR was not
compliant with the minimum NIST SP 800-53 moderate controls required by NASA
FARS Clause 1852.204-76. (Ex. L, Defendants' Response to Relator's First Set of
Requests for Admissions Response No. 117)

185.   Prior to the government awarding AR contract Award ID NNM16AB21P, AR did
not disclose to the government every NIST SP 800-53 moderate control required by
NASA FARS Clause 1852.204-76 that AR was not compliant with. (Ex. L,
Defendants' Response to Relator's First Set of Requests for Admissions Response
No. 118)

186.   In the course of performing contract Award ID NNM16AB21P, AR stored
Sensitive But Unclassified ("SBU") information belonging to the federal government
on its computer system. (Ex. L, Defendants' Response to Relator's First Set of
Requests for Admissions Response No. 119)

187.   The federal government has paid YOU at least $187,682 for work AR has
performed on contract, Award ID NNM16AB21P. (Ex. L, Defendants' Response to
Relator's First Set of Requests for Admissions Response No. 120)

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

188.   On or about April 1, 2016 AR was awarded contract Award ID NNM16AA12C to perform work for the National Aeronautics and Space Administration ("NASA"). (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 121)

189.   At the time AR was awarded contract Award ID NNM16AA12C, AR was not compliant with the minimum NIST SP 800-53 moderate controls required by NASA FARS Clause 1852.204-76. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 122)

190.   Prior to the government awarding AR contract Award ID NNM16AA12C, AR did not disclose to the government every NIST SP 800-53 moderate control required by NASA FARS Clause 1852.204-76 that AR was not compliant with. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 123)

191.   In the course of performing contract Award ID NNM16AA12C, AR stored Sensitive But Unclassified ("SBU") information belonging to the federal government on its computer system. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 124)

192.   The federal government has paid or is obligated to pay at least $175,165,695 for work AR has performed on contract, Award ID NNM16AA12C. (Ex. Q 002)

193.   According to the official government website that tracks federal spending, usaspending.gov, NASA has paid or is obligated to AR $4,269,770,516 on NASA

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication
CASE NO. 2:15-cv-2245 WBS-AC**

contracts with a start date from June 1, 2013 to May 31, 2016, including NASA contract NNM06AB13C that was modified in July 2013. (Ex. Q 1-7 , Ex. A 67-69)

### X.   AR HAS BEEN PAID MONEY ON DOD CONTRACTS  OBTAINED BY FRAUD  WHILE IT WAS  NOT COMPLIANT WITH THE DFARS CLAUSE

194.   On or about February 25, 2014  AR  awarded contract Award ID W31P4Q14C0075 to perform work for the Department of the Army. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 1)

195.    At the time AR was awarded contract Award ID W31P4Q14C0075, AR was not compliant with the minimum cybersecurity safeguards required by DFARS Clause 252.204-7012. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 2)

196.   Prior to the government awarding AR contract Award ID W31P4Q14C0075, AR did not disclose to the government every cybersecurity safeguard required by DFARS Clause 252.204-7012 AR was not compliant with. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 3)

197.   In the course of performing contract Award ID W31P4Q14C0075 AR stored unclassified controlled technical information ("UCTI") belonging to the federal government on AR's computer system. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 4)

198.   The federal government has paid AR at least $12,566,969 for work AR has performed on contract Award ID W31P4Q14C0075. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 5)

199.   The federal government has paid AR at least $710,149 for work YOU have performed on contract, Award ID N0001414C0035. (Ex. M, Defendants' Supplemental Response to Relator's First Set of Requests for Admissions Response No. 15 )

200.   On or about September 30, 2014 AR was awarded contract Award ID N6893614C0035 to perform work for the Department of the Navy. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 31)

201.   At the time AR was awarded contract Award ID. N6893614C0035, AR was not compliant with the minimum cybersecurity safeguards required by DFARS Clause 252.204-7012. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 32)

202.   Prior to the government awarding AR contract Award ID. N6893614C0035, AR did not disclose to the government every cybersecurity safeguard required by DFARS Clause 252.204-7012 that AR was not compliant with.  (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 33)

203.   In the course of performing contract Award ID. N6893614C0035, AR stored unclassified controlled technical information ("UCTI") belonging to the federal

government on its computer system. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 34)

204.   The federal government has paid AR at least $ 843,421 for work AR has performed on contract, Award ID. N6893614C0035. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 35)

205.   On or about October 8, 2015, AR was awarded contract Parent Award ID FA865013D2335, Award 0004 to perform work for the Department of the Air Force. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 66)

206.   At the time AR was awarded contract Parent Award ID FA865013D2335, Award 0004, AR was not compliant with the minimum cybersecurity safeguards required by DFARS Clause 252.204-7012. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 67)

207.   Prior to the government awarding AR contract Parent Award ID FA865013D2335, Award 0004, AR did not disclose to the government every cybersecurity safeguard required by DFARS Clause 252.204-7012 that AR was not compliant with. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 68)

208.   In the course of performing contract Parent Award ID FA865013D2335, Award 0004, AR stored unclassified controlled technical information ("UCTI") belonging to

the federal government on its computer system. (Ex. L, Defendants' Response to Relator's First Set of Requests for Admissions Response No. 69)

209.   The federal government has paid AR at least $965,818 for work AR has performed on contract, Parent Award ID FA865013D2335, Award 0004. (Ex. M, Defendants' Supplemental Response to Relator's First Set of Requests for Admissions Response No. 70)

210.   According to the official government website that tracks federal spending, usaspending.gov, the DOD has paid or is obligated to pay AR, $2,078,242,523, for work done on DOD prime and subcontracts with  a start date of June 1, 2013 to May 31, 2016. (Ex. Q 1-7)


Dated:  September 20, 2021                           Respectfully submitted,

                                                                         THYBERGLAW

                                                                          _/s/ Gregory A. Thyberg__
                                                                         GREGORY A. THYBERG
                                                                         Attorneys for Relator
                                                                          BRIAN MARKUS

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Relator's Statement of Undisputed Material Facts ISO Motion For Summary Judgment/Adjudication**
**CASE NO. 2:15-cv-2245 WBS-AC**