Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:    (310) 552-4200
Facsimile:    (310) 552-5900

Ashley Neglia (SBN 298924)
ashley.neglia@kirkland.com
KIRKLAND & ELLIS LLP
555 S. Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500

Sable Hodson (SBN 313252)
sable.hodson@kirkland.com
KIRKLAND & ELLIS LLP
1601 Elm Street
Dallas, TX 75201
Telephone:    (214) 972-1770
Facsimile:    (214) 972-1771

*Attorneys for Defendants Aerojet Rocketdyne
Holdings, Inc. and Aerojet Rocketdyne, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BRIAN MARKUS, individually,<br><br>        Relator,<br><br>    vs.<br><br>AEROJET ROCKETDYNE HOLDINGS, INC., a corporation and AEROJET ROCKETDYNE, INC., a corporation,<br><br>       Defendants. | Case No. 2:15-cv-02245-WBS-AC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, ALTERNATIVELY, MOTION FOR SUMMARY ADJUDICATION**<br><br>Judge:     Hon. William B. Shubb<br>Hearing Date:  November 1, 2021<br>Time:     1:30 p.m.<br>Courtroom:  5 |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND .....................................................................................................3

    A.   Relator's Unsupported Falsities Should Not Be Credited or Condoned.................3

    B.   Relator's Claims Must Be Narrowed. ....................................................................3

    C.   Relator Has Not (and Cannot) Offer Evidence to Overcome the Government's Actions After Learning of Aerojet's Cybersecurity Non-Compliance. ..................4

III. LEGAL STANDARD .............................................................................................7

IV.  ARGUMENT ...........................................................................................................8

    A.   Relator's Record Is Void of Evidence to Expand His Case Beyond the Eight Contracts (at Most) That Contemplate Compliance with the Applicable Cybersecurity Requirements. ...................................................................................8

    B.   *Kelly* Forecloses Relator's False Certification Claim. ..........................................10

    C.   Relator Presents Insufficient Evidence to Meet His Burden for Causation in Light of the Government's Actions in the Face of Aerojet's Disclosures.............11

    D.   Relator Has Not Met His Burden for Materiality and Cannot Improperly Shift it to Aerojet. ..........................................................................................................13

    E.   Relator Spews Falsities About Damage to the Government.................................19

V.   CONCLUSION .....................................................................................................21

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Ab-Tech Const., Inc. v. United States,*
   31 Fed. Cl. 429 (1994), *aff'd sub nom.,* 57 F.3d 1084 (Fed. Cir. 1995), *abrogated*
6
   *on other grounds* ...........................................................................................................20

*Celotex Corp. v. Catrett,*
7
   477 U.S. 317 (1986)...........................................................................................7, 8, 13

8
*United States ex rel. Cimino v. Int'l Bus. Machines Corp.,*
9
   3 F.4th 412 (D.C. Cir. 2021) ..........................................................................................11

10
*United States ex rel. Dahlstrom v. Sauk-Suiattle Indian Tribe of Wash.,*
   2019 WL 4082944 (W.D. Wash. Aug. 29, 2019)............................................................8
11

12
*Fink v. Gomez,*
   239 F.3d 989 (9th Cir. 2001) ...........................................................................................3

13
*United States ex rel. Hartpence v. Kinetic Concepts, Inc.,*
14
   2019 WL 3291582 (C.D. Cal. June 14, 2019) .................................................7, 14, 15

15
*United States ex rel. Hendow v. Univ. of Phoenix,*
   461 F.3d 1166 (9th Cir. 2006) .......................................................................................20
16

17
*United States ex rel. Hopper v. Anton,*
   91 F.3d 1261 (9th Cir. 1996) ...................................................................................10, 19

18
*United States ex rel. Kelly v. Serco, Inc.,*
19
   846 F.3d 325 (9th Cir. 2017) ...............................................................................2, 10, 11

20
*United States ex rel. Mateski v. Raytheon Co.,*
   2017 WL 3326452 (C.D. Cal. Aug. 3, 2017), *aff'd,* 745 F. App'x 49 (9th Cir.
21
   2018) ...............................................................................................................................10

22
*United States ex rel. McGrath v. Microsemi Corp.,*
   140 F. Supp. 3d 885 (D. Ariz. 2015), *aff'd,* 690 F. App'x 551 (9th Cir. 2017)....................10, 19
23

24
*Pickern v. Pier 1 Imps. (U.S.), Inc.,*
   457 F.3d 963 (9th Cir. 2006) ...........................................................................................9

25
*United States v. McKesson Corp.,*
26
   2021 WL 583506 (N.D. Cal. Feb. 16, 2021) ................................................................10

27
*United States v. Pub. Warehousing Co. K.S.C.,*
   2017 WL 1021745 (N.D. Ga. Mar. 16, 2017).................................................................17

28

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY,
MOT. FOR SUMM. ADJUDICATION**

*Universal Health Services, Inc. v. United States ex rel. Escobar,*
   136 S. Ct. 1989 (2016) .................................................................................10, 12, 18

**Statutes**

31 U.S.C. §§ 3729 - 3733 ........................................................................... *passim*

**Rules**

Fed. R. Civ. P. 56 .............................................................................................7, 8

**Other Authorities**

48 C.F.R. § 252.204-7012 ........................................................................... *passim*

48 C.F.R. § 1852.204-76 ............................................................................ *passim*

48 C.F.R. § 1852.237-73 ......................................................................................9

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

## I.     INTRODUCTION

Lacking evidence to create triable issues regarding key elements of his False Claims Act ("FCA") case, Relator instead resorts to false and derogatory rhetoric. However, attempting to drag Aerojet's reputation through the mud with inflammatory and false accusations is not the standard that must be met for his claims to survive summary judgment. Instead, at this stage after years of litigation, Relator was required to present affirmative evidence to support each element of his claims for every instance of alleged fraud. This he has not done and cannot do, necessitating summary judgment in Aerojet's favor.

**First**, before even analyzing whether Relator has met his burden of proof with respect to FCA liability, this case should be substantially limited. The undisputed evidence shows that there are only nine Aerojet contracts that contain the Cybersecurity Clauses. This case is well past the pleading stage and Relator can no longer rely on vague allegations in his complaint to sweep in dozens of unspecified contracts based on speculation about what clauses they "would have" contained. Relator needed to submit *proof* that the other contracts he tries to loop into the case contained the at-issue clauses. This he has not done. Instead, the record only contains undisputed evidence reflecting that half of the contracts pleaded in Relator's complaint do not contain either clause. Three of the remaining nine were awarded after this case was filed on October 29, 2015 and therefore, are not at issue. *See* ECF No. 57 at 11; SUF[1] ¶ 48 (contract # NNM16AA02C awarded on 11/19/2015), ¶ 50 (contract # W31P4Q-16-C-0026 awarded on 12/23/2015), ¶ 52 (contract # NNM16AA12C awarded on 4/1/2016). For another, NASA determined that the NFS Clause would not apply, despite being in the contract. SUF ¶¶ 39–42.[2] As such, Relator's assertion that he can proceed on fraud claims for unspecified contracts that he cannot even show contained the Cybersecurity Clauses must be rejected at this stage of the litigation.

**Second**, Relator fails to present evidence sufficient to meet the essential elements of his FCA

---

[1] References to "SUF" herein refer to Aerojet's Statement of Undisputed Facts, as well as Relator's Responses and Aerojet's replies thereto.

[2] Relator also admits that the Army made a similar determination for contract # W31P4Q-16-C-0026, providing another reason that contract is not at issue here. *See* Additional Undisputed Facts & Supp. Evid. ("RAF") ¶ 21 (Army).

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

claims for *any* contract. Despite having years to do so, Relator did not seek discovery from any government contracting officer who awarded Aerojet a contract to determine whether Aerojet's cybersecurity status, which Aerojet disclosed, impacted (or even could have impacted) their contracting decisions. This gap in the record alone dooms Relator's case on both materiality and causation and the Court should therefore grant summary judgment in Aerojet's favor. Nevertheless, Aerojet submitted evidence demonstrating that both materiality and causation are lacking as a matter of law. Specifically, Aerojet submitted evidence showing that the government awarded Aerojet additional contracts, continued to pay its claims, and accepted Aerojet's technology despite the fact that Aerojet disclosed (and the government understood) that Aerojet was not compliant with the baseline cybersecurity controls. Further, seven contracting officials all swore that they had no knowledge of any contract terminated, award refused, or payment declined based on non-compliance with the at-issue clauses. Against this evidentiary record, Relator's case cannot succeed. *See United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 329 (9th Cir. 2017).

**Third**, even if Relator did present evidence to meet the elements of his claims (he has not), Relator's case should be limited to statutory penalties. As it has done for decades, Aerojet provided its government customers with the rocket and missile technology it called upon Aerojet to deliver for the contracts in Relator's complaint. Nevertheless, Relator claims that Aerojet has somehow damaged the government. Relator, however, failed to present any evidence of what monetary value (if any) government officials attributed to an information system fully compliant with the Cybersecurity Clauses. Lacking any such evidence that might support actual damages, Relator resorts to made up theories about adversaries stealing government secrets, which somehow resulted in the loss of human lives. He backs up his egregious, inflammatory claims with no evidence, because there is none. Nor does he provide legal authority to support his assertion that a fraudulent inducement claim allows for full-contract-value damages, especially given that the government accepted Aerojet's goods and services. Instead, he misquotes the Ninth Circuit to make up language to suit his needs. Such a record is insufficient to meet Relator's burden of proof to proceed to trial on a damages claim reaching into the billions.

At a bare minimum, this case should be limited to the contracts pleaded in the complaint and

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

awarded before Relator filed this case that include the relevant Cybersecurity Clauses and Aerojet's potential liability should be limited to statutory penalties on those contracts. Further, despite accusing Aerojet of fraud, Relator has not presented the Court with the minimum evidence necessary to create a triable issue on any contract. Lacking such a basic showing, Aerojet should not be forced to continue defending against Relator's meritless allegations. Aerojet respectfully requests that this Court grant Aerojet's motion for summary judgment in full and dismiss this case.

## II.     BACKGROUND

### A.     Relator's Unsupported Falsities Should Not Be Credited or Condoned.

Relator's opposition, including his statement of "facts," repeatedly drags Aerojet's name through the mud by fabricating the factual record. Relator cuts out of whole cloth the argument that government data was leaked and stolen by "adversaries" and used to "endanger[] American lives." Opp. at 6, 10. Relator does not cite a shred of evidence supporting his postulations, which are false. There is no evidence that any information related to government contracts—let alone design information or information related to the government contracts at issue in this case—was successfully siphoned from Aerojet's systems.[3] Nor is there any evidence that any attacks were actually conducted by the United States' "adversaries." Such misrepresentations should be disregarded entirely.[4]

### B.     Relator's Claims Must Be Narrowed.

Relator does not dispute that ***half*** of the contracts named in Relator's complaint do not even contain the Cybersecurity Clauses with which Relator claims Aerojet did not comply. *See* SUF ¶¶ 32, 35, 38, 43, 44, 46, 47, 49, 51. Instead, Relator shifts his argument to claim that the Cybersecurity Clauses were somehow imposed on Aerojet because of either an attachment to the contract or another inapposite contract clause. Opp. at 11–12. As discussed below, neither of these

---

[3] The *only* evidence relating to any breach in the record began on Pratt & Whitney Rocketdyne's systems, prior to its merger with Aerojet General Corporation. *See* ECF No. 130-2 (Defs.' Resp. to Relator's Statement of Facts) ¶¶ 11-13; Ex. 248 at 30:6-31:8.

[4] *See Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("[A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose . . . are sanctionable.").

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

arguments are viable. Regardless, as shown in the table below, Relator only makes those arguments for three contracts and thus they cannot save narrowing of his claims even if they had merit.

| Contract No. | Agency | Contains Cybersecurity Clause | SUF ¶ | DD Form 254 | Unrelated NASA Clause |
|---|---|---|---|---|---|
| W31P4Q-14-C-0075 | Army | **No** | 32 | X | |
| NNC10BA13B, NNC13TA66T | NASA | Yes | 33 | | |
| N00014-14-C-0035 | Navy | Yes | 34 | | |
| FA8650-13-D-2335, Award ID 0002 | Air Force | **No** | 35 | | |
| N68936-14-C-0035 | Navy | Yes | 36 | | |
| FA8650-14-C-7424 | Air Force / DARPA | Yes | 37 | | |
| NNC10BA02B, NNC15TA07T | NASA | **No** | 38 | | |
| NNC15CA07C | NASA | Yes | 39 | | |
| FA8650-13-D-2335, Award ID 0003 | Air Force | **No** | 43 | | |
| NNC15VD08P | NASA | **No** | 44 | | |
| HR001115C0132 | DARPA | Yes | 45 | | |
| FA8650-13-D-2335, Award ID 0004 | Air Force | **No** | 46 | | |
| NNM16AB22P | NASA | **No** | 47 | | |
| NNM16AA02C | NASA | Yes | 48 | | |
| NNM16AB21P | NASA | **No** | 49 | | X |
| W31P4Q-16-C-0026 | Army | Yes | 50 | | |
| NNH16CP17C | NASA | **No** | 51 | | X |
| NNM16AA12C | NASA | Yes | 52 | | |

## C. Relator Has Not (and Cannot) Offer Evidence to Overcome the Government's Actions After Learning of Aerojet's Cybersecurity Non-Compliance.

Relator focuses heavily on purported deficiencies in Aerojet's cybersecurity between 2013 and 2015, but glosses over the facts that Aerojet detailed in its motion showing that Aerojet repeatedly disclosed to its customers that its cybersecurity did not meet the baseline government technical requirements associated with the Cybersecurity Clauses. Mot. at 9–16. Indeed, Aerojet sent at least one disclosure letter to each of the implicated DoD agencies that plainly stated it was not fully compliant with the cybersecurity standards in the DFARS Clause and had frequent conversations about its plan toward compliance. *See* Mot. at 9–14; SUF ¶ 61, Ex. 78; ¶ 67, Ex. 83; ¶ 77, Ex. 89; ¶ 82, Ex. 110; ¶ 94, Ex. 59–61, ¶ 97, Ex. 65; ¶¶ 57–126. Aerojet also detailed its compliance status to NASA, including stating that it was not compliant with the NFS Clause and that its analysis found technical gaps for over half of the NIST 800-53 controls. *See, e.g.*, SUF ¶ 127–128, 134, 139, 141, 144–147, 149–153; Exs. 162, 169, 171, 178, 180. Instead of presenting any

4

1   evidence about some government confusion regarding Aerojet's compliance status (which Relator

2   does not have), Relator twists and misstates the contents of Aerojet's disclosures to claim that

3   Aerojet "promised" to prevent breaches (Opp. at 10), even though Aerojet said no such thing and the

4   DoD has made clear that that is an impossible feat. *See* SUF ¶ 24, Ex. 21 at 38:3–12.

5         Regardless of Relator's unsupported interpretation of Aerojet's communications, Relator

6   does not claim, let alone provide evidence, that the government understood Aerojet's

7   communications as something other than stating its non-compliance. Relator did not ask a single

8   contracting officer who awarded Aerojet a contract whether they understood Aerojet's letters to state

9   anything but non-compliance. Instead, the only evidence in the record reflects that the DoD plainly

10  understood Aerojet's letters as a statement that Aerojet was not fully compliant with the baseline

11  cybersecurity requirements set forth in the DFARS Clause. *See, e.g.*, SUF ¶¶ 69, 71, 80, 108, 115,

12  Exs. 79, 82, 88, 86, 89, 91, 94, 97. In fact, Ms. Laurie Hewitt, ***the only contracting officer to offer***

13  ***deposition testimony in this case***, understood based on Aerojet's disclosure that Aerojet "did not

14  comply with the DFARS clause" and information in Aerojet's disclosure statement informed her

15  exactly "how noncompliant Aerojet was." SUF ¶ 80, Ex. 8 at 25:14–26:4; 53:21–54:2.

16        The record similarly reflects that NASA understood the extent of Aerojet's non-compliance

17  and responded by offering Aerojet support, guidance, and encouragement. SUF ¶ 141, Ex. 168

18  (NASA stating that Aerojet had made a "very good effort" and that it "greatly appreciate[d]

19  [Aerojet] sharing th[e] information" regarding Aerojet's non-compliance); ¶ 145, Ex. 169 (reflecting

20  NASA's acknowledgement that Aerojet "had made great progress toward full compliance" and

21  acceptance of Aerojet's "plan going forward to nail down [] technical compliance through the

22  outsourcing initiative"); ¶ 152, Ex. 180 (NASA acknowledging that Aerojet had made "good

23  progress per [its] remediation plan," and thanking Aerojet for its "diligent efforts" and "open,

24  transparent communications" regarding non-compliance which "demonstrate[d] a path to success").

25        Critically, Relator has not pointed to any evidence showing that the government viewed

26  Aerojet's incomplete implementation of the NIST technical controls as a blockade to doing business

27

28

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY,
MOT. FOR SUMM. ADJUDICATION**

with Aerojet when it entered into the contracts at issue here.[5] Rather, the DoD and NASA continued to award Aerojet contracts, pay Aerojet's invoices, and accept Aerojet's missile and rocket engine technology pursuant to the contracts. *See* SUF ¶¶ 118, 126, 155–227. Indeed, even after Relator filed this action in 2015 and after the government investigated his claims for over two years, the government continued to award Aerojet new contracts (over forty) and continued to pay Aerojet on contracts Relator expressly identified in his pleadings as having been allegedly procured by fraud. *See* SUF ¶¶ 160–226.

Relator's distractions from these points are irrelevant, and in many instances unsupported by the record. For example, the purported "breaches" Relator discusses began on Pratt & Whitney Rocketdyne's systems before it was merged with Aerojet General Corporation to form the defendant in this case. ECF No. 130-2 (Defs.' Resp. to Relator's Statement of Facts) ¶¶ 11–13; Ex. 248 at 30:6–31:8. More importantly, Relator has drawn no connection between the attacks and the Cybersecurity Clauses on which his claims are based. Regardless, the undisputed record reflects that Aerojet investigated the attacks and took steps to mitigate harm from any similar attacks. *Id.* The routine internal audits by Ernst & Young and Grant Thornton on which Relator heavily relies also were not focused on compliance with the Cybersecurity Clauses and carried no requirement to disclose the results to the government. ECF No. 130-2 (Defs.' Resp. to Relator's Statement of Facts) ¶¶ 32–39; SUF ¶¶ 27–36. Indeed, a former representative of the DoD Office of the Chief Information Officer confirmed that such audits did not need to be disclosed. Third Decl. of Tammy Tsoumas in Supp. of Defs. Reply in Supp. of Mot. for Summ. J., or, Alternatively, Summ.

---

[5] Relator highlights one invoice from 2017 for which NASA delayed payment after review of a system security plan that Aerojet submitted. *See* Opp. at 14. The contract was awarded after this case was filed (Ex. 121 at Row 26) and is thus "not at issue" (ECF No. 57 at 11). Further, the contract was not identified in Relator's SAC and Relator has not even submitted the contract to show that it contained the NFS Clause. Regardless, after NASA communicated its issues with Aerojet's system security plan, Aerojet promptly set up a teleconference with NASA in which it discussed its "plan for NIST compliance and overall status of [the Aerojet] system." SUF ¶ 149, Ex. 178. During that meeting, Aerojet disclosed that it was not compliant with the NIST 800-53 controls, including that it was only 59% compliant as of September 30, 2016. Ex. 178 at 9. After detailed discussions with NASA, Aerojet resubmitted its system security plan, NASA accepted it, and paid the outstanding invoice. Ex. 148. Afterward, NASA lauded Aerojet for its "progress made as well as the open, transparent communications" which "demonstrate[d] a path to success." SUF ¶ 152, Ex. 180.

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

Adjudication Ex. 262 at 52:2–8 (Q: "Are you aware of any provision in either the 2013 or 2015 versions of the DFARS clause that required contractors to share the results of any internal cybersecurity audits with the government?" A: "No."). Moreover, for any of these "facts," Relator has not presented any evidence that the government would have changed course had it learned additional details.

Relator's utter failure to present facts supporting the story of government deception he wants to tell is fatal to his case. Absent such evidence, the record only reflects that the government understood that Aerojet's cybersecurity did not meet the standards set by the Cybersecurity Clauses during the time period at issue in this case, and proceeded anyway.

### III.    LEGAL STANDARD

Relator turns the summary judgment standard completely on its head by arguing that *Aerojet* must disprove *Relator's* claims to prevail on its motion. *See, e.g.*, Opp. at 13, 19. This is a false statement of the law. The Supreme Court made clear that "Rule 56(c) **mandates** the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials **negating** the opponent's claim." *Id.* at 323. This interpretation is intended to achieve one of Rule 56's "principal purposes of . . . isolat[ing] and dispos[ing] of factually unsupported claims . . . ." *Id.* at 323–24.

Indeed, Aerojet went far above and beyond its obligation in its moving papers by submitting a mountain of evidence showing why Relator's claims fail regardless of any evidence Relator submitted in response. Instead of even attempting to satisfy his burden by submitting evidence, Relator leans on a made-up version of the federal rules which unquestionably must be rejected. *See* Opp. at 13, 16 (contending that Aerojet must *disprove* Relator's claims). Instead, Aerojet's motion must be granted because Relator has failed to support the essential elements of his claims. *See United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2019 WL 3291582, at *13 (C.D. Cal. June 14, 2019) (granting summary judgment for defendant in FCA case where relator failed to present

1   proof of essential elements); *United States ex rel. Dahlstrom v. Sauk-Suiattle Indian Tribe of Wash.*,

2   2019 WL 4082944, at *7 (W.D. Wash. Aug. 29, 2019) (same).

3   **IV.    ARGUMENT**

4       **A.    Relator's Record Is Void of Evidence to Expand His Case Beyond the Eight
            Contracts (at Most) That Contemplate Compliance with the Applicable
5           Cybersecurity Requirements.**

6           In its motion, Aerojet explained that Relator lacks evidence to prove that any more than eight

7   contracts imposed the NIST requirements. Mot. at 4–6, 22–24. In response, Relator does not dispute

8   that nine awards identified in his SAC do not contain the cybersecurity clauses (SUF ¶¶ 32, 35, 38,

9   43, 44, 46, 49, 51, 53, 54) and did not submit a single additional contract or subcontract to support

10  expansion beyond those pleaded his SAC. Instead, Relator claims that "the burden is on [Aerojet] to

11  produce for the court copies of the[] contracts so they can demonstrate the clauses are not there."

12  Opp. at 13. This is a demonstrably false statement of the law. *See Celotex*, 477 U.S. at 322–24.

13  Beyond that, Relator merely points to his complaint to support liability for a broader collection of

14  contracts and subcontracts. Opp. at 11–12. Relying on his pleadings, however, is not enough to

15  survive summary judgment. "Rule 56(e) [] requires the nonmoving party to ***go beyond the***

16  ***pleadings***" and provide evidentiary proof of "'specific facts showing that there is a genuine issue for

17  trial.'" *Celotex*, 477 U.S. at 324. It does not allow a party "to resist a properly made motion by

18  reference only to its pleadings." *Id.* at 325. This alone requires the Court to narrow the scope of

19  Relator's claims to the contracts shown to contain the cybersecurity clauses.[6]

20          Realizing that he cannot meaningfully dispute that many of the contracts listed in his

21  complaint did not contain the regulation on which his claims are based (SUF ¶¶ 32, 35, 38, 43, 44,

22  46, 47, 49, 51), Relator now tries to retroactively rewrite his complaint by arguing that his claims are

23  not solely based on Aerojet's non-compliance with the Cybersecurity Clauses. Opp. at 11–12.

24  However, his SAC clearly alleges only that Aerojet purportedly "falsely represented that they were

25

26  ───────────────
    [6] As explained in Aerojet's motion, Relator's case should be limited even further at this stage. Mot.
27  at 22–24. For another contract that contained the NFS Clause, the evidence shows that the
    government determined that it would not apply. *See* SUF ¶¶ 39–42. Three other contracts with the
    Cybersecurity Clauses were awarded after this case was filed and are "not at issue" in this case. *See*
28  ECF No. 57 at 11; *see also* ECF No. 135 at 4 (government conceding same).

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY,
MOT. FOR SUMM. ADJUDICATION**

compliant with NASA FARS Clause 1852.204-76 and DFARS Clause 252.704-7012" and "concealed information from the government regarding the state of its compliance with NASA FARS Clause 1852.204-76 and DFARS Clause 252.704-7012." SAC ¶¶ 124, 125 (setting forth his fraudulent inducement cause of action); *see also, e.g.*, SAC ¶¶ 29, 84, 105, 121–127, 134–138. At this stage of the litigation, he cannot now shapeshift his complaint because his theory failed. *See Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (concluding that the district court did not err in finding that plaintiff failed to provide adequate notice of her claims where the specific factual grounds for those claims were presented for the first time on summary judgment).

Regardless, Relator's new theories with respect to three of the contracts that do not contain the clause fail as a matter of law. Relator cites one contract to argue that all DoD contracts and sub-contracts without the DFARS Clause "would have included" a DD Form 254 purportedly requiring Aerojet to comply with the DFARS Clause. Opp. at 12. However, the form he points to only contains amorphous language requiring Aerojet to comply with "all applicable" laws and regulations. *See* SUF ¶ 32, Ex 71. Relator provides no law or facts supporting that a clause not included in the contract is "applicable." Even if he had, the record contains only Relator's speculation that other contracts "would have included" the same language, which is not evidence.[7] For two of the five NASA contracts without the NFS Clause, Relator does even less. He relies solely on his speculation that contracts without the NFS Clause "would have included" another clause that is intended to protect ***Aerojet's*** independently-developed sensitive business information from dissemination by NASA service providers, not ***NASA's*** information.[8] These arguments do not meet Relator's burden to provide evidence to demonstrate that certain contracts without the Cybersecurity

---

[7] Indeed, the record reflects that even contracts attaching the DD Form 254 do not contain the language on which Relator relies. *See* Exs. 38, 43.

[8] 48 C.F.R. § 1852.237-73 plainly protects information "that the Contractor [i.e., Aerojet] has developed ***at private expense***, that may embody trade secrets or commercial or financial information, and that may be sensitive or privileged," from disclosure by NASA "service providers." (emphasis added). The only obligation it imposes on a contractor is to mark information it deems sensitive business information. *Id.*

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

Clauses should somehow still be included within the scope of this FCA case.

Relator has not and cannot submit evidence that the Cybersecurity Clauses on which his claims are based were included in more than nine contracts. Further, Relator does not meaningfully dispute the evidence showing that NASA concluded that the NFS Clause would not apply for another contract (SUF ¶¶ 39–42), or that the Court has already held that three additional contracts with the Cybersecurity Clauses are "not at issue" in this case (ECF No. 57 at 11; SUF ¶¶ 48, 50, 52). His claims must thus be limited to five contracts before even analyzing their merit. *See United States ex rel. McGrath v. Microsemi Corp.*, 140 F. Supp. 3d 885, 902 (D. Ariz. 2015), *aff'd*, 690 F. App'x 551 (9th Cir. 2017) (compliance must be a prerequisite for payment); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996) (affirming grant of summary judgment where compliance was not a prerequisite for payment).

### B. *Kelly* Forecloses Relator's False Certification Claim.

Though Relator may wish that the False Certification theory of FCA liability were broader than it is, the Ninth Circuit held in *Kelly* that a "specific representation" ***in a claim for payment*** is required for liability. *See Kelly*, 846 F.3d at 332 (affirming summary judgment for defendant on false certification claim where there was "no evidence that [claims for payment] made any specific representation" or "contained any false or inaccurate statements."). Despite stating that Aerojet's reliance on *Kelly* is "misplaced," Relator makes no attempt to distinguish *Kelly*. Opp. at 14. Instead, he provides an overview of the viability of an implied false certification claim *generally* as set forth in *Universal Health Services, Inc. v. United States ex rel. Escobar,* 136 S. Ct. 1989, 2001 (2016), which Aerojet does not dispute. However, *Kelly* post-dates (and interprets) *Escobar* and holds that an implied false certification theory is viable, but requires a specific representation ***in*** a claim for payment. *Kelly*, 846 F.3d at 332; *see also United States ex rel. Mateski v. Raytheon Co.*, 2017 WL 3326452, at *5 (C.D. Cal. Aug. 3, 2017), *aff'd,* 745 F. App'x 49 (9th Cir. 2018) (interpreting *Kelly* to require a relator to show that "the claim for payment contains a representation that, while not overtly false, reasonably (but falsely) implies that the claimant complied with a material condition of payment"); *United States v. McKesson Corp.*, 2021 WL 583506, at *5 (N.D. Cal. Feb. 16, 2021) ("*Kelly* emphasizes that the representations must be made in a claim for payment."). Relator has not

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

identified any such statement (nor can he, *see* SUF ¶¶ 161, 164, 170, 173, 179, 182, 185, 188, 194, 200, 203, 206, 209, 212, 215, 218, 221), and thus Count Two must be dismissed.[9]

### C.    Relator Presents Insufficient Evidence to Meet His Burden for Causation in Light of the Government's Actions in the Face of Aerojet's Disclosures.

Relator stretches to try to point the Court toward a causal connection between Aerojet's cybersecurity compliance and the government's award of contracts, but cannot. To meet his causation burden, Relator must present evidence sufficient for a jury to conclude that Aerojet's representations about its state of non-compliance with the Cybersecurity Clauses **was the reason** that the government entered into each of the contracts with Aerojet. *See United States ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F.4th 412, 418 (D.C. Cir. 2021) (requiring actual, but-for causation to succeed on a fraudulent inducement theory under the FCA). He has not come close to this standard.

Though discovery is now closed and Relator had ample opportunity, he did not ask a single contracting officer why they awarded Aerojet a contract. In fact, he did not even depose a contracting officer who awarded Aerojet a contract. As such, Relator does not have any evidence to show that the government entered into a contract with Aerojet **because of** Aerojet's representations regarding its cybersecurity status. Now he is stuck with attorney argument, which cannot suffice as evidence to overcome summary judgment. For this reason alone the court should grant summary judgment against him on Count One.

Relator first points to the fact that the Air Force required Aerojet to be 100% compliant with the DFARS Clause for one contract. Opp. at 15.[10] But the fact that the Relator can only point to one program that required Aerojet to provide a fully-compliant system as a condition of award actually

---

[9] Even if this Court were to disregard *Kelly*, Relator must still establish each element of his false certification claim, which overlap with his fraudulent inducement claim. This he cannot do for the reasons stated herein and in Aerojet's motion. Further, Relator has abandoned any claim for relief for all DoD claims or any NASA claims pre-dating March 17, 2017. *See* Opp. at 14. Even for those claims, if he could prove the elements, he has only presented evidence purporting to link payment to claimed falsity for one contract not within the scope of this case. *See* Ex. 148 (reinstating fee payment for Contract No. NNC16CA21C, which is not identified in Relator's SAC).

[10] Elsewhere, Relator claims that Aerojet dismantled the DFARS-compliant system Aerojet put in place, but the record reflects that that is not the case. *See* ECF No. 130 (Aerojet's Resp. to Relator's Statement of Facts) ¶¶ 145, 149-50.

---

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

proves Aerojet's point that full compliance was not the determining factor with respect to other contracts. Further punctuating this point, even after the Air Force required (and Aerojet delivered) a fully-compliant isolated network for that one contract in June 2015, the Air Force proceeded to award Aerojet another twenty-six contracts, and there is no evidence that any of them carried such a requirement. *See* Ex. 37 at Rows 13, 14, 18, 20, 22, 31, 33, 35, 38, 41, 43, 44, 45, 46, 52, 57, 58, 60, 61, 63, 67, 68, 72, 76, 77, 84; *see also* SUF ¶ 46 (reflecting contract award from the Air Force without DFARS Clause post-dating contract requiring fully-compliant isolated network).

Next, Relator states that the "causal connection . . . cannot be reasonably questioned" because the DoD told Aerojet that compliance was supposedly mandatory. *See* Opp. at 15. Pointing to a purported requirement, though, is insufficient to prove materiality and therefore falls far short of meeting the stricter causation standard for a fraudulent inducement claim. *See, e.g.*, *Escobar*, 136 S.Ct. at 2003 ("A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment"). More importantly, though, the undisputed evidence shows that the DoD did not consider compliance "mandatory" and instead awarded Aerojet many contracts knowing that it was non-compliant. *See, e.g.*, SUF ¶¶ 50, 57–59, 62, 80 (reflecting Aerojet's pre-award disclosure to the Army, the Army's understanding of Aerojet's non-compliance, and the Army's subsequent award of Contract No. W31P4Q-16-C-0026); ¶¶ 34, 81, 82, 83, 85 (reflecting Aerojet's disclosure of non-compliance to the Navy in connection with Contract No. N68936-14-C-0035, the Navy's acceptance of Aerojet's disclosure status, and contract award); ¶¶ 37, 86–94, 96, 100 (reflecting Aerojet's pre-contract disclosure of non-compliance to the Air Force for Contract No. FA8650-14-C-7424, the Air Force's understanding of non-compliance, and subsequent contract award).

As for NASA, Relator claims that NASA's open discussions with Aerojet about its non-compliance with NIST 800-53 somehow evidence causation. Opp. at 15–16. To the contrary, that NASA was willing to proceed with contracts with Aerojet knowing that it was not compliant with the NIST 800-53 standard forecloses any finding of causation. Indeed, for both contracts Relator uses as examples (RTAPS and RS-25), the undisputed evidence shows that NASA understood that Aerojet's cybersecurity was a work in progress and proceeded anyway. SUF ¶ 133, Ex. 156 (RTAPS

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

NASA personnel telling Aerojet not to "get wigged out" by the requirements, because NASA was there to support Aerojet in bringing its systems into compliance); SUF ¶¶ 48, 128, 134; Exs. 153, 162 (reflecting that Aerojet disclosed its non-compliance in its RS-25 proposal letter, NASA awarded the contract, Aerojet further disclosed the details on its non-compliance after award at NASA's request, and NASA continued with the contract); *see also* ¶¶ 48, 128, 134, 145, 153; Exs. 162 (reflecting Aerojet's disclosure of non-compliance, NASA's understanding, and subsequent award of Contract No. NNM16AA02C). For the invoice that was rejected by NASA, NASA paid that invoice and accepted Aerojet's path toward compliance after Aerojet made a detailed presentation about its compliance status and provided further details on its outsourcing plan and protective measures. *See* SUF ¶ 149; Defs.' Resp. to Relator's Additional Facts ¶ 22; Exs. 148, 178. NASA also thanked Aerojet for its "progress made as well as the open, transparent communications" which "demonstrate[d] a path to success." SUF ¶ 152, Ex. 180. At no time did NASA require Aerojet to be fully compliant with NIST 800-53 for contract award or payment, fatally undercutting any causal connection.

Because Relator has not presented evidence that the government would not have awarded Aerojet the at-issue contracts but-for Aerojet's representations about its compliance with the Cybersecurity Clauses, Relator has failed to meet his burden on causation necessitating judgment in Aerojet's favor as a matter of law.

### D. Relator Has Not Met His Burden for Materiality and Cannot Improperly Shift it to Aerojet.

Reflecting the lack of evidence to support the essential elements of his case, Relator again attempts to shift the burden to Aerojet by stating that *Aerojet* "Has Failed To Establish Its Cybersecurity Compliance Status Was Not Material To The Government." Opp. at 16. This, of course, is not the standard and the Court must hold Relator accountable for failing to meet his burden. *Celotex*, 477 U.S. at 322. Aside from applying the wrong standard, Relator fails to present any affirmative evidence of materiality for the contracts on which his claims are based. He does not present any testimony from a contracting officer who awarded Aerojet a contract showing that Aerojet's compliance with the Cybersecurity Clauses would have affected their contracting

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

decisions. Nor does he point to any instance where Aerojet's non-compliance actually resulted in a contract not being awarded. In fact, the sworn declarations from contracting officials from the DoD and NASA show that non-compliance did not affect their contracting decisions and that they are unaware of non-compliance affecting any of their colleagues' decisions. *See* SUF ¶¶ 155, 157, 158, 224, 238, Exs. 112–14, 182–85. In those declarations, the contracting officers state that they "are not aware of any instance where an invoice was not paid, a contract was terminated, or a contract was refused" based on non-compliance with the Cybersecurity Clauses. *See, e.g.*, Ex. 113. Relator's utter failure to present ***any evidence*** to support materiality for each of the contracts into which he claims Aerojet fraudulently caused the government to enter dooms his case and necessitates summary judgment in Aerojet's favor. *See Hartpence*, 2019 WL 3291582, at *13 (granting motion for summary judgment where relator "failed to come forward with any evidence to show that the government would not have paid the[] [defendant's] claims if it had known that they were not in strict compliance").

Absent evidence, Relator attempts to undercut Aerojet's arguments as to why Relator cannot prove materiality as a matter of law. Opp. at 16–21. Even if these attempts were successful (as discussed next, they are not), *argument* does not meet Relator's evidentiary burden on the essential element of materiality. *See Hartpence*, 2019 WL 3291582, at *13. First, Relator makes unsupported, inflammatory, and false suggestions that government information on Aerojet's systems were "accessed by Iran or North Korea" or somehow "put[] our warfighter's lives at risk" in an apparent attempt to emotionally sway the Court. Opp. at 17. These suggestions are unsupported by any evidence whatsoever and are a blatant attempt to harm Aerojet's reputation.  As such, they should be rejected entirely.

Second, Relator argues generally that "cybersecurity is important to the DOD." Opp. at 17. Aerojet does not dispute that the DoD believes cybersecurity generally is important; Aerojet does too. Generalized statements, however, about the importance of cybersecurity do not meet Relator's burden to show that Aerojet's compliance with the specific cybersecurity regulations at issue in this case were material to the government's contracting decisions. To the contrary, the undisputed evidence summarized in the graphic below reflects that the DoD awarded Aerojet contracts despite

14

1   its disclosure of non-compliance with the DFARS Clause:



SUF ¶¶ 57–227. This, paired with the DoD's lenience in implementing the requisite controls and

knowledge that the other defense contractors were also not compliant with the technical controls

required by the DFARS Clause shows that the DoD did not believe that strict, immediate compliance

with the DFARS Clause was material. *See* Mot. at 29–42; *see also* Ex. 9 (Guissanie Dep.) at 84:7–

85:6; 27:14–30:21 (testifying that between 2013 and 2016, OCIO received approximately two to

three requests for waivers a week from the requirements of the DFARS Clause and about "100 to

150" requests for variances from the clause a year).

Third, Relator admits that Aerojet "disclosed that it was not fully compliant with required

technical controls," but claims that those disclosures were somehow insufficient. Opp. at 17, 19.

Such an argument does not meet Relator's materiality burden.[11] Indeed, all of the evidence in the

record reflects that each government agency plainly understood that Aerojet was not compliant with

---

[11] Again, Relator tries to improperly place the burden on Aerojet by claiming that Aerojet "has the burden to show that the government paid an invoice or entered into a contract with full actual knowledge of its noncompliance" (Opp. at 19), but Relator bears the burden on the essential elements of his case, including materiality. *See Hartpence*, 2019 WL 3291582, at *13.

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

the pertinent regulations and controls they incorporated. *See* Mot. at 13–15, 31–35. Relator has not presented the Court with *any* contrary evidence. Relator lacks any testimony or documentary evidence showing that the government viewed Aerojet's disclosures for the contracts at issue as insufficient or was misled about Aerojet's cybersecurity status based on them. Given that Relator and the DoD believed that compliance with the DFARS Clause was "a black and white issue," (*see* Relator's Resp. to SUF ¶ 115), Aerojet's disclosure of its lack of implementation of *any* control constitutes a sufficient disclosure of non-compliance by any calculation.[12] Even more importantly, Relator has not presented a shred of evidence that any purported misrepresentation in Aerojet's disclosures was sufficiently important to the government, and did not even ask a contracting officer whether that might be the case. This lack of proof dooms Relator's case.

Fourth, Relator argues that the government's continued contracting with Aerojet after this case was filed is not dispositive (Opp. at 18), but Aerojet never argued that it was. Instead, Aerojet argued that, when combined with Aerojet's pre- and post-contracting disclosures, the government's understanding of those disclosures, and continued contracting and payment, the fact that the government continued to contract with Aerojet even after this case was filed compounds the lack of materiality of Aerojet's non-compliance with the technical controls. Mot. at 36–37. Regardless, Relator's only argument as to why the government's continued contracting with Aerojet after Relator disclosed the alleged fraud to it is not dispositive[13] appears to be that the government could not easily terminate contracts with Aerojet because of its need for Aerojet's goods and services. Opp. at 18. This argument not only undercuts Relator's causation arguments by showing that the

---

[12] Of course, Aerojet's disclosures were more detailed than merely disclosing non-compliance with some control. Aerojet's disclosures to the DoD revealed that it had only implemented ten of the sixty controls in the 2013 DFARS Clause, explained which controls those were, and attached a compliance matrix outlining the priority for implementation. *See, e.g.*, SUF ¶¶ 61, 82, 94, 97, 104, 121; Exs. 60, 65, 67, 78, 110, 111. For NASA, Aerojet disclosed that it was only 37% compliant with the complete NIST 800-53 controls, explained where its compliance was missing, and presented NASA with its plan forward, including a detailed timeline of gap closures. SUF ¶ 134, Exs. 160-62, 168-171.

[13] Relator contorts Aerojet's argument into a "government knowledge" defense instead of an attack on Relator's affirmative elements. Opp. at 18–19. For the avoidance of any doubt, Aerojet does not seek summary adjudication on any such affirmative defense, but rather seeks summary judgment based on Relator's failure to prove the essential elements of his claims.

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

government would have contracted with Aerojet despite gaps in its cybersecurity because of Aerojet's technical expertise, but also fails to address the fact that the government *entered into* dozens of contracts *after* this case was filed, after the government investigated, and after the Department of Justice declined to intervene. SUF ¶¶ 167–68, 176–77, 191–92, 197, 225–26. There is no sunk cost argument for such contracts and these facts strongly point to immateriality for *all* contracts.[14] *See* Mot. at 36–37.



_____

[14] Relator cites one unreported, out-of-circuit case to support his contention that his complaint and disclosure to the government of the facts on which his claims are based should not weigh heavily against materiality. Opp. at 18–19. However, *United States v. Pub. Warehousing Co. K.S.C.*, 2017 WL 1021745 (N.D. Ga. Mar. 16, 2017) actually supports Aerojet's arguments. There, the defendant argued that there could be no materiality because the government was put on notice of the alleged wrongdoing because of the filing of the relator's complaint. *Id.* at *6. The court indicated that "the appropriate time to impute knowledge [to the government] is at the end of an investigation, not at the beginning." The facts revealed that the Department of Justice investigated the relator's claims, intervened in the case, and the contracting department swiftly terminated its relationship with the defendant at the conclusion of the investigation. *Id.* The court found that such action weighed in favor of materiality. *Id.* Here, however, the undisputed facts show that the government did not terminate a single contract and even *began* new contracts with Aerojet after the government's investigation was complete. SUF ¶¶ 155, 159, 168, 177, 192, 198, 226.

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

Fifth, Relator boldly claims without support that widespread industry non-compliance "has no relevance" to Aerojet's FCA liability (Opp. at 19), despite this Court suggesting that it would consider such information. *See* ECF No. 57 at 13–14. Relator does nothing to actually undercut the facts or the relevance of the facts reflecting that the government was aware of widespread contractor non-compliance with the DFARS Clause. In fact, Relator admits that the government was "working with some contractors to become compliant" with the Cybersecurity Clauses and showed "grace" to non-compliant contractors with respect to the 2013 DFARS Clause (Opp. at 20), thus conceding that the government was aware that contractors were not compliant yet continued to conduct business with them. This concession comports with the declarations from DoD contracting officials stating that they had no knowledge of any awards refused, contracts terminated, or payments declined based on non-compliance with the DFARS Clause. *See* SUF ¶¶ 155, 224, 238. Without any meaningful contradiction of Aerojet's facts or law, Relator slips again into spouting generalized, irrelevant remarks about the DoD's ability to use the FCA as an anti-fraud tool. Opp. at 20. Thus, the government knowledge factor weighs heavily, and only, in Aerojet's favor against materiality for purposes of imposing FCA liability. *See Escobar*, 136 S. Ct. at 2003.

Sixth, Relator parses words in arguing that the 2013 DFARS Clause was not "abandoned," but that it was instead "amended." Opp. at 20. This is a distinction without a difference. Relator admits the salient points:

- No version of the DFARS Clause after the November 2013 Clause required compliance with NIST 800-53 (SUF ¶ 23);
- The DoD adopted NIST 800-171 because it was "better suited to private contractors" (Opp. at 20);
- The DoD amended the DFARS Clause to remove the requirement for immediate compliance and "g[a]ve contractors time to achieve full compliance" (*id.*); and
- The incorporated NIST 800-171 controls permitted implementation through less than full technical compliance (SUF ¶ 15).

Relator then points the Court to similarities between all versions of the DFARS Clause, but misrepresents them. Relator states that each version of the DFARS Clause required "adequate

18

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

security" defined in the same way. Opp. at 20. However, each version of the DFARS Clause stated that "[t]o provide adequate security, the Contractor shall implement . . . at a minimum" the NIST controls specified therein, meaning that the incorporated NIST controls affected the definition of "adequate security" and changed with each iteration of the DFARS Clause. *See* 48 C.F.R. § 252.204-7012(b). Relator's statement that "every version of the [DFARS Clause] also required . . . DOD approval [for] alternate controls or protective measures" (Opp. at 20) is false. The at-issue 2013 version of the DFARS Clause required no such approval, but rather merely required that the contractor submit a "written explanation." *See* 48 C.F.R. § 252.204-7012(b)(1)(ii).

Finally, without citing any law or evidence, Relator asks the Court to accept his say-so that it is "simply not the case" that the Cybersecurity Clauses were not a condition of payment. Relator suggests that this is true because the clauses were supposedly required and "not waivable," but does nothing to address the authority stating that that is not enough to prove that a regulation or contract clause is a condition of payment. *See McGrath*, 140 F. Supp. 3d at 902; *see also Hopper*, 91 F.3d at 1267 (affirming grant of summary judgment where compliance was not a prerequisite for payment); Mot. at 39–41. Nor does he address the mountain of evidence, including seven declarations from contracting officials, showing that non-compliance did not affect the government's contract award or ultimate payment decisions.

None of Relator's attacks on Aerojet's arguments hold water and Relator has failed to present sufficient evidence of materiality for the contracts encompassed by this case. Relator thus cannot meet his burden to prove materiality and Aerojet's motion should be granted in full.

### E. Relator Spews Falsities About Damage to the Government.

Relator has the burden of producing evidence sufficient to prove damages, including his contention that the value of the goods and services the government received from Aerojet was somehow diminished because it was not created in an environment 100% compliant with the Cybersecurity Clauses. The record is devoid of any such evidence.[15] Instead, Relator shirks his

---

[15] Even if Relator could backtrack his admission that compliance with the Cybersecurity Clauses is a "black and white issue" (SUF ¶¶ 115, 117), Relator failed to ask any government official what value they placed on contracts being executed with a system compliant to the extent he believes that Aerojet was, whether than be 25%, 50%, 75%, or 100% compliant, or somewhere in between. Indeed, he did not ask any government contracting official any question or obtain any evidence

19

fundamental obligations to the Court and claims without any support whatsoever that Aerojet "leak[ed] missile technology to [the United States'] adversaries," "allowed [the United States'] adversaries to access billions of dollars in military technology," and "put[] all Americans at risk." Opp. at 21–22. The record is completely devoid of *any* evidence of these defamatory and false claims. Relator's resort to these accusations exemplifies the lack of support in the record for any damage to the government as a result of Aerojet's non-compliance with the Cybersecurity Regulations[16] and his misrepresentations should be dismissed. Rather, the undisputed evidence reflects that the government received the goods and services for which it contracted, and was sufficiently pleased with Aerojet's work to return to it for future needs to support our country's military and space exploration programs. *See* SUF ¶¶ 56, 156–227. Indeed, since the government completed its investigation into Relator's claims, the DoD has awarded Aerojet over 30 contracts and NASA has awarded Aerojet millions more in additional work. SUF ¶¶ 168, 177, 192, 198, 226, Exs. 37, 121.

Relator not only misrepresents the facts with respect to his damages theory, but also the law. Though purportedly providing quoted text from the Ninth Circuit's decision in *Hendow* (Opp. at 22), the quote in Relator's opposition is nowhere to be found in the court's opinion. *See United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006). Indeed, the opinion does not even contain the word "damages." *Id.* Instead, *Hendow* deals only with allegations sufficient to plead potential *liability*. *Id.* at 1173. Relator has not cited a single case supporting his claim to full-contract damages where the government received the goods and services central to the contracts' purposes, and the law suggests otherwise. *See, e.g.*, *Ab-Tech Const., Inc. v. United States*, 31 Fed. Cl. 429, 434 (1994), *aff'd sub nom.,* 57 F.3d 1084 (Fed. Cir. 1995), *abrogated on other grounds* (explaining

---

sufficient to prove that any monetary value was attributed to any facet of the Cybersecurity Clauses when awarding a contract.

[16] Even if Relator were able to prove that *any* government data was exfiltrated from Aerojet's systems (he cannot), Relator would also need to prove (a) the exfiltrated data was data covered by an at-issue contract and (b) that the loss was *because of* Aerojet's non-compliance with the Cybersecurity Clauses. Not only does Relator have no proof of any exfiltration of government data, but he also lacks support for either of these facts.

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**

actual "[d]amages represent compensation for a loss or injury sustained" and reversing actual damage award where "no proof has been offered to show that the Government suffered any detriment to its contract interest because of [defendant's] falsehoods").

The record is empty of any testimony from any government official about the monetary value of a system 100% compliant with the Cybersecurity Clauses or any other purported misrepresentation about Aerojet's cybersecurity. There is also no documentary evidence. With such a gap in the record, Relator's damages theory lacks the support it needs to survive summary judgment. Relator should thus be limited to statutory penalties if any of his claims are permitted to proceed at all.

## V.        CONCLUSION

Relator has not come close to meeting his burden of proof on all of the required elements of his FCA claim and the undisputed evidence establishes that he cannot. As such, Aerojet's motion should be granted in full. Alternatively, Aerojet requests that the Court grant summary adjudication for Aerojet and find that (a) there is no genuine issue of material fact as to actual damages and (b) Relator's triable claims are limited to, at the most, the five contracts that include the Cybersecurity Clauses, were awarded prior to this case being filed, and that the government did not affirmatively find the Cybersecurity Clauses inapplicable (Contract Nos. N00014-14-C-0035, N68936-14-C-0035, FA8650-14-C-7424, NNC10BA13B, Award ID # NNC13TA66T, HR001115C0132).


DATED: October 25, 2021                          Respectfully submitted,

                                                 KIRKLAND & ELLIS, LLP

                                                 */s/ Tammy A. Tsoumas*
                                                 Mark Holscher (SBN 139582)
                                                 mark.holscher@kirkland.com
                                                 Tammy A. Tsoumas (SBN 250487)
                                                 tammy.tsoumas@kirkland.com
                                                 KIRKLAND & ELLIS LLP
                                                 2049 Century Park East
                                                 Los Angeles, CA 90067
                                                 Telephone:     (310) 552-4200
                                                 Facsimile:     (310) 552-5900

                                                 Ashley Neglia (SBN 298924)
                                                 ashley.neglia@kirkland.com

21

KIRKLAND & ELLIS LLP
555 S. Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500

Sable Hodson (SBN 313252)
sable.hodson@kirkland.com
KIRKLAND & ELLIS LLP
1601 Elm Street
Dallas, TX 75201
Telephone:    (214) 972-1770
Facsimile:    (214) 972-1771

*Attorneys for Defendants Aerojet Rocketdyne Holdings, Inc. and Aerojet Rocketdyne, Inc.*

**DEFS.' REPLY IN SUPP. OF DEFS.' MOT. FOR SUMM. J., OR, ALTERNATIVELY, MOT. FOR SUMM. ADJUDICATION**