UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BRIAN MARKUS,<br><br>　　　　Relator,<br><br>　　v.<br><br>AEROJET ROCKETDYNE HOLDINGS, INC., a corporation and AEROJET ROCKETDYNE, INC., a corporation,<br><br>　　　　Defendants. | No. 2:15-cv-02245 WBS AC<br><br>MEMORANDUM AND ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT |

----oo0oo----

　　　　Plaintiff-relator Brian Markus ("relator") brings this action against defendants Aerojet Rocketdyne Holdings, Inc. ("ARH") and Aerojet Rocketdyne, Inc. ("AR"), arising from defendants' allegedly wrongful conduct in violation of the False Claims Act, 31 U.S.C. §§ 3729 et seq. Relator brings the following claims against defendants: (1) promissory fraud in violation of 31 U.S.C. § 3729(a)(1)(A); and (2) false or fraudulent statement or record in violation of 31 U.S.C. §

1

3729(a)(1)(B).  Before the court are the parties' cross-motions for summary judgment.  Relator moves for summary judgment as to the first claim, promissory fraud, of his second amended complaint ("SAC").  (Docket No. 124.)  Defendants move for summary judgment as to both claims.  (Docket No. 116.)  Both parties move for summary judgment on the issue of actual damages.  Although the United States declined to intervene in this case, it filed a statement of interest addressing issues raised by defendants' motion and opposition to relator's motion.  (Docket No. 135.)

I.  Background

Relator Brian Markus was employed by defendants as the senior director for Cyber Security, Compliance & Controls from June 2014 to September 2015. (Second Am. Compl. ("SAC") ¶ 6 (Docket No. 42).)  Defendants are in the business of developing and manufacturing products for the aerospace and defense industry and primarily contract with the federal government including the Department of Defense ("DoD") and the National Aeronautics and Space Administration ("NASA").  (SAC ¶ 7.)  Defendant AR is a wholly-owned subsidiary of ARH, and ARH uses AR to perform its contractual obligations.  (Id. at ¶ 8.)

Government contracts are subject to Federal Acquisition Regulations and are supplemented by agency specific regulations. On November 18, 2013, the DoD issued a final rule, which imposed requirements on defense contractors to safeguard unclassified controlled technical information from cybersecurity threats. 48

C.F.R. § 252.204-7012 (2013).[1]  The rule required defense contractors to implement specific controls covering many different areas of cybersecurity, though it did allow contractors to submit an explanation to federal officers explaining how the company had alternative methods for achieving adequate cybersecurity protection, or why standards were inapplicable.  See id.

In August 2015, the DoD issued an interim rule, modifying the government's cybersecurity requirements for contractor and subcontractor information systems.  48 C.F.R. § 252.204-7012 (Aug. 2015).  The interim rule incorporated more cybersecurity controls and required that any alternative measures be "approved in writing prior by an authorized representative of the DoD [Chief Information Officer] prior to contract award."  Id. at 252.204-7012(b)(1)(ii)(B).  The DoD amended the interim rule in December 2015 to allow contractors until December 31, 2017 to have compliant or equally effective alternative controls in place.  See 48 C.F.R. § 252.204-

---

[1] Defendants submitted a request for judicial notice of, among several other items, certain regulations. (Docket No. 119). The court need not take judicial notice of regulations.  Accord Fed R. Evid. 201.  Because relator does not object, the court takes judicial notice of Exhibit 37 and 121 of the Declaration of Tammy A. Tsoumas (Docket No. 117), which is data published on USASpending.gov, which is maintained by the United States Department of Treasury and other federal agencies. (See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F. 3d 992 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of [information on a government website], as it was made publicly available by government entities . . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein.")  The court does not rely on the remaining items at issue in the request, and therefore the request is denied as moot as to those items.

7012(b)(1)(ii)(A) (Dec. 2015).

Each version of this regulation defines adequate security as "protective measures that are commensurate with the consequences and probability of loss, misuse, or unauthorized access to, or modification of information." 48 C.F.R. § 252.204-7012(a).

Contractors awarded contracts from NASA must comply with relevant NASA acquisition regulations. 48 C.F.R. § 1852.204-76 lists the relevant security requirements where a contractor stores sensitive but unclassified information belonging to the federal government. Unlike the relevant DoD regulation, this NASA regulation makes no allowance for the contractor to use alternative controls or protective measures. A NASA contractor is required to "protect the confidentiality, integrity, and availability of NASA Electronic Information and IT resources and protect NASA Electronic Information from unauthorized disclosure." 48 C.F.R. § 1852.204-76(a).

Relator claims defendants fraudulently induced the government to contract with AR knowing that AR was not complying with Defense Federal Acquisition Regulation 48 C.F.R. § 252.204-7012 ("DFARS") and NASA Federal Acquisition Regulation 48 C.F.R. § 1852.204-76 ("NASA FARS"), which is required to be awarded a government contract. (SAC ¶ 30.)

II. Summary Judgment Standard

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material fact is one that

4

could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable trier of fact to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  Celotex Corp, 477 U.S. at 322–23.  Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.  Acosta v. City Nat'l Corp., 922 F.3d 880, 885 (9th Cir. 2019) (citing Zetwick v. Cty. of Yolo, 850 F.3d 436, 440 (9th Cir. 2017)).

Where, as here, parties submit cross-motions for summary judgment, "each motion must be considered on its own merits."  Fair Hous. Council of Riverside Cty., Inc. v. RiversideTwo, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations and modifications omitted).  "[T]he court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them."  Tulalip Tribes of Wash. v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015).  Accordingly, in each instance, the court will view the evidence in the light most

favorable to the non-moving party and draw all inferences in its favor.  ACLU of Nev. v. City of Las Vegas, 333 F.3d 1092, 1097 (9th Cir. 2003) (citations omitted).

III. Scope of the Claims

As an initial matter, the parties dispute the scope of relator's claims.  In his SAC, relator specified eighteen contracts that AR had with the DoD and NASA between February 23, 2014 and April 1, 2016.  (SAC ¶¶ 84-93, 105-14.)  Relator also alleges in his SAC that defendants obtained subcontracts, separate from those listed in the SAC, subject to the DFARS and NASA FARS regulations, by falsely representing that they were compliant with those regulations.  However, relator does not produce any evidence as to those subcontracts, and the court will not consider them in deciding the cross motions for summary judgment.  (SAC ¶ 126.)

A.  Contracts Awarded After Litigation Commenced

Defendants indicate that six of the contracts were awarded after relator commenced this action.  (Defs.' MSJ at 24.) This court has already held that "[t]he contracts government agencies entered with AR after relator commenced this litigation are not at issue."  United States v. Aerojet Rocketdyne Holdings, Inc., 381 F. Supp. 3d 1240, 1248 (E.D. Cal. 2019).  The court sees no reason to depart from this holding, and once again will not consider contracts entered into after the commencement of litigation as bases for the SAC's claims, specifically the six contracts awarded after the original complaint was filed.[2]

---

[2]  Relator filed his first complaint on October 29, 2015. Therefore, the court will not consider the following six

B.  Contracts Explicitly Containing FARS Clauses

Defendants argue that the scope of relator's claim must be limited to only those contracts that contain the DFARS or NASA FARS clauses. (Defs.' Mot. for Summ. J. ("Defs.' MSJ") at 22 (Docket No. 116); Defs.' Reply to Relator's Resp. to Defs.' Statement of Undisputed Facts ("Defs.' SUF") ¶ 32, 35, 38, 40-43, 46, 49, 51, 53 (Docket No. 138).)  However, the parties agree that six of the remaining 12 contracts do include the cybersecurity clauses.

Defendants argue that one of these six contracts with the FARS clause, #NNC15CA07C (awarded Mar. 31, 2015), should not be considered because, prior to contracting, it was determined that AR did not have access to any information requiring protection under the NASA FARS clause. However, defendants' evidence indicates that NASA was still contemplating whether the clause was relevant to the contract in 2016.  (See Decl. of Tammy A. Tsoumas Decl. in Support of Defs.' Mot. for Summ. J. ("Tsoumas Decl."), Ex. 166, ("clause probably applies," "clause is relevant," and "we should be enforcing the clause.")  Therefore, #NNC15CA07C remains at issue for relator's claims.

C.  Contracts Not Containing FARS Clauses

Relator claims the six contracts without the clauses would have incorporated the clauses through other methods. Relator explains that contracts without the DFARS clause would be accompanied by DD Form 254, "which required that AR comply with

---

contracts entered into: #NNM16AB22P (awarded Nov. 17, 2015), #NNM16AA02C (awarded Nov. 19, 2015), #NNM16AB21P (awarded Dec. 14, 2015), #W31P4Q-16-C-0026 (awarded Dec. 23, 2015), #NNH16CP17C (awarded Jan. 15, 2016), and #NNM16AA12C (awarded Apr. 1, 2016).

7

all laws and regulations governing access to 'Unclassified Controlled Technical Information,'" or another NASA FARS clause imposing the cybersecurity regulations on AR despite them not being in the contract.  (Relator's Opp'n at 11-12; Relator's Reply at 8 (Docket No. 139).)  Defendants note that only three of the specified contracts in the SAC contain the DD Form 254 or the other NASA FARS clause, but two of those were awarded after litigation and are not being considered by the court as explained above. (Defs.' Reply at 4 (Docket No. 138); Defs.' SUF ¶ 32, 49, 51.)  Contract no. #W31P4Q-14-C-0075 does incorporate DD Form 254 and will be considered by the court.

Relator claims defendants' evidence of which contracts contained the pertinent clause is flawed because (1) the defendants' supporting evidence consists of only order forms, rather than complete contracts; (2) the parent award (which is not produced) does contain the clause; or (3) the orders produced state that they do not list all applicable clauses.  (Defs.' SUF ¶ 32, 35, 38, 40-43, 46, 49, 51, 53.)  However, relator merely argues that these other documents incorporated the clauses but does not produce any evidence to that effect.  Therefore, the court cannot assume that the other documents relator describes actually contain the clauses.

In sum, relator's SAC specifies 18 contracts that he alleges were obtained in violation of the False Claims Act.  Six of those 18 were obtained after litigation commenced.  Six of the remaining 12 explicitly contain the clauses, and one incorporates DD Form 254 which has the DFARS clause.  Therefore, the court will only consider the seven contracts which have the clauses

either explicitly listed or are incorporated, as shown through the parties' evidence.[3]

IV. Relator's Claims under the False Claims Act

Relator brings two claims for fraud under the False Claims Act, which impose liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," id. § 3729(a)(1)(B).

Outside of the context where "the claim for payment is itself literally false or fraudulent," the Ninth Circuit recognizes two different doctrines that attach False Claims Act liability to allegedly false or fraudulent claims: (1) false certification and (2) promissory fraud, also known as fraud in the inducement. See United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1170-71 (9th Cir. 2006) (citation omitted).

Under either promissory fraud or false certification, "the essential elements of [False Claims Act] liability remain the same: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." Id.

A. Promissory Fraud

Both sides move for summary judgment on the promissory

---

[3] Specifically, the court will consider contract nos. #W31P4Q-14-C-0075, #NNC10BA13B (parent award for #NNC13TA66T), #N00014-14-C-0035, #FA8650-14-C-7424, #N68936-14-C-0035, #NNC15CA07C, and #HR001115C0132.

fraud claim. The promissory fraud approach to the False Claims Act is broader than the false certification approach and "holds that liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." Hendow, 461 F.3d at 1173. For the following reasons, the court cannot grant summary judgment for either side on relator's promissory fraud claim.

    1.   <u>False Statement or Fraudulent Course of Conduct</u>

Under the False Claims Act, "the promise must be false when made." Hendow, 461 F.3d at 1174 (citations omitted). Further, "innocent mistakes, mere negligent misrepresentations, and differences in interpretations are not sufficient for" False Claims Act liability. Id. (citations omitted).

Relator contends defendants made false statements regarding AR's cybersecurity status by not disclosing the full extent of AR's noncompliance with the DFARS and NASA FARS clauses. (Relator's Mot. for Summ. J. ("Relator's MSJ") at 16; United States' Statement of Interest at 6 (Docket No. 135).) Relator argues any disclosures to DoD agencies "softened," or downplayed, the state of AR's noncompliance which resulted in omissions of information the government would want to know to make assessment about the safety of its information." (See Relator's MSJ at 8, 16.)

The evidence indicates that AR disclosed on multiple occasions to the DoD and NASA that it was not compliant with the DFARS clause. AR disclosed whether it was compliant with each control identified in the DFARS clause by providing a compliance

1 assessment matrix via email or letter, though its accuracy is in
2 question as discussed below.  (Tsoumas Decl., Ex. 60-61, 65, 78,
3 83, 89, 110, 111 (Docket No. 117).)  AR also disclosed its
4 noncompliance to agencies via documented meetings and
5 teleconferences.  (Tsoumas Decl., Ex. 55, 56, 58, 61, 65, 66;
6 Defs.' SUF ¶ 74, 75, 113, 114.)  However, there is no record of
7 what was stated during those meetings or conferences.

8 Defendants correctly point out numerous instances where
9 the government acknowledged AR's noncompliance and was even
10 working with AR to implement a waiver.  (See Tsoumas Decl., Ex.
11 253, Dep. of Laurie Hewitt 60:6-61:5, 63:15-16 ("With this letter
12 it was my understanding that Aerojet was not in compliance with
13 the DFARS clause")); (Tsoumas Decl., Ex. 85, 86, 91, 92, 115.)
14 Defendants' evidence produced on summary judgment shows that AR
15 disclosed information to NASA about noncompliance and NASA
16 acknowledged it.  (Tsoumas Decl., Ex. 162,168, 169, 180.)  Though
17 defendant has produced evidence demonstrating disclosures of
18 noncompliance, these disclosures hold less weight when they are
19 incomplete.

20 Relator bases his claim partially on the alleged
21 nondisclosure of data breaches AR experienced.  (Relator's MSJ at
22 2.)  A memo by an outside firm dated September 4, 2013, outlines
23 four incidents that occurred which resulted in "huge quantities
24 of data leaving the Rocketdyne network."  (Decl. of Gregory
25 Thyberg ISO of Relator's Mot. for Summ. J ("Thyberg Decl."), Ex.
26 A at 60 (Docket No. 125).)  Defendants respond that the attack
27 took place on Pratt & Whitney Rocketdyne's network before it was
28 merged with the Aerojet General Corp. and defendants did not

11

1  "control critical IT and security resources" (Defs.' Opp'n at 20
2  (Docket No. 130)); (Thyberg Decl., Ex. A at 71.)  Steps were
3  taken to remedy the problem, however, the report only details
4  steps that were taken for two of the four incidents it outlines.
5  (Thyberg Decl., Ex. A at 62-63.)  Further, the report made a set
6  of recommendations as the "current infrastructure will still
7  allow malware to enter and cause further problems such as data
8  leakage" and "large quantities of data are still being detected
9  leaving the network."  (Id. at 59, 61, 77, 79.)

10          Even though the network at issue was not fully in
11 defendants' control at the time of the breaches, defendants note
12 the information technology systems integrated later.  (Defs.'
13 Response to Relator's Statement of Facts ("Relator's SUF") ¶ 11
14 (Docket No. 130-2).)  This evidence creates a genuine dispute of
15 material fact concerning whether the problems outlined in the
16 reports stemming from the 2013 breaches were still occurring when
17 the companies were integrated.  There is no evidence that the
18 recommendations in the 2013 report were acted upon.  Further,
19 there is no showing that these 2013 breaches were disclosed to
20 the contracting agencies, or were not relevant to compliance with
21 the necessary regulations.

22          Relator also bases his claim on annual cybersecurity
23 audits done by outside agencies.  (Relator's MSJ at 3.)  These
24 audits concluded AR was not fully compliant with the necessary
25 DFARS and NASA FARS controls.  (Relator's MSJ at 3.)  Defendants
26 do not dispute these findings by outside agencies and note that
27 AR disclosed this information to the DoD and NASA.  (Relator's
28 SUF at ¶ 29-31.)  However, the nature of the disclosures creates

12

a genuine dispute as to material fact because the evidence does not suggest that AR revealed the full picture.

Defendants do not dispute that a 2014 outside audit determined that AR was only compliant with 5 of the 59 required controls under DFARS 252.2014-7012. (Relator's SUF ¶ 29); (2d. Decl. of Tammy A. Tsoumas ("Tsoumas 2d. Decl.") (Docket No. 130-1), Ex. 215, 216, (internal emails focused on creating matrix of controls and acknowledging that "AR is compliant with 5" of the controls).) In September 2014, AR disclosed its "position on DFARS" 252.204-7012 to the Army, but identified, in a compliance matrix created by AR, that 10 controls were "in place and compliant." (Tsoumas Decl., Ex. 78.) This compliance matrix which listed 10 compliant controls was sent to multiple government agencies as part of AR's purported disclosures. (Id., Ex. 60, 65, 78, 83, 110, 111.) Defendants provide no explanation or evidence for the differing number of compliant controls between the audit and the information sent to agencies.

Further, the outside audits found that AR had several high, moderate, and low risk deficiencies and a low security monitoring score from 2013 to 2015. (Relator's SUF ¶ 31-33, 35.) An auditing firm was able to penetrate AR's network within four hours, requiring the firm to recommend immediate action. (Relator's SUF ¶ 34.) Defendants point out that these audits do not necessarily translate to AR being non-compliant with DFARS or NASA FARS as the audit reports do not specify as such.

However, part of the DFARS clause requires contracts to provide "adequate security" which requires the contract to implement certain controls "at a minimum." 48 C.F.R. § 252.204-

7012(b). Adequate security is defined as "protective measures that are commensurate with the consequences of probability of loss, misuse, or unauthorized access to, or modification of information." 48 C.F.R. § 252.204-7012(a). A reasonable trier of fact could find that the government agencies with whom AR was contracting would not see AR as providing adequate security if they were aware of the audit findings. There is no evidence showing that the government agencies were aware of the findings from these audits, or that the findings were not relevant to compliance.

In sum, though defendants disclosed noncompliance with the at issue regulations, the extent of the disclosure is unclear from the evidence presented at this stage. A genuine dispute of material fact exists as to the sufficiency of the disclosures about the 2013 breaches and information gathered in audits done by outside firms.

Because the court cannot conclude as a matter of law that the first element of promissory fraud is met, plaintiff's motion for summary judgment on the promissory fraud claim must be denied. Defendants' motion for summary judgement on the promissory fraud claim may be granted if defendant can show the absence of a genuine issue of material fact and negate one or more of the remaining three elements of promissory fraud. The court accordingly analyzes the remaining elements below for this purpose.

2. <u>Scienter</u>

If defendants made false statements or engaged in a fraudulent course of conduct, they must have done so "knowingly."

1  31 U.S.C. § 3729(a)(1)(A). The term knowingly is defined as
2  having "actual knowledge," acting with "deliberate ignorance of
3  the truth or falsity of the information," or acting in "reckless
4  disregard of the truth or falsity or the information." Id. at §
5  3729(b)(1)(A)(i-iii).
6      Relator's supporting evidence shows that defendants
7  knew AR needed to comply with the DFARS and NASA FARS clauses,
8  and were aware of AR's noncompliance and the information obtained
9  through outside audits. (Relator's SUF ¶ 40-48, 59, 60-66.)
10  Given the evidence cited by relator, and the contradictions in
11  information that AR had versus what was presented to the
12  government agencies, defendants have not demonstrated the absence
13  of a genuine dispute of fact on the scienter element.
14  Accordingly, the court cannot grant defendants' motion for
15  summary judgment on the promissory fraud claim based on the that
16  element.
17      3.   Materiality
18      Under the False Claims Act, materiality means a
19  defendant's fraud has "a natural tendency to influence" or was
20  "capable of influencing" the government's payment decision. 31
21  U.S.C. § 3729(b)(4). "[M]ateriality looks to the effect on the
22  likely or actual behavior of the recipient of the alleged
23  misrepresentation." Universal Health Servs., Inc. v. United
24  States ex rel. Escobar, --- U.S. ----, 136 S. Ct. 1989, 2002
25  (2016) (alternations omitted) ("Escobar").
26      Defendants note that materiality is not established
27  merely because the "[g]overnment designates compliance with a
28  particular statutory, regulatory, or contractual requirement as a

condition of payment." Escobar, 136 S. Ct. at 2003. The mere fact that a regulation is a requirement does not dispositively mean it is a condition of payment or that it is material. See id. However, it does not follow that the incorporation of a regulation as a condition of the contract may not be taken into account in determining whether compliance with the regulation is material.

Here, compliance with the relevant clauses was an express term of the contracts. (See Tsoumas Decl., Ex. 129 ("The Contract shall comply with the following Federal Acquisition Regulation (FAR) clauses").) It may be reasonably inferred that compliance was significant to the government because without complete knowledge about compliance, or noncompliance, with the clauses, the government cannot adequately protect its information. (See Tsoumas Decl., Ex. 34, DoD Presentation Apr. 26, 2018, at 45:5-7.) Therefore, a genuine dispute of fact exists as to the materiality element.

Defendants argue that compliance with DFARS and NASA FARS was nonmaterial because the government awarded contracts to other contractors and AR despite knowledge that they were noncompliant. (Defs.' SUF at ¶ 160, 179, 178, 193, 199, 162, 171, 174, 180, 183, 186, 189, 195, 201, 204, 207, 210, 213, 216, 219, 222.) However, without some evidence of the circumstances of those other contracts, the court cannot speculate as to other contractors' level of non-compliance when analyzing whether similar "particular type[s]" of claims were paid. Escobar, 136 S. Ct. at 2003-04. Specifically for AR, as discussed above, a genuine dispute of material fact exists as to whether the

government had "actual knowledge that certain requirements were violated" due to the sufficiency of AR's disclosures. Escobar, 136 S. Ct. 2003-04 (emphasis added).

Defendants have not shown an absence of a genuine dispute of material fact on the element of materiality. Therefore, the court cannot grant summary judgment for defendants on the promissory fraud claim based on the materiality element.

4. Causation

The False Claims Act requires "a causal rather than temporal connection between fraud and payment." Hendow, 461 F.3d 1174 (citations omitted). The relator must show actual, but-for causation, meaning defendant's fraud caused the government to contract. See United States ex rel. Cimino v. Int'l Bus. Machs. Corp., 3 F.4th 412, 420 (D.C. Cir. 2021) (concluding that in a False Claims Act fraudulent inducement claim the relator "was required to plead actual causation under a but for standard.")

Because of the dispute as to whether AR fully disclosed its noncompliance, a reasonable trier of fact could find that the government might not have contracted with AR, or might have contracted at a different value, had it known what relator argues AR should have told the government. Accordingly, the court cannot grant summary judgment for defendants on the promissory fraud claim based on the causation element.

In sum, a genuine dispute of material fact exists regarding each element of the promissory fraud claim for the seven contracts. Therefore, both sides' motions for summary judgment on the promissory fraud claim must be denied.

B. False Certification

17

Defendants also move for summary judgment on the second claim of the SAC, false certification. Under a false certification theory, the relator can allege either express false certification or implied false certification for knowingly presenting "a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A).

As noted above, contracts awarded after this litigation commenced will not be considered. Relator's claim for false certification is based solely on an invoice payment under a NASA contract that was entered into after relator brought this action and is therefore not a proper basis for his false certification claim. (See Relator's Opp'n at 14; Tsoumas Decl., Ex. 121, Row 126 (the contract at issue was awarded on April 28, 2016).) Because relator provides no other examples of alleged false certifications, defendants' motion for summary judgment on relator's second claim of false certification will be granted.

V.  Damages

Relator moves for summary judgment on the issue of damages, contending that he has established as a matter of law that the damages amount to $19,044,039,117.00, which amounts to three times the sum of each invoice paid under each contract that was obtained through the allegedly false statements or fraudulent conduct. Conversely, defendants move for summary judgment on the issue of damages, contending that there is no evidence that the government suffered actual damages. In essence, relator would have the court find as a matter of law that what the government received under the contracts had no economic value whatsoever, whereas defendants would have the court find that the government

received the full economic value of goods and services AR was contracted to provide.

Neither of these propositions is supported by the record before the court at this time.  The amount of statutory or actual damages, if any, to which relator would be entitled is for the trier of fact to determine and cannot be adjudicated on summary judgment.  Therefore, both sides' motions for summary judgment on the issue of damages will be denied.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Docket No. 116) be, and the same hereby is, DENIED on the promissory fraud claim and GRANTED on the false certification claim of relator's Second Amended Complaint.

IT IS FURTHER ORDERED that relator's motion for summary judgment (Docket No. 124) be, and the same hereby is, DENIED.

Dated:  February 1, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE