LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
DAVID W. SCHECTER (State Bar No. 296251)
dschecter@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

GREGORY A. THYBERG (State Bar No. 102132)
greg@thyberglaw.com
THYBERGLAW
3104 O STREET #190
SACRAMENTO, CALIFORNIA 95816
Telephone: (916) 204-9173

Attorneys for Realtor
BRIAN MARKUS

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA: ex rel. BRIAN MARKUS, an individual

REALTOR,

v.

AEROJET ROCKETDYNE HOLDINGS, INC., a corporation and AEROJET ROCKETDYNE, INC. a corporation,

Defendants.

**CASE NO. 2:15-cv-2245-WBS-AC**

**PLAINTIFF BRIAN MARKUS'S TRIAL BRIEF**

Trial Date: April 26, 2022

The Hon. William B. Shubb

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**TABLE OF CONTENTS**

**Page**

I. SHORT STATEMENT OF FACTS .....5

II. ADMISSIONS AND STIPULATIONS .....9

III. SUMMARY OF POINTS OF LAW .....9

A. Key Points of Law .....9

B. Reasonably Anticipated Disputes Concerning Admissibility of Evidence and Scope of Claims .....11

1. Evidence of Trebling of Damages, Statutory Penalties, and Relator's Entitlement to Attorneys' Fees and Costs Should be Excluded as Irrelevant and Unduly Prejudicial .....11

2. Evidence of the United States' Investigation and Decision not to Intervene Should be Excluded as Irrelevant and Unduly Prejudicial .....13

3. Defendants' Self-Serving Internal Emails Containing Purported Statements by Non-Witnesses and Non-Party Organization Letters Are Hearsay .....14

4. Evidence that the Government Continued to Pay Defendants, did not Cancel Defendants' Contracts, and Continued to Award Defendants New Contracts should be Excluded as Irrelevant and Unduly Prejudicial .....16

5. *Daubert* Challenge .....18

6. Relator's Promissory Fraud Claim Includes Subcontracts .....18

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Cook Cty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119 (2003) .......... 12

*Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) .......... 19

*U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006) .......... 14

*U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama*, 104 F.3d 1453 (4th Cir. 1997) .......... 13

*U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12 (D.D.C. 2008) .......... 13

*U.S. ex rel. Feldman v. van Gorp*, No. 03 CIV. 8135 (WHP), 2010 WL 2911606 (S.D.N.Y. July 8, 2010) .......... 14

*U.S. ex rel. Laymon v. Bombardier Transp. (Holdings) USA, Inc.*, 656 F. Supp. 2d 540 (W.D. Pa. 2009) .......... 12

*U.S. ex. rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006) .......... 10

*U.S. v. Mackby*, 339 F.3d 1013 (9th Cir. 2003) .......... 11

*U.S. v. Woodbury*, 359 F.2d 370 (9th Cir. 1966) .......... 11

*U.S., ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, No. CIV A 95-1231 RCL, 2007 WL 851868 (D.D.C. Mar. 14, 2007) .......... 12

*United States ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321 (D.C. Cir. 2005) .......... 10

*United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890 (9th Cir. 2017) .......... 10

*United States ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F. 4th 412 (D.C. Cir. 2021) .......... 10

*United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103 (1st Cir. 2016) ........ 17

*United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822 (6th Cir. 2018) ........ 17

*United States ex rel. Raven v. Georgia Cancer Specialists I, P.C.*, No. 1:11-CV-00994-CAP, 2021 WL 4080863 (N.D. Ga. Mar. 30, 2021) ........ 13

**FEDERAL STATUTES**

31 U.S.C. § 3729(a) ........ 12

31 U.S.C. § 3729(a)(1) ........ 11

31 U.S.C. § 3729(a)(1)(A) ........ 9

31 U.S.C. § 3729(a)(3) ........ 11, 12

31 U.S.C. § 3730(d)(1) ........ 12

31 U.S.C. § 3730(d)(2) ........ 11

**FEDERAL RULES**

E.D. Cal. Loc. R. 285........ 5

Fed. R. Civ. P. 8 ........ 20

Fed. R. Civ. P. 9(b) ........ 20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

Pursuant to Local Rule 285, Relator Brian Markus ("Relator") submits this Trial Brief to set forth (1) a short statement of facts; (2) all admissions and stipulations not recited in the pretrial order; and (3) a summary of points of law, including reasonably anticipated disputes concerning admissibility of evidence, legal arguments, and citations of authority in support thereof.

## I. SHORT STATEMENT OF FACTS

Between July 2013 and September 2015, Defendants Aerojet Rocketdyne Holdings, Inc. and Aerojet Rocketdyne, Inc. (together, "Aerojet") received over $2.6 billion in government funds by fraudulently procuring several U.S. Department of Defense ("DOD") and NASA contracts and subcontracts. These contracts and subcontracts were for the development of missile defense systems, space launch systems and other defense and aerospace systems that are essential components of America's national defense and aerospace programs.

Aerojet obtained these taxpayer funds by falsely representing to government agencies and prime government contracts that it complied with NASA and DOD Federal Acquisition Regulations pertaining to cybersecurity. From 2013 to 2015, DOD and NASA required every defense and aerospace contractor and subcontractor storing sensitive data on its computer networks to comply with cybersecurity controls set by the National Institute of Standards and Technology ("NIST").

In 2013, DOD regulations required that contractors either strictly comply with 51 cybersecurity controls specified by NIST SP 800-53 or advise DOD of how they could meet the standards

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

through alternative means. In 2015, the DOD modified its regulations to require contractors to meet the requirements of NIST 800-171. If the contractor could not strictly comply with NIST 800-171, it was required, at a minimum, to provide "alternative but equally effective security measures" to achieve "equivalent protection." Any deviation from the NIST 800-171 standards required written approval by the DOD.

NASA cybersecurity regulations required strict compliance with all 264 controls set by NIST SP 800-53. NASA did not allow its contractors to deviate from full NIST SP 800-53 compliance.

In 2013, Aerojet's computer systems suffered cyber intrusions that included attacks from foreign nation states. In one of the attacks, hackers obtained full access to the company's computers, which at the time stored designs for advanced weapons systems including documents related to the Terminal High Altitude Area Defense ("THAAD") Missile System.

Aerojet's computer system also contained data relating to rocket engines and designs that could assist a foreign country in developing an intercontinental ballistic missile. One of the attacks resulted in the exfiltration of over 100 gigabytes of data in 61,640 files located in 5,643 directories, accessing approximately nine years of data and a broad range of content including information regarding hypersonic weapons systems, Defense Advanced Research Projects Agency ("DARPA") white papers and NASA briefings.

In 2013, Aerojet hired an independent cybersecurity firm, Emagined Security, Inc. ("ESI"), to conduct an incident investigation into how malware infected Aerojet's computer

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

system. ESI determined that the root causes were: (1) there is no formal security program with documented processes and procedures along with incident checklists for personnel to follow; (2) the existing network and security architectures and systems were lacking and not well suited for security operations; and (3) the security protection products in use at the time of the incident were extensively out of date.

The 2013 ESI incident investigation report was corroborated by Ernst & Young ("E&Y"). In July 2013, E&Y prepared a presentation to Aerojet's Board of Directors identifying eight high risk and two moderate risk findings across Aerojet's network. E&Y defined "high risk" to mean a significant deviation from regulatory requirements. E&Y gave Aerojet's security monitoring a score of 1.00 out of 5.00, which meant that there was a "critical need for enhancements."

As a result of the findings by ESI and E&Y, on June 30, 2014, Aerojet hired Relator Brian Markus ("Markus"), as the Senior Director of Cyber Security, Compliance & Controls. Markus, one of the nation's top cybersecurity experts, was a Senior Manager at Raytheon—a major government contractor—before joining Aerojet. To induce Markus to leave Raytheon, Aerojet promised a budget of $10 - $15 million to improve the security of Aerojet's computer system and a combined staff of 35 employees. But when he started working for Aerojet, he found out that he would not have the budget or staff Aerojet had promised.

In 2014, ESI audited Aerojet's compliance with DOD and NASA cybersecurity regulations. This 2014 audit found that Aerojet was compliant with only 5 of the 59 required DOD controls and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

only 16 of the 264 required NASA controls.

By 2015, Aerojet's computer systems were even more vulnerable to attack. Aerojet's Vice President and Chief Investment Officer, Jose Ruiz, admitted that, as of March 2015, Aerojet's system was still unable to detect cyber intrusions. In July 2015, E&Y found multiple security risks, including 23 high risk findings.

A high risk finding, per E&Y, meant that there is a "large exposure that could result in a loss of system control, access, applicable control, and/or other system functions. It could also create an exposure of confidentiality or integrity, resulting in many user accounts being compromised or restricted system functions being accessed."

E&Y also informed Aerojet that its computer systems could be penetrated in four hours without detection and conducted a test confirming this assessment. Thus, in just four hours, E&Y in running its test obtained every item of "Trophy Data" identified prior to the test, including the CEO and CFO's e-mail and network files, sensitive employee information, legal documents and files, and engineering management e-mail and files containing rocket design documents.

E&Y was also able to access Aerojet's security visitor system, physical security files and folders, and control security cameras and view/listen to footage therefrom. E&Y advised Aerojet that it needed to take immediate action to address the findings in its report.

In January 2015, Relator was requested to prepare a report for the Aerojet board of directors meeting regarding Aerojet's

computer systems security as well as compliance with the DOD and NASA cyber security requirements. The presentation showed that Aerojet's computer system was not complaint—it was unpatched, misconfigured, outdated and thus vulnerable to cyberattack.

When Aerojet's president became aware that Relator intended to tell the Board that Aerojet was not compliant, he took over the presentation and changed it. He concealed from the Board that Defendants were not in compliance with DOD and NASA cyber security requirements.

Relator's team had even prepared a slide to be presented to the Board which addressed vulnerable systems across the enterprise and what was needed to obtain 100% compliance with costs. Defendants' compliance values, in actuality, ranged for 6% to 20% depending on the area. This slide was removed from the Board presentation.

## II. ADMISSIONS AND STIPULATIONS

The Parties have exchanged additional proposed stipulated facts and are continuing to discuss stipulating to facts and admissibility of exhibits. At this time, the Parties have not agreed to stipulate to any additional facts or exhibits.

## III. SUMMARY OF POINTS OF LAW

### A. Key Points of Law

Relator proceeds to trial only on the First Cause of Action in his Second Amended Complaint—promissory fraud under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A). The elements of promissory fraud under the False Claims Act are (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to

Miller Barondess, LLP
Attorneys at Law
1999 Avenue of the Stars, Suite 1000 Los Angeles, California 90067
Tel: (310) 552-4400 Fax: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

pay out money or forfeit moneys due. *U.S. ex. rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170-71 (9th Cir. 2006).

Each claim submitted to the government under a contract which was procured by fraud is false even if false representations were not made in connection with each contractual payment. This means that all the payments made under a fraudulently procured contract can be forfeited and comprise the recoverable damages. *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 904 (9th Cir. 2017); *United States ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321, 1326 (D.C. Cir. 2005) (a contractor is liable "for each claim submitted to the Government under a contract which was procured by fraud, even in the absence of evidence that the claims were fraudulent in themselves.").

To show causation, Relator need only show but-for causation. *See United States ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F. 4th 412, 421-22 (D.C. Cir. 2021). Under this standard, causation is established by showing that the government would not have entered into the contract at all or on the agreed terms had it known Defendants' representations were false.

The evidence at trial will show that Aerojet made numerous false and misleading statements to government agencies and prime contractors to induce the government to pay billions of dollars to Aerojet to work on cutting-edge defense and aerospace systems despite the fact that Aerojet was woefully non-compliant with non-waivable cybersecurity regulations. The fact that Aerojet went to such great lengths to conceal its cybersecurity vulnerabilities shows that the cybersecurity requirements were

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

material; and that Aerojet knew the government would not have awarded these contracts or allowed Aerojet to serve as a subcontractor had the government known the true state of Aerojet's cybersecurity vulnerabilities.

The measure of damages is the amount the United States paid out by reason of the false statements over and above what it would have paid if the claims had been truthful. *U.S. v. Mackby*, 339 F.3d 1013, 1018-19 (9th Cir. 2003); *U.S. v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966). If it is shown that, but-for Aerojet's fraudulent conduct, the United States would not have paid Aerojet under a given contract, the damages are the entire amount the United States paid Aerojet on that contract. *Id.*

The jury is tasked with determining liability and damages under the False Claims Act. If the jury finds that Aerojet is liable and awards damages, this Court must treble those damages under 31 U.S.C. § 3729(a)(1), determine statutory penalties and the percentage share of the recovery to be received by the Relator. 31 U.S.C. § 3730(d)(2). If the Relator prevails, Aerojet is also liable for Relator's costs, including reasonable attorneys' fees. 31 U.S.C. § 3729(a)(3); 31 U.S.C. § 3730(d)(2).

**B. Reasonably Anticipated Disputes Concerning Admissibility of Evidence and Scope of Claims**

**1. Evidence of Trebling of Damages, Statutory Penalties, and Relator's Entitlement to Attorneys' Fees and Costs Should be Excluded as Irrelevant and Unduly Prejudicial**

Aerojet should not be allowed to mention or indicate that there could be additional recovery to the Relator over and above

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

what they award in actual damages. This includes (1) the trebling of damages under the False Claims Act ("FCA") pursuant to 31 U.S.C. § 3729(a), (2) any separate penalty that the Court may impose beyond actual damages; and (3) Relator's entitlement to reasonable attorneys' fees, expenses and costs under 31 U.S.C. §§ 3729(a)(3), 3730(d)(1).

The Supreme Court has held that, if the jury finds that a defendant has violated the FCA, "its instruction is to return a verdict for actual damages, for which the court alone then determines any multiplier, just as the court alone sets any separate penalty." *Cook Cty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 132 (2003).

Accordingly, federal courts routinely grant motions to exclude any evidence of, or reference to, damage multipliers, penalties, or awards of attorneys' fees and costs in False Claims Act cases. *U.S., ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, No. CIV A 95-1231 RCL, 2007 WL 851868, at *2-3 (D.D.C. Mar. 14, 2007) (excluding evidence of trebling, penalties, and relator's entitlement to costs and attorneys' fees from jury, noting that such evidence had "scarce little probative value" and that a jury might improperly limit damages based on such knowledge, thwarting the purpose of the False Claims Act to deter violations and make the government whole); *see U.S. ex rel. Laymon v. Bombardier Transp. (Holdings) USA, Inc.*, 656 F. Supp. 2d 540, 547-48 (W.D. Pa. 2009) ("To instruct a jury on potential trebling of damages and statutory penalties would serve to inhibit the goals of awarding such damages, namely, to deter fraud against the federal government and punish those who commit

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

it."); *United States ex rel. Raven v. Georgia Cancer Specialists I, P.C.*, No. 1:11-CV-00994-CAP, 2021 WL 4080863, at *4 (N.D. Ga. Mar. 30, 2021) (granting motion to exclude reference to treble damages, penalties, and attorneys' fees, expenses, and costs in FCA case).

Because such evidence would be highly prejudicial and serve no probative value, in addition to frustrating the purpose of the FCA, this Court should exclude any evidence or reference to the FCA's damage trebling provision, any other penalties the Court may impose, or the Relator's entitlement to recover attorneys' fees, expenses, and costs.

**2. Evidence of the United States' Investigation and Decision not to Intervene Should be Excluded as Irrelevant and Unduly Prejudicial**

Aerojet should not be allowed to argue to the jury that the United States investigated the claim at issue and decided not to intervene. The investigation and decision not to intervene has nothing to do with the merits of this case or the government's interest in recovery and preventing fraud.

Federal Courts have routinely recognized the principle that the government's decision not to intervene is not a reflection on the merits of an FCA claim. *U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama*, 104 F.3d 1453 (4th Cir. 1997) (the FCA's plain language "clearly anticipates" that "the Government will not necessarily pursue all meritorious claims; otherwise there is little purpose to the *qui tam* provision permitting private attorneys general"); *U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 20-22 (D.D.C. 2008) (excluding

reference to government's action or inaction in FCA claim because such a fact had "no probative value and [was] not relevant"); *U.S. ex rel. Feldman v. van Gorp*, No. 03 CIV. 8135 (WHP), 2010 WL 2911606 at *2 (S.D.N.Y. July 8, 2010) (Attorney General's "decision not to intervene in this action is not relevant.").

Because the government "may have a host of reasons for not pursuing a claim," courts do not "assume in each instance in which the government declines intervention in an FCA case, it does so because it considers the evidence of wrongdoing insufficient or the *qui tam* relator's allegations for fraud to be without merit." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006).

As in the above-referenced case law, there is no evidence here that the government decided not to intervene because it thought Relator's accusations were without merit. In fact, the government's submission of a Statement of Interest in connection with Defendants' Summary Judgment Motion that rebutted many of Defendants' arguments indicates that the United States does believe there is merit to Relator's FCA claims.

### 3. Defendants' Self-Serving Internal Emails Containing Purported Statements by Non-Witnesses and Non-Party Organization Letters Are Hearsay

Defendants' trial exhibit list includes at least two emails through which they attempt to introduce self-serving, out-of-court statements from individuals and entities who will not testify at trial. Defendants' trial exhibit list also includes six out-of-court letters from "lobbyist" organizations who will not testify at trial. Aerojet intends to offer these exhibits

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

and the statements therein for the truth of the matters asserted. The Court should exclude these exhibits as inadmissible hearsay and because they are irrelevant and highly prejudicial.

Defense Trial Exhibit 28 is a May 14, 2015, internal Aerojet email mentioning that "LM" (presumably Lockheed Martin) "was very complimentary about Aerojet's response to their internal initial questionnaire and our matrix status to same. They mentioned we 'get it' while most suppliers are probably responding naively or just blowing them off." Relator does not know which Lockheed Martin representatives made these alleged statements, but in any event, no Lockheed Martin representatives are on Defendants' witness list.

In addition, Defense Trial Exhibit 67 is an internal Aerojet email where an Aerojet employee states: "In the end, the MDA [presumably the Missile Defense Agency] customers stated 'Best Plan, Only Detailed Plan they have seen.'" Relator does not know who from the MDA allegedly made this statement, but in any event, there is no representative from the MDA on Defendants' witness list.

Aerojet intends to use these exhibits to present self-serving, hearsay statements to the jury to paint a rosy picture of Aerojet's disclosures and cybersecurity system. Such statements are hearsay without exception and serve no probative value as to whether Defendants made fraudulent representations in violation of the FCA. Moreover, Relator will not be able to cross-examine the alleged persons who made these statements. As hearsay, irrelevant and unduly prejudicial, these exhibits should be excluded.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

Similarly, Defendants intend to present six letters to the DOD from the Council of Defense and Space Industry Associations (Ex. 53), the American Bar Association (Ex.56), the Defense Industrial Base (Ex. 57), the U.S. Chamber of Commerce (Ex. 58), an unknown sender (name redacted) (Ex. 59), and the Aerospace Industries Association (Ex. 60). All of these letters are critical of the interim DFARS rule that DOD proposed on August 26, 2015.

No witness from any of these organizations is scheduled to testify at trial about these "lobbyist" letters. The letters contain opinions and representations from non-testifying witnesses offered for the truth of the matter asserted. The letters are hearsay without any exception.

Moreover, the letters are irrelevant. The fact that lobbyists pushed back on the government regulations has nothing to do with any of the factual issues in dispute in this trial. The letters have nothing to do with whether Aerojet made fraudulent representations in violation of the FCA to procure the contracts and subcontracts at issue. This is, in reality, a tactic by Aerojet to win the case by jury nullification. It should not be allowed.

**4. Evidence that the Government Continued to Pay Defendants, did not Cancel Defendants' Contracts, and Continued to Award Defendants New Contracts should be Excluded as Irrelevant and Unduly Prejudicial**

Aerojet intends to present evidence that the government did not rescind the contracts and continued to award other contracts

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

to Aerojet as purported circumstantial evidence that Aerojet made the proper disclosures, did not mislead the government and that Aerojet's non-compliance was not material to the government's decision to pay Aerojet on these contracts.

Courts have repeatedly rejected Aerojet's trial strategy on relevancy grounds, noting that the government's response to the claims submitted by the defendant "has no bearing on the materiality analysis." *See United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 834 (6th Cir. 2018). "Mere awareness of allegations concerning noncompliance with regulations is different from knowledge of actual noncompliance." *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 112 (1st Cir. 2016) ("*Escobar II*") (holding that actual knowledge was not established where regulators had notice of complaints of noncompliance but "did not conclusively discover the extent of the violations until . . . well after the commencement of the litigation").

Indeed, the United States made this exact point in its Statement of Interest. (ECF Dkt. No. 135 at pp. 1-4 ("The government cannot be expected or required to refuse to honor an existing contract or refuse to enter into a new contract in response to every one of the hundreds of private relators who accuse government contractors of misconduct every year.").)

Furthermore, any probative value is substantially outweighed by prejudice, particularly the potential to mislead the jury and cause undue consumption of trial time. If the Court were to allow Aerojet to present evidence of the government agencies' decisions not to terminate, to continue to pay and to award

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

additional contracts, Relator will have to put on rebuttal evidence to show how in each instance Aerojet was not truthful and did not make a full disclosure.

Relator will also have to put on rebuttal evidence to show that these alleged additional contracts were awarded in different circumstances. This would result in the Court conducting numerous mini-trials that could prevent the parties from completing the trial within their 15-day estimate.

Therefore, since such evidence is irrelevant as to whether Aerojet misrepresented its cybersecurity capabilities regarding the contracts and subcontracts at issue in this trial and would be unduly prejudicial, the Court should exclude any evidence that the government did not cancel Aerojet's contracts and continued to award Aerojet new contracts after this case was filed and unsealed.

**5. *Daubert* Challenge**

Relator may make a *Daubert* challenge to Aerojet's retained, testifying expert Anthony Ferrante. Per the Court's preference, Relator will make the *Daubert* challenge during the trial prior to Mr. Ferrante's examination in front of the jury.

**6. Relator's Promissory Fraud Claim Includes Subcontracts**

Aerojet claims that Relator's case is limited to seven prime contracts. Aerojet makes this claim based on two arguments. First, Aerojet claims that the Court limited Relator's claims to these seven prime contracts in its summary judgment ruling. Second, Aerojet claims that Relator did not specifically allege each subcontract by subcontract number in his complaint and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

therefore they are out of the case. Both arguments are meritless.

As to the first argument, the denial of summary judgment is simply "a ruling that [a party] could hypothetically prove some set of facts that would support his claim." *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014). It does not narrow the issues for trial. When a court denies summary judgment, the plaintiff's claim remains as described in the pleadings. That is why Aerojet also moved, in the alternative, for summary adjudication to limit the trial to the prime contracts specifically alleged in the case that were obtained before the complaint was originally filed. But the Court did not grant the motion for summary adjudication. Aerojet then moved for clarification, asking the Court to confirm that the trial would be limited to the seven prime contracts. The Court denied that motion.

At a hearing following the summary judgment ruling, Relator argued that the Court did not limit Relator's claims to only those prime contracts that were discussed in the summary judgment ruling, and that the pleadings define the scope of the claim. (Status Conf. Trans. (March 17, 2022) at 33:11-34:24.) The Court agreed: "You're correct, the issues in the case are what the pleadings define and the pleadings say what they say." (*Id.* at 34:12-14.) The Court ordered that the parties would proceed to trial "on the allegations of the Second Amended Complaint." (*Id.* at 34:22-23.)

The Second Amended Complaint specifically alleges promissory fraud in connection with subcontracts. (SAC at ¶ 29 ("Defendants

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

have entered multiple contracts with the federal government, *and as subcontractors* on contracts with the federal government, which required that defendants meet the cyber security standards set forth in the DFARS Clause 252.704-7012 and NASA FARS Clause 1852.204-76 even though defendants knew their information systems did not meet these cyber security requirements.") (emphasis added), ¶ 31 ("Defendants also fraudulently entered *subcontracts* with prime contractors who were working on federal contracts that required that they comply with the DFARS and NASA FARS cyber security regulations.") (emphasis added), ¶ 126 ("Defendants obtained *subcontracts* that were subject to federal acquisition regulations, NASA FARS Clause 1852.204-76 and DFARS Clause 252.704-7012, related to cyber security by falsely representing that they were complaint with those regulations. *These prime contractors included Boeing, Lockheed Martin and Raytheon*.") (emphasis added).) Thus, the subcontracts are at issue in this trial.

As to the second argument, Aerojet has cited no law to support the claim that a plaintiff under the False Claims Act asserting a *qui tam* action must specifically identify each contract to proceed to trial on each contract. *Qui tam* actions are governed by the Federal Rules of Civil Procedure, and the relator need only comply with Rules 8 and 9(b). Aerojet never successfully moved to dismiss or strike Relator's allegations of promissory fraud in connection with the subcontracts. Thus, all of the prime contracts and subcontracts remain at issue.

DATED: April 12, 2022 MILLER BARONDESS, LLP

By: */s/ David W. Schecter*
DAVID W. SCHECTER
Attorneys for Realtor
BRIAN MARKUS

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400